1

2                    IN THE UNITED STATES DISTRICT COURT

3                FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7   In Re WAL-MART STORES, INC. WAGE            No. C 06-2069 SBA
    AND HOUR LITIGATION
8                                               **ORDER**

9                                               [Docket No. 72]

10  This Document Relates To:
    Case Nos.
11  C 06-02069 SBA (Smith) and
    C 06-05411 SBA (Ballard)
12

13  _____

14          This matter comes before the Court on defendant Wal-Mart, Inc.'s Motion to Dismiss plaintiffs'

15  third, fifth and sixth claims for relief, and all class allegations, and Wal-Mart's Motion to Strike all class

16  allegations, plaintiffs' claim for punitive damages, and in whole or in part, paragraphs 1, 3, 7, 20, 23,

17  27, 33, 37(5), 47, 59-69, 78, 86 and 95, and paragraphs 2 and 7 of the Prayer for Relief [Docket No. 72].

18  Having read and considered the arguments presented by the parties in the papers submitted to the Court,

19  the Court finds this matter appropriate for resolution without a hearing.

20          The Court hereby DENIES the Motion to Dismiss with respect to the Third Cause of Action for

21  overtime, the Sixth Cause of Action for unfair business practices insofar as it is based on violations of

22  Labor Code § 227.3, and the class allegations. The Motion to Dismiss is GRANTED WITHOUT

23  LEAVE TO AMEND with respect to the Fifth Cause of Action for conversion and the Sixth Cause of

24  Action for unfair business practices insofar as it is based on violations of sections of the Labor Code

25  other than § 227.3. Wal-Mart's Motion to Strike is GRANTED WITH LEAVE TO AMEND with

26  respect to plaintiffs' claim for punitive damages and DENIED in all other respects.

27

28

*United States District Court*
*For the Northern District of California*

**BACKGROUND**

This is a consolidated action against defendant, Wal-Mart Stores, Inc., brought in two separate actions. The Smith and Wiggins action (C 06-2069 SBA) was commenced in this District on March 20, 2006 with the filing of the original Complaint. Plaintiffs Ballard and Lyons commenced an action in the Los Angeles County Superior Court on May 17, 2006. That action was subsequently removed, and the Central District transferred the matter to this District (C 06-05411 JSW).

The Ballard and Lyons action was reassigned to this Court as being related to the Smith and Wiggins case. *See* Docket No. 57. On January 9, 2007, the Court ordered that the two cases be consolidated for all purposes and that a single "Consolidated Class Action Complaint" be filed, pursuant to Stipulation. *See* Docket No. 67. By stipulation approved by the Court, plaintiffs were granted leave to file the First Amended Consolidated Complaint ("FACC"). *See* Docket No. 78. The FACC was filed on March 27, 2007. *See* Docket No. 79.

Plaintiffs assert six claims for relief against Wal-Mart, alleging that Wal-Mart has "administered and employed a corporate policy, practice and/or custom" of engaging in the following:

(1) violations of California Labor Code sections 201-203 by late payment of wages at termination, FACC ¶¶ 42-50;

(2) violations of California Labor Code section 227.3 by nonpayment of accrued vacation at termination, *id.* ¶¶ 51-58;

(3) violations of California Labor Code sections 500, 510 and 1194 for failure to pay overtime to non-exempt employees, *id.* ¶¶ 59-69;

(4) violations of California Labor Code section 226 by failure to accurately record and report wages, *id.* ¶¶ 70-75;

(5) unfair business practices under California Business and Professions Code sections 17200 *et seq.*, based on the same alleged violations set out in the first through fourth and the sixth claims for relief, *id.* ¶¶ 76-82; and

(6) conversion of wages. *Id.* ¶¶ 83-95.

Plaintiffs purport to bring their claims on behalf of a class composed of all former employees

2

1  of Wal-Mart who fit within one of four subclasses. FACC ¶ 32. The four subclasses are defined as

2  follows:

3      (1) The "Terminated Sub-Class" is defined as terminated employees who "did not

4      receive all of the wages due them at the time of termination, and/or did not receive their

5      final wages in a timely manner as mandated by California law."

6      (2) The "Vacation Sub-Class" seeks to include all employees who "have not received full

7      and complete compensation for all vested 'vacation pay' as the same is defined under

8      California law and IWC regulations, including, but not limited to, vacation pay, personal

9      time, holiday pay, etc."

10     (3) The "Compensation Sub-Class" includes employees who are "properly classified

11     hourly-pay employees of Defendant . . . who have not received all compensation due

12     them for hours worked, including overtime worked."

13     (4) The "Itemized Statement Sub-Class" purports to include employees "who have not

14     received an accurate and complete itemization of wages earned, rates of pay, etc." *Id.*

15     Plaintiffs allege that "[a]ll of the named Plaintiffs herein are members of" each sub-class. *Id.* ¶

16  33. Each named plaintiff is a former employee of Wal-Mart who worked for Wal-Mart between

17  September 2003 and March 2006. *See id.* ¶¶ 26, 28-30. Plaintiff Smith was a salaried manager, and the

18  other three named plaintiffs were hourly employees. *Id.* Further, each of the named plaintiffs allegedly

19  was not paid accrued vacation pay, personal time pay and/or holiday pay, and allegedly was given a final

20  wage statement that was incorrect. *Id.* ¶¶ 27-30. Nothing further is alleged with respect to Plaintiffs

21  Smith, Ballard and Lyons. *Id.* ¶¶ 26-30. With respect to plaintiff Wiggins, plaintiffs allege that "Wal-

22  Mart would 'shave off' time from [Wiggins'] time cards whereby Mr. Wiggins was not paid for all of

23  the hours he worked." *Id.* ¶ 27. Plaintiffs further allege, that "when Mr. Wiggins worked a graveyard

24  shift, Wal-Mart would count the hours worked before midnight as working one day, and all the hours

25  worked after midnight as hours worked on another day, thereby denying Mr. Wiggins overtime pay."

26  *Id.*

27                                  **LEGAL STANDARD**

28

3

## I.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- S.Ct. ----, 2007 WL 1461066 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."), *as amended by*, 275 F.3d 1187 (9th Cir. 2001).

## II.     Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

Rule 12(f) Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. *See California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F.Supp.2d 1028, 1033 (C.D. Cal.

4

2002). Motions to strike are "generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Rosales v. Citibank, Federal Sav. Bank*, 133 F. Supp.2d 1177, 1180 (N.D. Cal. 2001).  Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

## ANALYSIS

**I.      Motion to Dismiss**

      **A.      The Class Allegations**

      Wal-Mart argues that plaintiffs' class allegations should be either dismissed or stricken because the series of subclasses that plaintiffs delineate in the FACC are defined by the merits of their legal claims, and such merits-based class definitions impermissibly force the Court to engage in a fact-intensive inquiry in order to determine the scope of each putative subclass.  Plaintiffs counter that the members of each class can be determined by "merely reviewing objective criteria," namely Wal-Mart's employment records. Opp at 9:4-7. However, plaintiffs do not explain how the review of such records will determine the members of the subclasses. Moreover, plaintiffs, perhaps indirectly conceding that the class definitions are potentially inappropriate, state that "[d]epending on the Court's desire,""a definition as str[a]ightforward as 'all employees of Defendant who [were] terminated during the class period' could be fashioned." Opp. at 9:26-27.

      Wal-Mart cites numerous cases for the proposition that the class definitions must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member without delving into the merits of the claim. However, nearly all of these cases considered the issue of the appropriate contours of class definitions in the context of a motion for class certification. *See Hagen v. City of Winnemucca*, 108 F.R.D. 61 (D. Nev. 1985); *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (S.D. Ill. 2000). Generally, courts review class allegations through a motion for class certification. *See, e.g. Moreno v. Baca*, No. CV007149ABCCWX, 2000 WL 33356835, *2 (C.D. Cal. 2000)(finding defendants' motion to strike class allegations premature because no motion for class certification was before the court).  Such a

1    motion should be filed "as soon as practicable" after a defendant answers. *See* Fed. R. Civ.P. 23(c)(1).

2    Wal-Mart has not yet answered the FACC.

3        While Wal-Mart correctly cites *Kamm v. Sugasawara*, 509 F.2d 205, 212 (9th Cir. 1975), for the

4    proposition that class allegations may be stricken at the pleading stage, the granting of motions to

5    dismiss class allegations before discovery has commenced is rare. Indeed, while there is little authority

6    on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that

7    "dismissal of class allegations at the pleading stage should be done rarely and that the better course is

8    to deny such a motion because 'the shape and form of a class action evolves only through the process

9    of discovery.'" *See Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, *4 (D. N.J. 2006)

10   (internal citations omitted) (declining to strike class allegations because discovery had not yet

11   commenced and observing that most courts deny such motions if brought prior to discovery); *see also*

12   *Abdallah v. Coca-Cola Co.*, No. Civ.A. 1:98CV3679-RW, 1999 WL 527835 (N.D. Ga. 1999) (dismissal

13   of class allegations prior to discovery premature); *see also* 7AA Charles Alan Wright, Arthur R. Miller

14   & Mary K. Kane, *Federal Practice and Procedure Civil* § 1785.3 (3d 2005) (the practice employed in

15   the overwhelming majority of class actions is to resolve class certification only after an appropriate

16   period of discovery). While Wal-Mart cites *Palmer v. Combined Ins. Co. of America,* No. 02 C 1764,

17   2003 WL 466065, *2 (N.D. Ill. 2003), for the proposition that it is sometimes possible to determine from

18   the pleadings alone that the class requirements cannot possibly be met and in such cases striking class

19   allegations before commencing discovery is appropriate, the court in *Palmer* declined to dismiss the

20   class allegations because there were insufficient indicia in the pleadings for the court to determine

21   whether the class allegations were appropriate. *Id.*

22       Here, the Court notes that plaintiffs' class definitions are somewhat suspicious.  For example,

23   the "Termination" subclass includes all terminated employees "who did not receive all of the wages *due*

24   them at the time of termination, and/or who did not receive their final wages in a timely manner as

25   mandated by California law." FACC ¶ 33 (emphasis added). The notion of wages "due" in the context

26   of the complaint appears to be a legal one based on a factual determination, and therefore it appears that

27   the determination of which plaintiffs were not paid the wages they were "due" cannot be determined

28

without first determining the underlying issue --- i.e. whether defendant withheld wages that were "due" to terminated employees. Similarly, to determine proper membership in the "Vacation Subclass," the Court would need to determine who has not received "*full and complete*" compensation for all vested vacation pay. The definition of this subclass requires the Court to determine what "full and complete" compensation is in order to determine who the members of the class are, which, again, would appear to involve a legal determination based on the facts relevant to an individual potential class members.

Nevertheless, Wal-Mart has not answered in this case, discovery has not yet commenced, and no motion for class certification has been filed. In the absence of any discovery or specific arguments related to class certification, the Court is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling. While plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery of, for example, the electronic employment lists that they claim will identify the class members. Accordingly, Wal-Mart's motions to dismiss or strike the class allegations are premature and are denied, but without prejudice as to Wal-Mart's ability to move to strike or dismiss the class allegations if and when class certification is sought.

**B.     Plaintiffs' Overtime Claim**

Plaintiffs' third claim for relief seeks overtime pursuant to Labor Code sections 500, 510 and 1194. The FACC alleges with respect to plaintiff Wiggins: (1) that "Wal-Mart would 'shave off' time from [Wiggins's] time cards whereby Mr. Wiggins was not paid for all of the hours he worked;" and (2) "when Mr. Wiggins worked a graveyard shift, Wal-Mart would count the hours worked before midnight as working one day, and all the hours worked after midnight as hours worked on another day, thereby denying Mr. Wiggins overtime pay" (referred to herein as the "shift designation" claim). FACC ¶ 27. Wal-Mart argues that neither theory is sufficient to state a claim for relief because (1) the FACC does not allege that Wiggins ever actually worked overtime that was not paid due to the alleged "time-shaving," and (2) Wal-Mart's practice of failing to pay overtime wages for hours worked in excess of eight where some hours are worked in a single shift fall before midnight and other hours after midnight is entirely compliant with California law.

United States District Court
For the Northern District of California

### 1.    Time Shaving

"Time-shaving" is the practice of doctoring hourly employees' time sheets to reduce their pay. *See* Cynthia Estlund, *Rebuilding the Law of the Workplace in an Era of Self-Regulation*, 105 Colum. L. Rev. 319, 392 (2005) (citing Steven Greenhouse, *U.S. Jury Cites Unpaid Work at Wal-Mart, N.Y. Times*, Dec. 20, 2002, at A26). The FACC states the following with respect to the alleged time shaving: "During Plaintiff Michael Wiggins' employment with Wal-Mart, Wal-Mart failed to pay overtime. Wal-Mart would 'shave off' time from his time cards whereby Mr. Wiggins would not be paid for all the hours he worked." FACC ¶ 27. Wal-Mart argues that this allegation is insufficient to state a claim for overtime wages because "Wiggins does not allege that he ever worked overtime that was not paid due to this alleged 'time-shaving. . . .Plaintiffs merely mention 'time-shaving' and conclude that Wiggins was not paid for all hours worked." Wal-Mart's argument is disingenuous: there is simply no way to interpret the FACC's allegations concerning time-shaving other than as claiming that Wiggins was not paid overtime *because* Wal-Mart engaged in time-shaving. To argue otherwise is to succumb to sophistry,  and Wal-Mart's argument accordingly fails.

### 2.    Overtime for Hours Worked in Two Different "Workdays"

Plaintiffs argue that Wal-Mart improperly fails to pay overtime wages for hours worked in excess of eight, where some hours worked in a single shift fall before midnight and others after midnight. Wal-Mart counters that this practice entirely compliant with California Law. California Labor Code section 510(a) states in pertinent part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday . . .shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510. Labor Code section 500, in turn, defines "workday" as "any consecutive 24-hour period commencing at the same time each calendar day." *Id.* § 500(a).

The California Department of Labor Standards Enforcement ("DLSE") has interpreted Labor Code section 500 to mean that "[t]he beginning of an employee's workday need not coincide with the beginning of that employee's shift, and an employer may establish different workdays for different shifts." DLSE Enforcement Policies and Interpretations Manual ("DLSE Manual"), at ¶ 48.1.2. Thus,

1   Wal-Mart argues, if the end of one workday and beginning of the next is set at midnight, only hours

2   worked in excess of eight in *one or the other* workday entitle an employee to overtime pay.

3           The issue of whether an employer may circumvent the overtime pay provisions of the Labor

4   Code by setting the beginning of the "workday" in the middle of a shift that would otherwise require

5   overtime pay appears to be one of first impression. Wal-Mart points to the following illustration

6   provided in the DLSE Manual as support for its argument that such a practice does not violate the Labor

7   Code:

8           A factory worker whose usual shift is 7 a.m. to 3 p.m. has an established workday
        beginning at 7 a.m. On Tuesday night she is asked to work a special extra shift from 11
9       p.m. to 7 a.m. Wednesday. *Since she has already worked eight hours on Tuesday*, she
        is due time and a half beginning at 11 p.m. on Tuesday night until 3 a.m. and double time
10      from 3 a.m. to 7 a.m. However, *because her workday begins at 7 a.m. she may be paid
        straight time wages from 7 a.m. to 3 p.m. (her regular shift) on Wednesday regardless
11      of the fact that the time worked is continuous.*

12  *Id.* at ¶ 48.1.2.1 (emphasis added). While the illustration does state that an employee is not due overtime

13  for two consecutive shifts that span two workdays, it does not state that an employee working a *single*

14  *shift* usually spanning two workdays should not receive overtime. Moreover, the point of the illustration

15  appears to be that the employee does not receive double overtime recovery; the employee is in fact

16  awarded overtime for her work on Tuesday, but is not again awarded additional overtime for her work

17  on Wednesday. Accordingly, the hypothetical does not provide support for Wal-Mart's argument.

18          In any case, the first sentence of Labor Code section 510(a) bluntly states: "Eight hours of labor

19  constitutes a day's work." In the context of an overtime statute, this sentence clearly conveys the

20  legislature's intent that, other than in the case of specific enumerated exceptions,  a shift of more than

21  eight hours of consecutive work qualifies for overtime pay. California's overtime laws are remedial and

22  are to be construed so as to promote employee protection. *Sav-on Drug Stores, Inc. v. Superior Court*,

23  34 Cal.4th 319, 340 (2004). Additionally, the California Supreme Court has held that interpretations

24  contained in the DLSE Manual are non-binding and are entitled to no deference. S*ee Tidewater Marine*

25  *Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 568 (1996). Therefore, to the extent that the DLSE's opinion

26  that "[t]he beginning of an employee's workday need not coincide with the beginning of that employee's

27  shift,  and an employer may establish different workdays for different shifts" is inconsistent with the

28

United States District Court
For the Northern District of California

1    Labor Code's goal of promoting employee protection, this opinion should be ignored. *See Tomlinson*

2    *v. Indymac Bank, F.S.B*, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005) (finding DLSE reasoning and

3    examples unpersuasive because "in California, 'agency interpretations are not binding or ...

4    authoritative' and '[c]ourts must, in short, independently judge the text of a statute.'") (citing *Bonnell*

5    *v. Medical Board of California*, 31 Cal.4th 1255, 1264 (2003)). Accordingly, the Court holds that

6    plaintiffs have properly alleged a claim for failure to pay overtime in violation of Labor Code sections

7    500, 510 and 1194.

8        **C.    Conversion**

9        Plaintiffs' fifth claim for relief is for conversion. Plaintiffs base this claim on the same conduct

10   alleged against Wal-Mart in the first through fourth claims for relief, i.e., violations of the Labor Code.

11   Plaintiffs allege that "[b]y failing to pay earned wages, actual damages, and penalty wages to Plaintiffs

12   and the others similarly situated, defendant wrongfully obtained and held the monies belonging to

13   Plaintiffs and others similarly situated." FACC ¶ 79.

14       Conversion is a tort consisting of the wrongful exercise of dominion over personal property of

15   another. 5 B.E. Witkin, *Summary of California Law* § 610 (9th ed.1988). A claim for conversion

16   properly lies where there is substantial interference with possession of the property or the right to it. *Id.*

17   Property that may be the subject of a claim for conversion includes tangible personal property,

18   intangible property represented by documents such as bonds, notes, and bills of exchange, and money,

19   so long as a specific, identifiable sum is at issue. *Id.* §§ 612-14; *see also Green v. Party City Corp*, No.

20   CV-01-09681 CAS, 2002 WL 553219, *4 (C.D. Cal. 2002).

21       Under California law, where a statute creates a right that did not exist at common law and

22   provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is

23   exclusive. *Rojo v. Kliger*, 52 Cal.3d 65, 79 (1990); *see also Stevenson v. Superior Court*, 16 Cal. 4th

24   880, 900 (1997) ("Where a new right is created by statute, the party aggrieved by its violation is

25   confined to the statutory remedy."). Wal-Mart argues that all of the allegations in the FACC seek relief

26   under the comprehensive scheme implemented by the Labor Code, and therefore plaintiffs' only

27   recourse is through the procedures prescribed by that regulatory scheme. Reply at 7.

28

United States District Court
For the Northern District of California

In response, plaintiffs argue that California courts have specifically recognized wages as a proper subject of conversion claim, citing *DLSE v. UI Video Stores, Inc.*, 55 Cal. App. 4th 1084 (1997). In that case, the DLSE had negotiated a settlement with Blockbuster for reimbursement of funds paid by employees for uniforms in contravention of California law. *Id.* at 1095-96. Rather than abide by the terms of the settlement, which directed Blockbuster to send the checks directly to the DSLE, Blockbuster mailed the checks directly to the employees and then retained the checks that were returned as undeliverable, refusing to hand them over the DSLE and thereby retaining the funds. The court found that DSLE had properly alleged a claim for conversion in arguing that Blockbuster had unlawfully retained the checks. *Id. UI Video Stores* is distinguishable from the instant case because the DSLE was not suing for enforcement of the Labor Code, but was rather suing for a breach of the settlement agreement. *Id. UI Video Stores* did not involve, as does this case, plaintiffs seeking wages pursuant to the Labor Code and simultaneously alleging a cause of conversion based on the same underlying facts.

While there are no California cases on point, two federal courts have considered this argument under strikingly similar circumstances and held that a claim for unpaid wages under the Labor Code cannot form the basis for a claim of conversion given the existence of the Labor Code's "detailed remedial scheme for violation of its provisions." *Green*, 2002 WL 553219 at *4; *see also Pulido v. Coca-Cola Enterprises, Inc.*, No. EDCV06-406VAP, 2006 WL 1699328, *9 (C.D. Cal. 2006). *Green* directly considered the question in the context of overtime wages, and *Pulido* considered the issue with respect to penalties for forcing the plaintiffs to work through meal and rest periods. *Pulido*, 2006 WL 1699328 at *9. The rationale adopted in both *Green* and *Pulido* is persuasive. With the exception of *UI Video Stores*, which is distinguishable, plaintiffs identify no case in which a claim for unpaid wages under the Labor Code was properly held to also state a claim for conversion. Moreover, it should be noted that, were the Court to agree with plaintiffs that a claim for "earned wages, actual damages, and penalty wages" constitutes a conversion claim, such a rule would in effect transform *every* claim for damages and statutory penalties into a conversion claim, thereby providing punitive damages for every breach of a statute that implements a penalty for its breach. While plaintiffs apparently included this cause of action for the purpose of claiming punitive damages, *see* Compl. ¶ 82 ("Plaintiffs and others

11

similarly situated are entitled to punitive damages . . . *as well as* all damages allowed under [the] California Labor Code"(emphasis added)), the cause of action for conversion is improper and is dismissed.

### B.      Business and Professions Code Section 17200

Plaintiffs' sixth claim for relief alleges unfair business practices in violation of California Business and Professions Code section 17200, *et seq.*, also known as the state's Unfair Competition Law ("UCL").  As with the cause of action for conversion, plaintiffs base this cause of action on the same allegations that support the First through Fourth Causes of Action for violations of the Labor Code. While Wal-Mart initially moved to dismiss the UCL claim *in toto*, in its reply brief, Wal-Mart, presumably responding to plaintiffs' citation of on-point authority, *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177 (2000) (concluding that orders for payment of wages unlawfully withheld from an employee pursuant to Labor Code § 227.3 are a restitutionary remedy authorized by section 17203), concedes that plaintiffs have properly alleged an "unlawful business practice" based upon the alleged failure to pay accrued vacation pay  in violation of Labor Code § 227.3. *See* Reply at 11 ("The Court should grant Defendant's motion to dismiss the sixth claim with respect to any alleged "unlawful business practice" <u>other than</u> the alleged violation of section 227.3") (emphasis in original).

For their part, plaintiffs concede that under *Tomlinson, supra*, 359 F. Supp. at 895,  claims pursuant to Labor Code  §§ 203 and 226 cannot support a § 17200 claim. *See Id.* at 895 (granting judgment on the pleadings on ground that Labor Code § 203 provides for a penalty, not wages, which cannot be raised through § 17200 claim). Accordingly, as the parties are correctly in agreement as to the scope of plaintiff's UCL claim, Wal-Mart's motion to dismiss the Sixth Cause of Action is granted with respect to claims based on §§ 203 and 226 and denied with respect to claims under § 227.3. *See Cortez*, *supra*, 23 Cal.4th at 177.

## II.    Motion to Strike

### A.      The Class Allegations

As the Court has already determined that Wal-Mart's motion to dismiss the class allegations should be denied as premature, so does the Court deny the motion to strike the class allegations.

United States District Court
For the Northern District of California

1

2        **B.      Punitive Damages**

3        Wal-Mart argues that the Court should strike plaintiffs' prayer for punitive damages because

4   none of the claims asserted allows the imposition of punitive damages. Specifically, Wal-Mart argues

5   that 1) because the Labor Code sections provide for remedies for violations of those sections, including

6   specific penalties, plaintiffs are precluded from seeking punitive damages as such damages would

7   amount to double recovery; 2) it is settled law that punitive damages are not available under § 17200,

8   *et seq.*; and 3) plaintiffs' conversion claim fails and therefore provides no basis for punitive damages.

9        Where a right is created by statute and the statute does not expressly permit punitive damages,

10  punitive damages under California Civil Code section 3294 are not available. *See Turnbull & Turnbull*

11  *v. ARA Transp., Inc*., 219 Cal. App. 3d 811, 826-27, 268 Cal. Rptr. 856 (1990) (stating, "when a new

12  right . . . is created by statute and a statutory remedy for the infringement thereof is provided, such

13  remedy is exclusive of all others") (citing *Orloff v. L.A. Turf Club*, 30 Cal. 2d 110, 112-13 (1947)); *see*

14  *also Czechowski v. Tandy Corp.*, No. C-88-2868, 731 F. Supp. 406, 410 (N.D. Cal. 1990) (Schwarzer,

15  J.) (penalty provision provided by Labor Code precludes award of punitive damages).

16       In *Czechowski,* this Court considered the very issue being raised by plaintiffs, i.e., whether

17  punitive damages are available under Labor Code sections 227.3 and 203 or California Business &

18  Professions Code sections 17200 and 17203, and concluded that they are not. This Court held that

19  because section 203 provides for the award of statutory penalties when an employer "willfully fails to

20  pay" wages due upon termination, the Legislature's provision of such statutory penalties precludes an

21  award of punitive damages. *Id* at 410. (citing *Marshall v. Brown*, 141 Cal. App. 3d 408, 418-19 (1983)).

22  This Court further noted that claims under section 17200 of the Business and Professions Code will not

23  support an award of punitive damages. *Id.* (citing *Newport Components v. NEC Home Electronics*, 671

24  F.Supp. 1525, 1550-51 (C.D. Cal.1987)). Indeed, it is settled law that punitive damages are not available

25  under section 17200. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148

26  (2003)("While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL

27  action is equitable in nature; damages cannot be recovered. . . . We have stated that under the UCL,

28

13

1    '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'") (internal citations

2    omitted); *see also Dozier v. Maispace*, No. C-05-1761, 2007 WL 518622, *10 (N.D. Cal. 2007)

3    (Trumbull, Mag. J.) (holding that neither compensatory nor punitive damages are recoverable under

4    section 17200) (citing *Industrial Indemnity Co. v. Santa Cruz County Superior Court*, 209 Cal.App.3d

5    1093, 1096 (1989)).

6            Plaintiffs urge this Court to overturn its prior ruling on this very issue in *Czechowski*, relying on

7    a 104 year-old case, *Greenberg v. Western Turf Ass'n*, 140 Cal. 357 (1903). In *Greenberg*, the California

8    Supreme Court upheld the imposition of punitive damages where a statutory penalty had already been

9    awarded because it determined that the civil penalty was not meant to punish. Based on *Greenberg*,

10   plaintiffs attempt to argue that the Labor Code penalties they seek to impose in this case are not meant

11   to "punish." Opp. at 18:24-19:5 (citing *Marshall v. Brown*, 141 Cal. App. 3d. 408 (1993) (punitive

12   damages not available where purpose of treble damages provision of Labor Code § 1054 was to punish).

13   However, as the California Supreme Court noted in *Murphy v. Kenneth Cole Productions, Inc.*, Labor

14   Code sections 203 and 226 do in fact impose "penalties" explicitly labeled as such. 40 Cal. 4th 1094,

15   1108-09 (2007). As the Labor Code provides for compensatory damages *in addition* to statutory

16   penalties, it is difficult to fathom how such penalties are not meant to "punish" employers who willfully

17   violate the provisions of the Labor Code. As this Court's reasoning in *Czechowski* was sound, the Court

18   declines to overturn it.

19          Finally, plaintiffs argue that the Court should allow plaintiffs to seek punitive damages because

20   the "statutory remedies may be inadequate." Plaintiffs' argument appears to be that because the statutory

21   penalties provided by the Labor Code are not substantial enough (i.e., are limited to a maximum of 30

22   days worth of wages per former employee), they are insufficient to deter Wal-Mart or others from

23   "committing the same acts in the future." Opp. at 20:28. Thus, in essence, plaintiffs seek to have this

24   Court substitute its own judgment for that of legislature's regarding the appropriate punishment for

25   violations of the Labor Code. This Court declines to do so. *See Wynn v. National Broadcasting Co., Inc.*,

26   234 F.Supp.2d 1067, 1112 (C.D. Cal. 2002) ("When the Legislature has spoken, the court is not free to

27   substitute its judgment as to the better policy.") (citing *City and County of San Francisco v. Sweet*, 12

28

Cal.4th 105, 121 (1995)). Accordingly, plaintiff's prayer for punitive damages is stricken.

**CONCLUSION**

For the foregoing reasons, Wal-Mart's Motion to Dismiss is DENIED with respect to the Third Cause of Action for overtime, the Sixth Cause of Action for unfair business practices insofar as it is based on violations of Labor Code § 227.3, and the class allegations. The Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND with respect to the Fifth Cause of Action for conversion and the Sixth Cause of Action for unfair business practices insofar as it is based on violations of sections of the Labor Code other than § 227.3.

Wal-Mart's Motion to Strike is GRANTED WITH LEAVE TO AMEND with respect to plaintiffs' claim for punitive damages and DENIED in all other respects. Paragraph 7 of the Prayer for Relief is STRICKEN. Plaintiffs are granted leave to file an amended complaint no later than 20 days of this Order **only if** they can allege an adequate basis for punitive damages.

IT IS SO ORDERED.


Dated: 5/29/07                           SAUNDRA BROWN ARMSTRONG

                                         United States District Judge