1  MORGAN, LEWIS & BOCKIUS LLP
   REBECCA EISEN, State Bar No. 96129
2  THOMAS M. PETERSON, State Bar No. 96011
   KENT M. ROGER, State Bar No. 95987
3  ERIC MECKLEY, State Bar No. 168181
   One Market, Spear Street Tower
4  San Francisco, CA 94105-1126
   Tel: (415) 442-1000; Fax: (415)442-1001
5  Email: reisen@morganlewis.com
          tmpeterson@morganlewis.com
6          kroger@morganlewis.com
          emeckley@morganlewis.com
7
   Attorneys for Defendant
8  WAL-MART STORES, INC.

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                    OAKLAND DIVISION

12

13  In Re WAL-MART STORES, INC.          Case No. C 06-02069 SBA (BZ)
    WAGE AND HOUR LITIGATION,                     C 06-05411 SBA (BZ)
14
                                         **NOTICE OF MOTION AND MOTION OF**
15                                       **DEFENDANT WAL-MART STORES, INC.**
    This document relates to Case Nos.:  **FOR SUMMARY JUDGMENT AND/OR**
16  C 06-02069 SBA (Smith) and          **SUMMARY ADJUDICATION AS TO**
    C 06-05411 SBA (Ballard)            **PLAINTIFFS BARRY SMITH, MICHAEL**
17                                       **WIGGINS AND DANTON BALLARD;**

18                                       **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT THEREOF**
19
                                         Date:      April 22, 2008
20                                       Time:      1:00 p.m.
                                         Place:     Courtroom 3
21                                       Judge:     Hon. Saundra Brown Armstrong

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   RELEVANT UNDISPUTED FACTS ................................................................................ 2

    A.   Wal-Mart's Vacation and Personal Time Off Policies and Procedures ................. 2

    B.   Final Pay Procedures ......................................................................................... 2

    C.   Facts Relating to Plaintiff Michael Wiggins ....................................................... 3

    D.   Facts Relating to Plaintiff Danton Ballard .......................................................... 7

    E.   Facts Relating to Plaintiff Barry Smith ............................................................... 8

III.  ARGUMENT .............................................................................................................. 10

    A.   The Applicable Summary Judgment Standard .................................................. 10

    B.   The Undisputed Evidence Demonstrates That Plaintiffs Wiggins and
        Ballard Were Paid All of the Wages They Were Owed .................................... 11

        1.   Plaintiff Wiggins Received All of His Final Wages ............................. 11

        2.   Plaintiff Ballard Received All of His Final Wages ............................... 12

    C.   The Section 17200 Claim of Plaintiffs Ballard and Wiggins Must Be
        Dismissed ........................................................................................................ 13

    D.   Plaintiffs Smith and Wiggins Cannot Recover Waiting Time Penalties
        Under Labor Code Section 203 Because They Absented and/or Secreted
        Themselves ...................................................................................................... 13

        1.   Smith Purposefully Absented Himself for More than Two Weeks
            and Received Payment in Full on the First Day He Appeared In
            Person to Receive His Final Wages ..................................................... 14

        2.   Wiggins Knowingly and Repeatedly Provided Wal-Mart With False
            Address Information and Received Payment in Full on the First
            Day He Appeared In Person to Receive His Final Wages ..................... 15

    E.   Plaintiffs Smith's and Wiggins' Claims for Waiting Time Penalties Under
        Labor Code Section 203 Are Barred By the Applicable Statute of
        Limitations ...................................................................................................... 17

        1.   Smith's Claim For Penalties Is Time-Barred ...................................... 17

        2.   Wiggins' Claim For Penalties Is Time-Barred .................................... 17

    F.   Plaintiffs' Claims for Violation of Labor Code Section 226 Must be
        Dismissed ........................................................................................................ 18

    G.   The Claims of Plaintiffs Ballard, Wiggins and Smith Must Be Dismissed
        Because They Lack Standing to Sue Under Article III ...................................... 18

IV.   CONCLUSION ............................................................................................................ 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

i

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Wright,*
468 U.S. 737 (1984) ..........................................................................................................19

*Anderson et al v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946) ..........................................................................................................12

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..........................................................................................................11

*Bates v. UPS, Inc.,*
2007 U.S. App. LEXIS 29870 (9th Cir. Dec. 28, 2007) .........................................................19

*Beebe v. Mobility, Inc.,*
20087 U.S.Dist. LEXIS 12400 (S.D. Cal 2008) ...................................................................17

*Blackwell v. SkyWest Airlines, Inc.,*
245 F.R.D. 453 (S.D.Cal. 2007) .........................................................................................19

*British Airways Bd. v. Boeing Co.,*
585 F.2d 946 (9th Cir. 1978) .............................................................................................11

*Casey v. Lewis,*
4 F.3d 1516 (9th Cir. 1993) ...............................................................................................19

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ....................................................................................................10, 11

*Church v. Jamison,*
143 Cal. App. 4th 1568 (2006) ...........................................................................................17

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors,*
498 F.3d 920 (9th Cir. 2007) .............................................................................................19

*Fox v. Ethicon Endo-Surgery, Inc.,*
35 Cal. 4th 797 (2005)......................................................................................................17

*Fry v. Holmes Freight Lines, Inc.,*
72 F. Supp. 2d 1074 (W.D. Mo. 1999)..................................................................................11

*Hogar Dulce Hogar v. Comm. Development Com'n of City of Escondido,*
110 Cal. App. 4th 1288 (2003) ...........................................................................................17

*Levina v. San Luis Coastal Unified Sch. Dist.,*
514 F.3d 866 (9th Cir. 2007) .............................................................................................19

*Lierboe v. State Farm Mut. Auto. Ins. Co.,*
350 F.3d 1018 (9th Cir. 2003) ...........................................................................................19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ....................................................................................... 19

*McCoy v. Superior Court,*
   157 Cal. App. 4th 225 (2007) ................................................................ 17, 18

*Schlenvogt v. Marshall,*
   2008 WL 576278 (E.D.Cal. 2008) ............................................................... 19

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*
   809 F.2d 626 (9th Cir. 1987) ................................................................ 11, 12

*Williams v. Boeing Co.,*
   2008 WL 509229 (9th Cir. 2008) ................................................................. 19

**Statutes**

California Code Civil Procedure
   §340(a) ....................................................................................................... 1, 17

Labor Code
   §208 ........................................................................................................... 13, 15

Labor Code
   §226 ............................................................................................................. 1, 18

Labor Code
   §226(a) ....................................................................................................... 18, 19

Labor Code
   §226(e) ............................................................................................................. 18

Labor Code
   §227.3 .............................................................................................................. 13

**Other Authorities**

DLSE *Enforcement Policies & Interpretations Manual*
   §4.2 .................................................................................................................. 15

DLSE *Enforcement Policies & Interpretations Manual*
   §4.2.2 ............................................................................................................... 14

**Rules**

Federal Rules of Civil Procedure
   56 ............................................................................................................... 10, 20

Federal Rules of Civil Procedure
   56(c) ................................................................................................................. 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                   iii

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1

**TABLE OF AUTHORITIES**
**(continued)**

2
**Page**

3
Federal Rules of Civil Procedure
    56(e) ................................................................................................................................11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PLEASE TAKE NOTICE** that on April 22, 2008, at 1 p.m., or as soon thereafter as the matter may be heard, before the Honorable Saundra Brown Armstrong, in Courtroom 3 of the United States District Court, Northern District of California, Oakland Division, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") will, and hereby does, move the Court for an order granting summary judgment on the claims of Plaintiffs Barry Smith, Michael Wiggins and Danton Ballard in their entirety pursuant to Federal Rule of Civil Procedure 56.[1]  Alternatively, Defendant moves the Court for an order granting summary adjudication/partial summary judgment of the following claims:

(1)     Wal-Mart is not liable on Wiggins' claim for unpaid vacation or personal time under Labor Code Section 227.3 or, to the extent any such claim is plead, Wiggins' claim for unpaid regular wages.  The undisputed evidence demonstrates that Wiggins received all wages owed to him;

(2)     Wal-Mart is not liable on Wiggins' claim for waiting time penalties for allegedly untimely payment of wages upon termination under California Labor Code section 203.  Wal-Mart paid Wiggins when he first appeared in the store at which he worked; prior to that time, he secreted and/or absented himself from payment being made. Wiggins' Section 203 claim is also barred by the statute of limitations;

(3)     Wal-Mart is not liable on Wiggins' claim for failure to record wages accurately under Labor Code section 226;

(4)     Wal-Mart is not liable on Wiggins' claim under Business and Professions Code section 17200 *et seq.*, based on alleged violations of Labor Code section 227.3;

(5)     Wiggins has no standing under Article III of the United States Constitution because he has not suffered any actual injury;

(6)     Wal-Mart is not liable on Ballard's claim for unpaid vacation or personal time under Labor Code section 227.3 or, to the extent any such claim is plead, Ballard' claim for unpaid regular wages.  The undisputed evidence demonstrates that Ballard received all

---

[1]  On March 3, 2008, the parties met and conferred regarding Wal-Mart's potential motions for summary judgment and/or summary adjudication. *See* Declaration of Rebecca Eisen In Support Of Defendant Wal-Mart Stores, Inc.'s Motions for Summary Judgment and/or Summary Adjudication ¶¶ 2-3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                        v                    MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                          ADJUDICATION; MPA IN SUPPORT
                                                                          (CASE NO. 06-02069 SBA (BZ))

1    wages owed to him;

2    (7)   Wal-Mart is not liable on Ballard's claim for waiting time penalties for allegedly late

3          payment of wages upon termination under California Labor Code section 203, because

4          Ballard was paid all wages he was owed on the same day his employment terminated.;

5    (8)   Wal-Mart is not liable on Ballard's claim for failure to record wages accurately under

6          Labor Code section 226;

7    (9)   Wal-Mart is not liable on Ballard's claim under Business and Professions Code section

8          17200 *et seq.*, based on alleged violations of Labor Code section 227.3;

9    (10)  Ballard has no standing under Article III of the United States Constitution because he

10         has not suffered any actual injury;

11   (11)  Wal-Mart is not liable on Smith's claim for penalties for allegedly late payment of

12         vacation upon termination under California Labor Code section 203.  Wal-Mart paid

13         Smith when he first appeared in the store at which he worked; prior to that time, he

14         secreted and/or absented himself from payment being made.  Smith's Section 203

15         claim is also barred by the statute of limitations;

16   (12)  Wal-Mart is not liable on Smith's claim for failure to record wages accurately under

17         Labor Code section 226; and

18   (13)  Ballard has no standing under Article III of the United States Constitution because he

19         has not suffered any actual injury.

20                          **STATEMENT OF RELIEF SOUGHT**

21         Defendant Wal-Mart seeks summary judgment in its favor as to all claims asserted against it

22   by Plaintiffs Barry Smith, Michael Wiggins and Danton Ballard, or, in the alternative, for summary

23   adjudication/partial summary judgment of the issues and claims noted above.

24         The Motion is made on the grounds that there is no genuine issue of material fact as to any of

25   the claims of Smith, Wiggins and Ballard and that, for the reasons set forth in the Memorandum of

26   Points and Authorities filed herewith, Defendant is entitled to judgment as a matter of law on each of

27   these three named Plaintiffs' claims.

28         The motion is based on this notice, the accompanying Memorandum of Points and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                               vi                   MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                 ADJUDICATION; MPA IN SUPPORT
                                                                 (CASE NO. 06-02069 SBA (BZ))

1  Authorities, the declarations of Rebecca Eisen, Michael Annatone, Dr. Denise Martin, Diana

2  McChristian and Roxanna Wigger, and the Exhibits attached thereto, Request for Judicial Notice

3  and any other matter of which the Court may or must take judicial notice, the papers on file with

4  the Court in this action, any oral argument given at the hearing on the motion, and any other

5  matter which the Court deems appropriate.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

vii

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Individual Plaintiffs and named class representatives Michael Wiggins and Danton Ballard claim that Defendant Wal-Mart, Inc. ("Wal-Mart") failed to pay them all vacation wages owed upon termination and seek waiting time penalties based upon the alleged failure to timely pay such wages. Wal-Mart is entitled to summary judgment as to the claims of Wiggins and Ballard because the undisputed evidence drawn from their personnel files, their deposition testimony and Wal-Mart's electronic databases demonstrates that Wiggins and Ballard were timely paid in full for all of the wages they were owed upon the termination of their employment from Wal-Mart.

To the extent that Wiggins claims he was paid late, his sworn deposition testimony demonstrates that any delay in payment was solely attributable to (a) his failure to appear in person at the Wal-Mart store where he worked in order to receive payment, and (b) his repeatedly providing Wal-Mart with a false/incorrect address to which payment could be mailed.  Wiggins admits he received payment in full as soon as he appeared in person at the store.

Individual Plaintiff Barry Smith concedes that Wal-Mart paid him all of the wages he was owed in connection with his termination, but claims that Wal-Mart failed to pay these wages timely and therefore seeks to recover only waiting time penalties.  Smith's sworn deposition testimony demonstrates, however, that he secreted and/or absented himself for more than two and one-half weeks following the termination of his employment and that, as soon as he appeared in person at the Wal-Mart store at which he worked, he received payment in full.

As to Smith's and Wiggins' claims for penalties under Labor Code section 203, any delay was not "willful", cannot be attributable to Wal-Mart and cannot create liability for penalties under Labor Code section 203.  Moreover, their penalty claims are barred by the applicable statute of limitations (California Code of Civil Procedure §340(a)) and must be dismissed for this additional reason.

Plaintiffs' claims for alleged violation of Labor Code section 226 and Business & Professions Code section 17200 are premised entirely upon their alleged unpaid vacation claims and, for the same reasons expressed above as to these underlying claims, must also be dismissed.

Because the undisputed evidence establishes that Ballard, Wiggins and Smith suffered no

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                    1                    MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1   actual injury, Ballard, Wiggins and Smith do not have standing to sue under Article III of the United

2   States Constitution and this Court should dismiss their claims and enter judgment for Defendant.

3          For all of the foregoing reasons, the entry of summary judgment in favor of Defendant and

4   against Plaintiffs Michael Wiggins, Danton Ballard and Barry Smith is warranted under Rule 56.

5   **II.     RELEVANT UNDISPUTED FACTS**[2]

6          **A.     Wal-Mart's Vacation and Personal Time Off Policies and Procedures**

7          Non-exempt hourly associates at Wal-Mart (such as Plaintiff Wiggins) are eligible to accrue

8   vacation and personal time off.  Wigger Decl. ¶4; Exs. 1-4. Under Wal-Mart's policies, non-exempt

9   hourly associates accrue vacation for every "service hour."  *Id*.  Any vacation or paid time off used by

10  non-exempt hourly associates is recorded in the computerized "time and attendance" database.

11  Wigger Decl. ¶3, 4, 5, 8.

12         Salaried associates (such as Plaintiffs Ballard and Smith) are also eligible to accrue vacation;

13  however, vacation accrued and/or used by salaried exempt associates is *not* recorded in the

14  computerized electronic database.  Wigger MSJ Decl. ¶6.[3]  In contrast to hourly associates, salaried

15  associates do *not* accrue personal time off.  Wigger MSJ Decl. ¶5; Wigger Decl. ¶4, Exs. 3-4.

16  Rather, as managerial employees, salaried associates have the inherent flexibility over their work

17  hours and therefore do not need to receive any formalized "personal time".  Wigger MSJ Decl. ¶5.

18  Thus, when an hourly associate is promoted to the position of managerial salaried associate, the

19  salaried associate's flexible work schedule allows him or her to take time off as needed.  Wigger MSJ

20  Decl. ¶5.

21         **B.     Final Pay Procedures**

22         Wal-Mart has an in-store, cash-based termination payout process.  In Wal-Mart stores,

---

[2] Citations to the deposition testimony of the named Plaintiffs are in the format "[deponent's last name] Depo. [page]:[line(s)]".  Citations to declarations are in the format "[declarant's last name] ¶[paragraph number]".  Citations to Exhibits attached to a declaration submitted herewith are in the format "Ex. __".   Citations to Exhibits attached to and authenticated in deposition testimony submitted herewith are in the format "Depo. Ex. __".   Deposition testimony is attached to the declaration of Rebecca Eisen filed herewith.

[3] Citations to the R. Wigger Declaration filed in connection with Defendant's Opposition to Class Certification Motion (*see* Court Docket #213) are in the format "Wigger Decl".  Defendant has submitted an additional declaration from R. Wigger in connection with its motion for summary judgment which is cited as "Wigger MSJ Decl.".

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1  Personnel Managers ("PMs") are in charge of processing and calculating final pay for hourly

2  associates.  To process final pay, Wal-Mart uses a California Payout Worksheet that lists each

3  potential component of the overall calculation, including "Vacation Hours (used)," "Vacation Hours

4  (unused)," "Personal Hours (used)," and "Personal Hours (unused)."  PMs also use a Termination

5  Checklist, Exit Interview Form, and Separation Notice to document and process terminations and

6  final pay.  Wigger Decl. ¶9, 18-21; Exs. 6-9.

7          Upon learning that an hourly associate has been terminated, the PM calculates what the

8  associate is owed using the California Payout Worksheet.  The PM adds both "available" and

9  "accrued" vacation, and determines the monetary value using the applicable wage rate.  From this

10  total, the PM calculates and deducts estimated taxes.  If the associate is in the store, the associate is

11  typically taken to the store's Cash Office, where the associate is paid in cash the amount on the

12  Payout worksheet.  Copies of relevant documents are typically placed in the associate's personnel

13  file.  The Cash Office retains the Payout Worksheet and maintains its own log showing amounts paid

14  in cash.  At or about the time final payment is made, termination and final payout information is

15  typically entered into the store's "SMART" system, which links to Wal-Mart's payroll system.

16  McChristian Decl. ¶7.

17          In the case of a salaried manager, regional personnel perform the final pay calculation, aided by

18  Market Assistants ("MAs").  The MA typically calculates the amount of available unused vacation

19  based upon communication with store management, including the salaried associate in question, and

20  store records.  As with hourly associates, the final pay information is typically entered into the

21  "SMART" system.  Wigger Decl. ¶33.

22      **C.**     **Facts Relating to Plaintiff Michael Wiggins**

23          Wal-Mart hired Wiggins as a non-exempt un-loader at Wal-Mart's Martinez store on April 30,

24  2004.  Wiggins Depo. 77:23-24.

25          In October 2004, Wiggins was suspended pending an investigation for misconduct, and his

26  last day worked was October 6, 2004.  Wiggins Depo. 98:14-17. On October 19, 2004, Wiggins

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

3

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1    walked out of a meeting relating to the investigation and was terminated the next day.[4]  Wiggins

2    Depo. 47:19-48:22; Depo. Ex. 3.  On that day, October 20, 2004, Wiggins's regular wages for the few

3    days he worked in his final pay period ending October 15, 2004 were already included in a regular

4    paycheck in the amount of $132.86. This paycheck was waiting for Wiggins at the store office where

5    he customarily picked up his paychecks (Wiggins did not use direct deposit). Wiggins Depo. 99:16-

6    18. Wiggins did not return to the store to pick up his regular paycheck on that date. Wiggins Depo.

7    58:20-63:5; Ex. 7.

8             On October 20, 2004 Wal-Mart prepared a money order to pay Wiggins all vacation and

9    personal time owed.  Annatone Decl. ¶¶7-11. Michael Annatone, a Personnel Manager in the

10   Martinez store, calculated the vacation wages and completed a final payout worksheet for Wiggins.

11   Annatone Decl. ¶9; Ex. 3.  He recognized that Wiggins had not worked since October 6, and

12   therefore had not earned any regular wages in the payroll period following October 15.  After

13   completing the payout worksheet, Mr. Annatone gave the worksheet to Kathy Howard, a District

14   Market Assistant who prepared the money order. Annatone Decl. ¶10.  Ms. Howard and Mr.

15   Annatone both telephoned Wiggins.  Annatone Decl. ¶11; Ex. 8. Ms. Howard spoke with Wiggins,

16   who – after putting her on hold repeatedly – provided an address to which the money order should be

17   sent at 2301 Sycamore Drive in Antioch, an inaccurate address which also appeared on his personnel

18   forms.[5]  Annatone Decl. ¶16; Ex. 8. On that same day, Wal-Mart sent Wiggins a money order for

19

20   [4] One file within the Associate database contains an entry suggesting that Wiggins was also
     terminated months earlier on July 4, 2004. Martin SJ/SA Decl. ¶V.B. Wiggins' personnel file,
21   however, does not indicate an actual termination on July 4, 2004; nor is there any data indicating he
     was later "re-hired."  Annatone Decl. ¶¶5-6.  The separate Paid Associates File in the payroll
22   database does not reflect a July termination either.  Martin SJ/SA Decl. ¶V.B. Wal-Mart's time and
     attendance records show that Wiggins worked on July 4 and again on July 8. *See id*.  The three-day
23   gap in service confirms that Wiggins' employment did not actually terminate on July 4, 2004.  Also,
     Wiggins' personnel file refers to April 30, 2004 as his hire date; there is no reference to a 2004
24   hire date, which would have been the case if he had been terminated on July 4 and was working again
     on July 8, 2004. Annatone Decl. ¶5.  Moreover, at no point in his deposition did Wiggins testify that
25   he had been terminated in July or at any point prior to October of 2004.  The undisputed evidence
     therefore establishes that Wiggins did not terminate and was not re-hired back in July 2004.

26   [5] Wiggins did not recall the specifics of giving Wal-Mart the addresses ("Did you have any
     conversation whatsoever with Kathy Howard or another woman from Wal-Mart whose name you
27   didn't know in which she attempted to verify an address for you to send your final paycheck? A.
     Again, I don't recall. No ma'am. Q. And …you can't say for certain it didn't happen, but you don't
28   recall it, correct? A. Right." Wiggins Depo. 69:18-70:2.), but admits he used these addresses and
     cannot deny the conversations occurred.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                        4                        MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                              ADJUDICATION; MPA IN SUPPORT
                                                                              (CASE NO. 06-02069 SBA (BZ))

1  $155.64, which was the net amount reflected on the Payout Worksheet, via certified mail. Annatone

2  Decl. ¶10-12. Wal-Mart included a letter from the District Manager stating:

3      This is to inform you that effective today, October 20, 2004, that we have decided
       to terminate your employment (involuntarily) with the status of "Not re-hirable"

4      due to you electing to walk out during the investigation process yesterday.

5      Enclosed is a money order in the amount of $155.64 along with a copy of the
       California payout worksheet detailing the benefits paid to you. If you have any

6      questions, please feel free to call my office.

7  Annatone Decl. ¶12; Ex. 5.

8          The letter and money order were sent to the Sycamore Drive address Wiggins had provided.

9  *Id.* Because Wiggins still had not picked up his regular paycheck, it too was sent separately to the

10 same address by the Personnel Manager at the Martinez store. However, both payments were

11 returned as undeliverable with a note from the post office stating, "NOT DELIVERABLE AS

12 ADDRESSED, UNABLE TO FORWARD." Annatone Decl. ¶¶14-15; Exs. 6-7.

13         In a further attempt to provide Wiggins his final pay, Wal-Mart called Wiggins for further

14 information about how to deliver his final pay. Annatone Decl. ¶18. When Wiggins finally returned

15 Wal-Mart's call, he provided a different address of Delta Faire Boulevard in Antioch, which was also

16 not his address but rather a P.O. Box he used for work in the music industry.[6] Annatone Decl. ¶18.;

17 Wiggins Depo. 73:1-6. Neither of the addresses Wiggins provided was his actual accurate mailing

18 address in Oakland. Wiggins Depo. 10:21-11:3.

19         On December 1, the envelope mailed on October 20 and returned was re-sent to Wiggins via

20 certified mail at the second address he provided, Delta Faire Boulevard in Antioch, with a letter

21 stating:

22     I am forwarding to you monies still owed to you… Previously I mailed this to the
       address you have on file with our store, which I verified personally with you prior

23     to sending the check back in October.

24     I am providing you with a copy of both our original record of your address and of
       the envelope addressed as per our records. I apologize that you did not receive this

25     check promptly, however, since you had verified this address with me personally, I
       didn't expect for it to be returned.

26

27 ────────────────
   [6] Although he does not specifically recall the telephone conversations in which he gave Wal-Mart

28 these addresses, Wiggins admitted that he "can't say for sworn certainty" that they did or did not take
   place. Wiggins Depo. 68:19-24; 69:24-70:2; 71:8-13.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                    5                    MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                      ADJUDICATION; MPA IN SUPPORT
                                                                      (CASE NO. 06-02069 SBA (BZ))

1    Annatone Decl. ¶18; Ex. 10.; Wiggins Depo. 72:20-73:22.[7]

2          This second mailing was also returned to Wal-Mart as undeliverable.  Annatone Decl. ¶20;

3    Ex. 11.

4          Eventually, Wiggins called the Martinez store and stated that he wanted to pick up his final

5    payment and was told to come in to the store to receive it. Wiggins Depo. 59:16-60:12. Wiggins

6    returned to the store and was paid for his final vacation hours and personal hours, in cash.[8] Wiggins

7    Depo. 58:20-63:5; Annatone Decl. ¶21; Ex. 12.  Wiggins also picked up and cashed his regular

8    payroll check in the amount of $132.86 which had been returned to Wal-Mart because Wiggins had

9    provided an inaccurate address.  Annatone Decl. ¶¶22.

10          Wiggins filed a claim for waiting time penalties for allegedly late payment of final wages with

11    the California Department of Labor Standards Enforcement ("DLSE").[9]  Wal-Mart received notice

12    that it was to appear for the conference on January 12, 2005.  Annatone Decl. ¶17; Ex. 9.

13          Wal-Mart Personnel Manager Mr. Annatone emailed Wal-Mart District Manager Kathy

14    Howard about the DLSE claim, stating:

15          I received an order to appear for Wal-Mart regarding Michael Wiggins for January
           12, 2005, the Labor Board on Clay Street in Oakland.  It's for wages owed to him
16          and waiting time penalties.  We made every effort to pay him.  This is totally
           unfair … please advice.
17
           Manager Howard responded:
18
           "I did get in touch with him and sent out the check from here to the address he
19          gave me.  He held me on hold a long time and kept putting me on hold.  Did you
           mail him his payroll check from the store?"
20
           Annatone responded:
21
           "Yes.  And as with you I sent it to the address he verified as being correct.
22          Something is wrong here."

23    Annatone Decl. ¶16; Ex. 8.

24    _____

25    [7] This was also the address Wiggins had listed on his application as the emergency contact
      information for a friend of his.  Wiggins Depo. 76:17-77:1.

26    [8] Wiggins recalled returning to the store on November 4, 2004, however, the Cash Office Database
      reflects him returning to the store and being paid on December 3, 2004.  Wiggins Depo. 59:24-62:20;
27    Martin SJ/SA Decl. ¶V.B.; Ex. 6.

28    [9] According to his deposition testimony, Wiggins contacted the DLSE the week after October 20,
      2004.  Wiggins Depo. 34:20-35:8; 36:3-6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                    6                    MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                       ADJUDICATION; MPA IN SUPPORT
                                                                       (CASE NO. 06-02069 SBA (BZ))

1   The DLSE conference did not go forward because, according to Wiggins, he did not receive

2   that mailing either, and his claim was eventually dismissed for his failure to prosecute it.[10]   Wiggins

3   Depo. 90:12-22.

4   **D.      Facts Relating to Plaintiff Danton Ballard**

5   Danton Ballard was hired on July 30, 2004 as an hourly non-exempt associate.  Ballard Depo.

6   12:5-10, 13:1-4, 15:1-19.  He accrued vacation his first year but was paid out for all those hours on

7   his one-year employment anniversary in July 2005.  Martin SJ/SA Decl. ¶V.A.b.1.; Ex. 5.  Ballard

8   then again began accruing vacation hours, which were tracked in the Payroll Database.   On

9   September 3, 2005, Ballard became a salaried non-exempt manager-in-training.  As of that date,

10   Ballard had accrued 8.48 vacation hours.  *Id.*  After becoming salaried, Ballard's vacation accrual

11   was no longer tracked in any electronic database and he was no longer eligible for personal time.

12   Wigger MSJ Decl. ¶6.  Based on Ballard's 80-hour pay week, he accrued an additional 27.69

13   vacation hours through January 6, 2006, when he was promoted to an exempt assistant manager

14   position.  Martin SJ/SA Decl. ¶V.A.b.2.  As of the date he converted to exempt status, Ballard had

15   accrued 36.35 hours of vacation.  Martin SJ/SA Decl. ¶V.A.b.

16   Ballard worked for four pay periods as a salaried manager, and was involuntarily terminated

17   on March 3, 2006 for gross misconduct.  Ballard Depo. 71:14-72:8, 75:13-76:2.  During his stint as

18   an exempt associate, Ballard accrued another 12.31 hours of vacation.  Martin SJ/SA Decl. ¶V.A.b.3.

19   Thus, at the time of termination, Ballard had accrued a total of 48.66 hours of vacation which had a

20   gross monetary value of $1,170.36.  Martin SJ/SA Decl. ¶V.A.b.  In calculating Ballard's final

21   vacation pay, Wal-Mart calculated that Ballard was owed $1,184.03 in vacation pay.  Wigger Decl.

22   ¶21; Ex. 9; Martin SJ/SA Decl. ¶V.A.b.; Ex. 5.  On the same day he was terminated, Ballard received

23   a payment of $1,376.43 gross ($759.43 net) in cash at the store.  Ballard Depo. 112:13-15; Depo. Ex.

24   4.  The payment consisted of $192.40 (for one day of work during the pay period) and $1,184.03 (for

25   his accrued vacation).  Martin SJ/SA Decl. ¶V.A.b.; Ex. 5.  Wal-Mart *overpaid* Ballard with respect

26

---

27   [10] Wiggins claim for unemployment was also initially denied; again, according to Wiggins, because

28   he did not receive the letter regarding the denial of unemployment benefits sent to him by the E.D.D. Wiggins Depo. 82:13-22.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                      7                   MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                       ADJUDICATION; MPA IN SUPPORT
                                                                       (CASE NO. 06-02069 SBA (BZ))

1    to his vacation by $13.67.  Martin SJ/SA Decl. ¶V.A.b.

2         After Ballard terminated, the payroll database shows a payment of $2,929.94 gross for

3    vacation and $1,486.41 for gross regular wages, and a net cash draw payment in the amount of

4    $2,840.23.  Martin SJ/SA Decl. ¶V.A.a.; Ex. 5.  Ballard's file and the Payout Worksheet demonstrate

5    that Ballard was *not* owed (or paid) any of these sums.  The erroneous entries relate to another Wal-

6    Mart assistant manager (Richard Madala) whose employment terminated during the April 2006 pay

7    period, after Ballard had already terminated.  Martin SJ/SA Decl. ¶V.A.a.  It was Madala who was

8    owed this vacation and wages upon termination and who received a full cash payout for those

9    amounts.  *Id.*  The information pertaining to Madala was somehow inadvertently entered into the

10   payroll database for Ballard.

11        **E.      Facts Relating to Plaintiff Barry Smith**

12        Barry Smith was hired as a "management trainee" at Wal-Mart's Milpitas store on September

13   22, 2003.  The terms and conditions of Smith's employment were set forth in two letters at the outset

14   of his employment, which laid out those terms in detail.  Smith Depo. 26:19-33:14; Depo. Exs. 1, 2.

15   Pursuant to those letters, Smith was entitled to accrue one week of vacation during his first year of

16   employment and two weeks during the second year of his employment.  Smith Depo. 33:9-14; Depo.

17   Exs. 1, 2. Smith received an annual base salary of $36,000 and a 75% Geographical Assistance

18   Program[11] adjustment which resulted in him receiving a total annual salary of $63,000.  Smith Depo.

19   30:5-32:6; Depo. Exs. 1, 2. Smith received a copy of the Wal-Mart handbook, which discussed Wal-

20   Mart policies and benefits and signed an acknowledgment stating that he had read and understood the

21   policies.  Smith Depo. 129:18-130:9; Depo. Ex. 6.

22        Smith became a salaried exempt assistant manager almost six months later on March 6, 2004.

23   On November 1, 2003, a few months after his hiring, Smith was sent home after his supervisors "got

24   upset with" him for issues relating to the state in which Smith left the store when closing it.  Smith

25   Depo. 44:14-25, 59:13-23.  Smith understood that he was expected to decide whether he wished to

26   continue working for Wal-Mart.  Smith Depo. 45:5-13.  On that day, the Company took his keys and

27

28

[11] The Geographical Assistance Program ("GAP") was a cost of living adjustment based on the different Wal-Mart store locations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                          8                      MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                              ADJUDICATION; MPA IN SUPPORT
                                                                              (CASE NO. 06-02069 SBA (BZ))

his Company ID, however, Smith returned to work after that day.  Smith Depo. 60:19-24.

On December 17, 2004, Smith attended a meeting with Store Manager Kevin Throneberry in which, according to Smith, Mr. Throneberry told Smith that he was the worst assistant ever and Mr. Throneberry did not want Smith in the store.  Smith Depo. 52:20-53:18. After that conversation, Smith immediately left the store and testified that he "didn't think about" final wages.[12]  Smith Depo. 75:21-76:20.

Smith testified that after leaving the store on December 17 he went home, received a message about a sick uncle, made immediate travel arrangements, and late that night on December 17 flew to Michigan.  Smith Depo. 71:2-75:20. Before leaving on his trip, Smith did not communicate in any way with the Wal-Mart Milpitas store at which he worked, because "he was not particularly in the mood".  Smith Depo. 75:3-14.  Smith never called the Milpitas store during his trip. Smith Depo. 82:14-20.  Smith returned from Michigan on December 22, 2004.  Smith Depo. 79:14-19.  However, Smith did not return to the Milpitas store at that time; rather, on December 27, 2004 Smith traveled out of town again (this time to Los Angeles) on personal business unrelated to Wal-Mart.  Smith Depo. 84:16-85:9.  He returned to the Bay Area on January 1, 2005.  Smith Depo. 94:15-19.  Smith did not go into the store that day because he decided to go grocery shopping and attend to other personal errands.  Smith Depo. 94:20-25.

On January 2, 2005, for the first time following his departure from the state on December 17, Smith called the Wal-Mart Milpitas store. Smith Depo. 95:1-5.  He asked to speak to an Assistant Manager, but did not ask to speak with his supervisor, Store Manager Mr. Throneberry.  Smith Depo. 97:2-6.  He spoke to an Assistant Manager named "Tammy" and asked if she could go to the cash cage and see if he had a check there. Smith Depo. 95:17-23.  Tammy checked and found something for Smith in an envelope. Smith Depo. 95:17-96:3.  Smith then went to the store for the first time since December 17, 2004.  Smith Depo. 84:12-15.  He picked up the envelope from Tammy and returned home without opening the envelope. Smith Depo. 96:13-15.  When he opened the envelope

---

[12] Smith understood that Wal-Mart policy required that terminated employees be paid on the day of termination.  Smith Depo. 67:8-68:20.  Indeed, on a number of different occasions, in his role as a manager Smith had been called to the cash office to assist an employee in receiving payment for final wages.  Smith Depo.  65:13-67:7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

9

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

at home, Smith found that the check he had picked up was for a small amount, approximately $68. Smith Depo. 98:12-14. Smith never asked Wal-Mart what the check was for and has "no idea" what it consisted of.[13]  Smith Depo. 107:23-25, 109:1-18.

Smith called the store again and asked Tammy to look for another envelope. Smith Depo. 98:12-23. She found a second envelope with his name on it, and Smith returned to the store, picked it up, and opened the envelope at the store. Smith Depo. 98:12-99:1. It contained cash in the amount of his final wages, for a net of $1,315.87. Smith Depo. 101:24-25. Smith signed the Cash Payout Worksheet, took the cash and left. Smith Depo. 100:10-21. Smith had not returned to the store or called any manager at the Milpitas store to inquire about his final pay between the date he left the store (December 17, 2004) and when he picked up his final pay (January 2, 2005). Smith Depo. 82:14-20, 84:12-15, 85:6-9.

Smith testified that on January 2, 2005 he received a cash payment of $1,315.87 net, which represented payment in full for his accrued vacation and regular wages through December 17, 2004.[14] Smith Depo. 101:24-25, 152:4-20, 190:2-191:7; *see also*, Martin SJ/SA Decl. Ex. 7.

## III.   ARGUMENT

### A.   The Applicable Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *See* Fed. R. Civ. Pro 56(c); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th

---

[13] This was a "true-up" payment check. After Smith's termination, but before he returned to the Milpitas store to collect his wages on January 2,2005, the company payroll department reviewed the wages paid, and the taxes and benefit deductions withheld and issued a true up check in the amount of $68.

[14] At the time of his termination, Smith's bi-weekly rate of pay was $2,557 ($1,461.16 base salary plus $1,095.87 GAP). Smith took one week of vacation in October of 2004 and, thus, had used all of the vacation he had accrued during his first year of employment. Smith Depo. 43:13-44:2. Smith worked 5 out of 10 days during the final pay period, for which he received $1,278.52 in regular wages. Smith had worked for 5 out of 26 pay periods in his second year of employment for which he received $491.73 in vacation. Smith Depo. 152:4-20, 190:5-191:7. The gross payment of $1,770.25 was subject to tax withholdings and deductions, which resulted in the net payment of $1,315.87. Martin SJ/SA Decl. ¶V.C., Ex. 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

10

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

Cir. 1978).  In order to rebut a summary judgment motion, the non-moving party must set forth specific facts showing that there is a genuine issue of material fact in dispute.  Rule 56(e).  In opposing summary judgment, a party may not rely upon the allegations of the complaint, but must produce at least some "significant probative evidence tending to support the complaint."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).  If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to judgment as a matter of law."  *Celotex,* 477 U.S. at 323.

When ruling upon summary judgment, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Fry v. Holmes Freight Lines, Inc.*, 72 F. Supp. 2d 1074, 1076 (W.D. Mo. 1999) (relying on *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

**B.**     **The Undisputed Evidence Demonstrates That Plaintiffs Wiggins and Ballard Were Paid All of the Wages They Were Owed**[15]

**1.**     **Plaintiff Wiggins Received All of His Final Wages**

The documents in Wiggins' personnel file, the electronic databases maintained by Wal-Mart and Wiggins' own deposition testimony make clear that Wiggins received all his wages and vacation when he finally appeared in person at the Wal-Mart store where he worked in Martinez.  Wiggins Depo. 58:20-63:5, 87:6-22; Annatone Decl. ¶¶6-22, Exhs. 1-13; Martin SJ/SA Decl. ¶V.B, Ex.6. Wiggins admitted appearing at the store in person (in either November or December), signing the California Payout Worksheet, and receiving payment of $155.64 in cash for the accrued vacation/personal time he had on the books.  Wiggins Depo. 58:24-63:5. This is also reflected in the signed Payroll Worksheet in his personnel file.  Annatone Decl. ¶21; Ex. 12.

---

[15] Plaintiff Smith has already admitted that he was paid all wages owed to him.  Plaintiffs stated in their class certification motion:  "Wal-Mart's computerized records reflect that . . . [Smith] was ultimately paid all earned and unpaid wages."  Class Cert. Mot. 18:18-22.  Furthermore, Plaintiff's own expert Dr. Shapiro concluded that Smith had been paid all wages owed, but not "in a timely manner."  Shapiro Decl. ¶42 (Court Docket #149-10).  The Court has relied upon and accepted Plaintiffs' representation that Smith had been paid all wages owed by Wal-Mart.  *See* Order on Class Cert. 16:2-26 (Court Docket #250).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

11

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1    Wiggins must be able to demonstrate the essential element of his claim that he was not paid

2    for all of the vacation and personal time which he alleges he was owed.  Because the undisputed

3    evidence demonstrates that Wiggins was indeed paid for all vacation and personal hours he was

4    owed, his claim necessarily fails.  In order to defeat summary judgment, Wiggins must present

5    specific substantial evidence that he did not receive his vacation and personal time pay.  *See*

6    *Anderson et al v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *T.W. Elec. Serv., Inc. v. Pacific*

7    *Elec. Contractors Ass'n, supra* at 630.  Wiggins has no such evidence and, as a result, Wal-Mart is

8    entitled to summary judgment under Rule 56(c).[16]

9              **2.        Plaintiff Ballard Received All of His Final Wages**

10    The information contained in Ballard's personnel file and the Wal-Mart electronic databases

11    confirm that he was paid all wages he was owed upon termination of his employment.  Martin SJ/SA

12    Decl. ¶V.A.; Exs. 5, 8.  Plaintiffs' expert Dr. Shapiro opined that Ballard was underpaid because "Mr.

13    Ballard was owed an additional $1,486.41 gross wages and $2,929.94 gross vacation pay for which

14    hours, earnings and taxes were calculated, but for which a net payment record was not entered; there

15    is no record of these amounts ever being paid."  Shapiro Dec. ¶39 (Court Docket #149-10, page 12).

16    Shapiro reached this conclusion without reviewing the Cash Office Database information or Ballard's

17    personnel file or actually calculating the amount of vacation pay and regular wages Ballard had

18    accrued and earned based on the "service hours" actually worked by Ballard.  Had Dr. Shapiro

19    reviewed the relevant evidence and made such calculations (as Dr. Martin did in her declaration), Dr.

20    Shapiro would have realized that Ballard had not worked a sufficient number of service hours to earn

21    and accrue the more than $1,400 in regular wages and $2,900 in vacation that Dr. Shapiro claims was

22    owed.  The individualized assessment performed by Dr. Martin made clear that the amounts Dr.

23    Shapiro opined were owed to Ballard were in fact owed – and paid – to another salaried managerial

24    employee, Richard Madala, one month after Ballard's employment terminated.

---

[16] Plaintiffs' expert Dr. Shapiro opined that Wiggins "was paid no vacation pay or personal pay on or
after the October 20, 2004 termination". (Shapiro Decl. ¶41, Court Docket #149-10, page 13) Dr.
Shapiro reached this erroneous conclusion without reviewing the information contained in Wal-
Mart's Cash Office Database or Wiggins' actual deposition testimony or Wiggins' personnel file, all
of which conclusively demonstrate (as described above) that Wiggins was in fact overpaid by Wal-
Mart.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

12

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

Ballard was not owed any personal time that had been recorded in the Payroll Database as having accrued prior to his becoming a salaried associate.  Managerial salaried associates such as Ballard had the flexibility to control their own work hours and therefore did not accrue and were not eligible for personal time under Wal-Mart's policies.  Because Ballard was no longer paid on an hourly basis after being promoted in September of 2005, he had the flexibility to routinely take time away from work – time for which he was paid his regular salary.  Wigger MSJ Decl. ¶5.  Thus, Ballard's flexible work schedule allowed him to use any personal time which had accrued but was not taken during his prior tenure as an hourly associate.

C.   **The Section 17200 Claim of Plaintiffs Ballard and Wiggins Must Be Dismissed**

The Court previously dismissed Plaintiffs' Business and Professions Code Section 17200 claim except to the extent it was premised on unpaid vacation under Labor Code section 227.3.  *See* Court Docket Entry #86.  Because neither Wiggins nor Ballard can demonstrate that they are owed any vacation payment from Wal-Mart, their Section 17200 claims must also be dismissed.

D.   **Plaintiffs Smith and Wiggins Cannot Recover Waiting Time Penalties Under Labor Code Section 203 Because They Absented and/or Secreted Themselves**

Regardless of whether an employee quits or is fired, an employee must actually be present at the physical location where he or she worked in order to receive final payment of wages (unless the employee has authorized mailing of the final payment and designated a mailing address).  Labor Code §§202, 208.  If an employee does not appear in person at the place of employment to receive his or her final wages, the employee is not entitled to waiting time penalties for any time which passes prior to him or her actually showing up to receive the final wages.  Labor Code Section 203 contains "carve out" language which addresses this situation:

"An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her … is not entitled to any [waiting time penalty] benefit under this section for the time during which he or she so avoids payment."

Similarly in an Opinion Letter from the California Division of Labor Standards Enforcement ("DLSE"), the Labor Commissioner stated:

"You are correct when you state that [Labor Code Section 208] would require the quitting employee to return to the office or agency where the employee has been

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                    13                    MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

performing labor to collect his or her wages.  You are also correct in stating that **waiting time penalties would not accrue to an employee who fails to return to the place of employment** within 72 hours after quitting (unless, of course, the employee has given at least 72 hours prior notice of intention to quit in which event the wages are due at time of quitting (Labor Code section 202).)" (emphasis added)

DLSE Op. Ltr. 1986.09.15.[17]

"The statute [*i.e.*, Section 203] contemplates that the penalty shall be enforced against an employer who is *at fault*.  It must be shown that the employer *owes the debt and refuses to pay it*." DLSE *Enforcement Policies & Interpretations Manual* §4.2.2. (emphasis added).

1.   **Smith Purposefully Absented Himself for More than Two Weeks and Received Payment in Full on the First Day He Appeared In Person to Receive His Final Wages**

The undisputed material facts demonstrate that Smith failed to come in to the store to pick up his final wages for more than two weeks.  Smith Depo. 71:2-75:20, 79:4-23, 84:6-85:21, 91:9-92:11, 99:13-20, 151:21-152:12, 189:8-191:7.  After his termination on December 17, 2004, Smith did not wait for his final pay to be calculated, but rather immediately left the store and "didn't think about" asking for final wages.  Smith Depo. 75:21-76:20.  That same day, Smith made travel arrangements and flew to Michigan for five days.  Smith Depo. 71:2-75:20.  Before leaving town, Smith did not communicate with anyone at Wal-Mart because "he was not particularly in the mood."  Smith Depo. 75:3-14.  Nor did he communicate with anyone at the store during his five day trip.  Smith Depo. 82:14-20.  Smith returned from Michigan on December 22, 2004, but did not visit the Milpitas store or call anyone at the store regarding his final pay.  Smith Depo. 85:6-21.  After a few days, he made travel arrangements again and went to Los Angeles until January 1, 2005.  Smith Depo. 84:23-85:5.  Returning to the Bay Area on January 1, 2005, Smith still did not visit the Milpitas Wal-Mart store.  Smith Depo. 94:15-21.  Finally, on January 2, 2005, for the first time since leaving the store and the state on December 17, 2004, Smith returned to Wal-Mart to pick up his final pay.  Smith Depo. at 84:12-15, 95:13-96:3.  He received all of his earned and unpaid wages.  Smith Depo. 152:4-20, 190:2-191:7.

---

[17] *See* RJN Exh. R, submitted in connection with Wal-Mart's Opposition to Plaintiffs' Motion for Class Certification.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

14

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1    Smith clearly and unequivocally "secreted or absented" himself from receiving payment.

2    Given these undisputed facts, Wal-Mart did not "willfully" fail to pay Smith his final wages during

3    the period prior to January 2, 2005.  As a result, his claim for penalties should be dismissed.  As this

4    is his only claim, Wal-Mart is entitled to the entry of judgment on the claims asserted by Smith.[18]

5                **2.    Wiggins Knowingly and Repeatedly Provided Wal-Mart With False
                  Address Information and Received Payment in Full on the First Day
6                He Appeared In Person to Receive His Final Wages**

7    Wiggins' Labor Code Section 203 claim also fails because Wal-Mart did not "willfully" delay

8    or "refuse" to pay any wages to Wiggins; rather, Wiggins "secreted" and "absented" himself, which

9    precludes the imposition of waiting time penalties under Section 203.

10   According to the DLSE, the definition of "willful" for purposes of Labor Code section 203

11   requires intentional wrongdoing:  "A willful failure to pay wages within the meaning of Labor Code

12   section 203 occurs when an employer intentionally fails to pay wages to an employee when those

13   wages are due."  *See* DLSE ENF. POL. AND INTERP. MANUAL §4.2.

14   Wal-Mart is clearly not liable to Wiggins on his claim for waiting time penalties because Wal-

15   Mart did not act "willfully" to prevent him from obtaining his final regular paycheck or his final

16   termination pay and never "refused" to pay either amount.

17   First, it is undisputed that Wiggins' regular paycheck for the period through October 7 was

18   waiting for him at the store at which he worked, consistent with Wal-Mart's customary (and lawful)

19   method of paying wages to him.  Annatone Decl. ¶¶10-11; Ex. 3.  Wiggins simply did not pick it up.

20   Annatone Decl. ¶11. Thus, Wal-Mart did not "refuse" to pay the final regular paycheck.  To the

21   contrary, Wal-Mart made payment to Wiggins in a manner consistent with normal practices and in

22   compliance with Labor Code section 208 ("Every employee who is discharged shall be paid at the

23   place of discharge").  All delays were caused by Wiggins' failure to pick these payments up,

24   compounded by his failure to provide an accurate mailing address.

25   When Wiggins applied for work with Wal-Mart in April, 2004, he completed a written

26   application, which required that all information provided be truthful and stated that providing false

27

28

---

[18] Plaintiffs, their expert and the Court have all acknowledged that Smith received payment of all wages owed and that his *only claim* is for waiting time penalties.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                    15                    MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                        ADJUDICATION; MPA IN SUPPORT
                                                                        (CASE NO. 06-02069 SBA (BZ))

1   information would be grounds for termination. Wiggins Depo. 14:13-16:21; Depo. Ex. 1. The

2   application required Wiggins to certify that "the information on this application is correct and that

3   any misrepresentation or omission of any information will result" in his disqualification from

4   employment. *Id.* Wiggins admits that he understood that Wal-Mart expected him to complete the

5   application accurately. Wiggins Depo. 16:14-21. Nonetheless, Wiggins provided the false home

6   address of 2301 Sycamore Drive in Antioch, which was his girlfriend's address – he had never lived

7   at the Sycamore Drive address. Wiggins Depo. 20:5-13. Wiggins provided the false address in his

8   employment application because he believed Wal-Mart would be more likely to hire him if it

9   believed he lived closer to the store. Wiggins Depo. 23:25-24:8. Wiggins repeated the false Sycamore

10  Drive address on his W-4 tax withholding form. Wiggins Depo. 24:20-26:5.

11          Wal-Mart also provided Wiggins with an "Information Sheet" for relevant personal

12  information. Wiggins Depo. 74:19-77:16; Depo. Ex 9. The sheet specifically asked for the employee's

13  current address as well as a permanent address for the purpose of contacting the employee after a

14  termination, stating: "In the event my employment with Wal-Mart Stores, Inc. is terminated for any

15  reason, the following person will always know where I can be reached or what my forwarding

16  address will be." Wiggins used the false Sycamore Drive address as his current address on the

17  Information Sheet, and left the permanent address space blank for reasons he "can't recall." Wiggins

18  Depo. 75:25-77:16; Depo. Ex 9. Thus, the only address he provided – repeatedly – on his Wal-Mart

19  personnel documents was the false Sycamore Drive address of his girlfriend's apartment.

20          As the undisputed facts make clear, any delay caused by the return of the mailing was caused

21  by the conduct of Wiggins, not Wal-Mart, and simply cannot be construed as a "willful" refusal to

22  pay wages. Annatone Decl. ¶¶11, 14, 18, 20; Exs. 4, 6, 11.

23          Second, Wal-Mart did not willfully withhold or refuse to pay final vacation wages for the

24  period ending with Wiggins' termination on October 20. Rather, it is undisputed that Wal-Mart

25  provided a money order for the final amount due, which was available on October 20. Annatone

26  Decl. ¶10; Ex. 5. When Wiggins eventually appeared in person at the Martinez store, he received

27  payment in full of vacation wages owed to him. Wal-Mart did not "intentionally fail" or "refuse" to

28  pay Wiggins any wages, and his Labor Code section 203 claim must be dismissed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

16

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

E.   **Plaintiffs Smith's and Wiggins' Claims for Waiting Time Penalties Under Labor Code Section 203 Are Barred By the Applicable Statute of Limitations**

Labor Code Section 203 provides that "[s]uit may be filed for [waiting time] penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise." However, the limitations period stated in Section 203 does not apply to a claim for waiting time penalties *only*; a claim for waiting time penalties alone is subject to the one-year statute of limitations established in California Code of Civil Procedure Section 340(a). *McCoy v. Superior Court*, 157 Cal. App. 4th 225, 233 (2007); *see also*, *Beebe v. Mobility, Inc.*, 20087 U.S.Dist. LEXIS 12400, *11 (S.D. Cal 2008).

The statute of limitations begins to run on the date the cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005); *Hogar Dulce Hogar v. Community Dev. Comm'n of City of Escondido*, 110 Cal. App. 4th 1288, 1295 (2003). "[T]he wrong that triggers the running of the statute of limitations is the violation of the statute." *Church v. Jamison*, 143 Cal. App. 4th 1568, 1583, fn. 25 (2006).

1.   **Smith's Claim For Penalties Is Time-Barred.**

Smith admitted that he was paid all wages to which he was entitled. Class Cert. Motion. 18:20 (acknowledging that Smith was "ultimately paid all earned and unpaid wages"); Smith Depo. 152:8-10, 189:8-191:7. Smith's claim is only for waiting time penalties. *Id.*

Smith claims his employment with Wal-Mart terminated on December 17, 2004. Depo. 190:5-8. Smith's claim would not have accrued unless and until he presented himself at the store for payment (*i.e.*, on January 2, 2005) It is undisputed that Smith's original Complaint was filed on March 20, 2006, almost than one year *and three months* after the last conceivable date on which his claim arose. Smith's claim for waiting time penalties is governed by Code of Civil Procedure section 340(a). Because that is Smith's only claim in this lawsuit, Defendant is entitled to the entry of judgment in its favor against Plaintiff Smith.

2.   **Wiggins' Claim For Penalties Is Time-Barred.**

As described in detail *supra*, Wiggins was paid all final regular and vacation wages owed to him by Wal-Mart – he simply has no claim for unpaid wages and never did. *See*, Annatone Decl. 21-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

17

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1   22; Martin SJ/SA Decl. ¶V.B.  As a result, Wiggins' only possible claim is for waiting time penalties

2   for the alleged late payment of his wages.  The one-year statute of limitations therefore applies to

3   Wiggins' penalty claim.  *McCoy*, 157 Cal. App. 4th at 233.

4     Wiggins appeared at the store for full payment of his final wages from Wal-Mart on or about

5   December 3, 2004.  Thus, to the extent he can assert any claim for waiting time penalties, his claim

6   accrued and the statute of limitations began to run on that day. Wiggins' original Complaint was filed

7   on March 20, 2006.  Therefore, Wiggins' claim for waiting time penalties is also untimely.  Because

8   Wiggins has no other claims against Wal-Mart, Wal-Mart is entitled to the entry of judgment in its

9   favor against Plaintiff Wiggins.

10    **F.**  **Plaintiffs' Claims for Violation of Labor Code Section 226 Must be Dismissed**

11    Plaintiffs claim that Wal-Mart violated Labor Code section 226.  Complaint ¶71-73.  Section

12  226(a) requires that an employer provide each employee with an itemized statement showing, among

13  other things, gross wages earned, total hours worked by the employee "except for any employee

14  whose compensation is solely based on a salary and who is exempt from payment of overtime," all

15  deductions, net wages earned, the inclusive dates of the period for which the employee is paid, and

16  all applicable hourly rates in effect during the pay period and the corresponding number of hours

17  worked at each hourly rate by the employee.  To succeed with a claim for damages under that Section

18  226, an employee must prove that he or she suffered "injury as a result of a knowing and intentional

19  failure by an employer to comply" with the requirements of section.  *See* Labor Code section 226(e).

20    Plaintiffs have not identified how Wal-Mart allegedly violated Section 226, other than to

21  claim that their wage statements were "inaccurate."  Smith, Ballard and Wiggins have no evidence

22  that any of the information on their pay stubs was incorrect.  Moreover, none of the Plaintiffs can

23  present any evidence of any injury caused by any information which was stated on their paycheck

24  stubs.  Thus, this claim too must be dismissed.

25    **G.**  **The Claims of Plaintiffs Ballard, Wiggins and Smith Must Be Dismissed
        Because They Lack Standing to Sue Under Article III**

26
27    Standing is the threshold issue of any federal action because "the core component of standing

28  is an essential and unchanging part of the case-or-controversy requirement of Article III."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1

18

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))

1   *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors,* 498

2   F.3d 920, 923 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992));

3   *Levina v. San Luis Coastal Unified Sch. Dist.,* 514 F.3d 866, 868 (9th Cir. 2007).   Given the

4   constitutional requirement of standing to invoke the power of a federal court, a plaintiff's lack of

5   standing divests the court of subject matter jurisdiction.  *Schlenvogt v. Marshall,* 2008 WL 576278,

6   *5 (E.D.Cal. 2008).   To have standing, a plaintiff must allege personal injury fairly traceable to the

7   defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.  *Williams v.*

8   *Boeing Co.,* 2008 WL 509229, *3 (9th Cir. 2008) (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984)

9        Here, Ballard, Wiggins and Smith lack standing to sue under Article III of the United States

10  Constitution because the undisputed evidence demonstrates that none of them suffered any injury

11  (*e.g.*, they were timely paid in full for all wages owed).   *Allen v. Wright*, 468 U.S. 737, 750-751

12  (1984); *Bates v. UPS, Inc.*, 2007 U.S. App. LEXIS 29870, at *13 (9th Cir. Dec. 28, 2007)(en banc).

13  *See also Blackwell v. SkyWest Airlines, Inc.,* 245 F.R.D. 453, 463 (S.D.Cal. 2007) (plaintiff lacked

14  standing to bring claim for inaccurate wage statement under Labor Code § 226(a) where she

15  experienced no injury within the applicable limitations period).   Plaintiffs have failed to satisfy their

16  burden of demonstrating otherwise.  *See Boeing,* 2008 WL 509229 at *4 ("On a summary judgment

17  motion challenging standing a plaintiff may not rest on mere allegations but must set forth by

18  affidavit or other evidence specific facts that demonstrate standing.") (internal citations and quotation

19  omitted).  As a result, Ballard, Wiggins and Smith cannot proceed on their individual claims.

20  Moreover, neither Ballard nor Wiggins may serve as a class representative for Sub-class 1, because

21  they both received all of their vacation wages.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d

22  1018, 1022 (9th Cir. 2003).   Similarly, Ballard – who is the only named Plaintiff offered as the

23  representative of Sub-class 2 – cannot represent Subclass 2 because he has received all of his regular

24  wages.[19]  *See Casey v. Lewis,* 4 F.3d 1516, 1519 (9th Cir. 1993) ("At least one named plaintiff must

25  satisfy the actual injury component of standing in order to seek relief on behalf of himself or the

26

27  _____

[19] Defendant is concurrently filing a separate motion for summary judgment and/or summary
adjudication as to the Sub-class 2 claim which addresses this reason and additional reasons why
28  Defendant is entitled to summary adjudication on the Sub-class 2 claim.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7675693.1                                    19                     MOTION FOR SUMM. JDGMT. AND/OR SUMM.
                                                                        ADJUDICATION; MPA IN SUPPORT
                                                                        (CASE NO. 06-02069 SBA (BZ))

1   class.").

2   IV.   **CONCLUSION**

3   Defendant has established that Plaintiffs Wiggins, Smith and Ballard were fully paid all

4   regular wages and vacation wages owed.  Defendant also has established that it did not willfully fail

5   to pay these three named Plaintiffs any wages owed upon termination and, thus, Plaintiffs cannot

6   recover waiting time penalties.  Because no genuine issue exists to any material fact, Rule 56 compels

7   the entry of summary judgment in favor of Defendant and against Plaintiffs Wiggins, Ballard and

8   Smith.

9   Dated: March 13, 2008                    MORGAN, LEWIS & BOCKIUS LLP

10

11                                           By: _____/S/_____

12                                                Rebecca D. Eisen
                                            Attorneys for Defendant
13                                          WAL-MART STORES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7675693.1

20

MOTION FOR SUMM. JDGMT. AND/OR SUMM.
ADJUDICATION; MPA IN SUPPORT
(CASE NO. 06-02069 SBA (BZ))