1  MORGAN, LEWIS & BOCKIUS LLP
   REBECCA EISEN, State Bar No. 96129
2  THOMAS M. PETERSON, State Bar No. 96011
   KENT M. ROGER, State Bar No. 95987
3  ERIC MECKLEY, State Bar No. 168181
   One Market, Spear Street Tower
4  San Francisco, CA 94105-1126
   Tel: (415) 442-1000; Fax: (415) 442-1001
5  Email: reisen@morganlewis.com
         tmpeterson@morganlewis.com
6        kroger@morganlewis.com
         emeckley@morganlewis.com
7
   Attorneys for Defendant
8  WAL-MART STORES, INC.

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                   OAKLAND DIVISION

12

13 | In Re WAL-MART STORES, INC. WAGE | Case No. C 06-02069 SBA (BZ)
14 | AND HOUR LITIGATION, |              C 06-05411 SBA (BZ)

15 |                                  | **NOTICE OF MOTION AND MOTION FOR**
   |                                  | **SUMMARY JUDGMENT AND/OR**
16 | This document relates to Case Nos.: | **SUMMARY ADJUDICATION ON BEHALF**
   | C 06-02069 SBA (Smith) and       | **OF DEFENDANT WAL-MART STORES,**
17 | C 06-05411 SBA (Ballard)         | **INC.**

18 |                                  | **MEMORANDUM OF POINTS AND**
   |                                  | **AUTHORITIES IN SUPPORT THEREOF**
19 |
   |                                  | Date:      April 22, 2008
20 |                                  | Time:      1:00 p.m.
   |                                  | Place:     Courtroom 3
21 |                                  | Judge:     Hon. Saundra Brown Armstrong

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF RELEVANT FACTS ................................................................2

    A.    Vacation and Personal Time Off Policies ................................................3

    B.    Wal-Mart's Final Pay Policies and Procedures ......................................3

        1.    Expert Evidence In Connection With Sub-class Two's Wage
            Claims ..........................................................................................4

    C.    Order On Class Certification ....................................................................6

III.   ARGUMENT ..........................................................................................................6

    A.    Legal Standard .........................................................................................6

    B.    Wal-Mart Is Entitled To Summary Adjudication As To The Sub-class Two
        "Wage" Claim Because No Breach of Contract Claim Is Asserted In The
        First Amended Consolidated Complaint. ..................................................7

        1.    A Claim To Recover Unpaid Contractual Wages Must Be Asserted
            As A Breach of Contract Claim. ..................................................7

        2.    California Courts Have Recognized That A Claim For Unpaid
            Contractual Wages Must Be Brought As A Breach of Contract
            Claim. ...........................................................................................9

    C.    Wal-Mart Is Entitled To Summary Adjudication On Sub-class Two's Wage
        and Penalty Claims Because There Is No Genuine Issue That Wages Are
        Not Owed. ...............................................................................................11

        1.    The Fact Of Damage Is An Essential Element Of A Wage Claim. ..........11

        2.    Dr. Shapiro's Admittedly Flawed Analysis Does Not Support Sub-
            class Two's Claims For Unpaid Wages And Is Insufficient To
            Defeat Summary Adjudication. ...................................................12

        3.    Analyzed Correctly, Wal-Mart's Computerized Records
            Demonstrate That Virtually All Wages Have Been Paid. ..........14

            a.    There Is No Wage Claim Due To Negative Hours. .....................14

            b.    Gross Earnings Without Corresponding Net Earnings ................16

        4.    Plaintiffs Cannot Meet Their Burden of Proof Because The
            Evidence And Any Justifiable Inferences Drawn From The
            Evidence Do Not Support Their Wage Claim. ...........................17

        5.    The Only Plaintiff Representative of Sub-class Two Lacks Article
            III Standing. ...............................................................................18

    D.    Wal-Mart Is Entitled to Summary Adjudication That There Are No Section
        227.3 Violations or Section 203 Waiting Time Penalties Because Plaintiffs
        Have No Evidence That the Class Members Satisfied the Condition of
        Returning to the Store to Receive Final Pay. ........................................18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS
## (continued)

| | | Page |
|---|---|---|

E.   The Court Should Enter Summary Adjudication In Favor of Wal-Mart on Plaintiffs' Claim For Penalties Under Labor Code Section 203 Because Plaintiffs Have No Evidence Establishing That Any Wal-Mart Policy for Tendering Final Pay Caused Wal-Mart to Willfully Underpay Associates in General or in Particular. ...................................................................................... 21

F.   The Court Should Summarily Adjudicate Two Statute of Limitations Issues:  (1) Class Members Who Have Not Pled a Wage Claim May Not Seek Penalties For Claims That Accrued Prior to One Year From the Filing of This Action and (2) Class Members Whose Vacation Pay Claim Accrued More Than Three Years Before This Action Commenced May Not Recover Penalties. ...................................................................................... 24

    1.   Class Members Who Have Not Pled a Wage Claim May Not Seek Penalties For Claims That Accrued Prior to One Year From the Filing of This Action. .................................................................. 24

    2.   Class Members Whose Vacation Pay Claim Accrued More Than Three Years Before This Action Commenced May Not Recover Penalties. ............................................................................. 24

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1

# TABLE OF AUTHORITIES

2

Page

3

<u>**Cases**</u>

4

*Allen v. Gardner*,
126 Cal. App. 2d 335 (1954) ............................................................................................12

5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................7, 17

6

7

*Baker v. Wadsworth*,
6 Cal. App. 3d 253 (1970) ..............................................................................................20

8

*Bates v. UPS, Inc.*,
2007 U.S. App. LEXIS 29870 (9th Cir. Dec. 28, 2007) ........................................................18

9

*Beck Dev. Co. v. Southern Pacific Transp. Co.*,
44 Cal. App. 4th 1160 (1996) ..........................................................................................20

10

11

*Beebe v. Mobility, Inc.*,
2008 U.S. Dist. LEXIS 12400 (S.D. Cal. Feb. 20, 2008).........................................................24

12

*Bell v. Foster Poultry Farms*,
2007 U.S. Dist. LEXIS 25328 (E.D. Cal. Mar. 22, 2007).........................................................7

13

14

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990) ...........................................................................................11

15

*Casey v. Lewis*,
4 F.3d 1516 (9th Cir. 1993) ............................................................................................18

16

17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..........................................................................................6, 15, 20

18

*City of Vernon v. Southern Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992) ..........................................................................................12

19

20

*Consolidated World Invs. v. Lido Preferred Ltd.*,
9 Cal. App. 4th 373 (1992) .............................................................................................20

21

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ...........................................................................................6

22

23

*Cuadra v. Millan*,
17 Cal. 4th 855 (1998).....................................................................................................9

24

*Dong v. Chertoff*,
513 F. Supp. 2d 1158 (N.D. Cal. 2007)...........................................................................7, 17

25

26

*DuBarry Int'l, Inc. v. Southwest Forest Indus.*,
231 Cal. App. 3d 552 (1991) ...........................................................................................12

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1

iii

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Earley v. Superior Court,*
     79 Cal. App. 4th 1420 (2000) ................................................................. 7, 9, 10
4

   *First National Ins. Co. v. Federal Deposit Ins. Corp.,*
5      977 F. Supp. 1051 (S.D. Cal. 1997) ...............................................................6

6    *In re Trombley*, 31 Cal. 2d 801 (1948)..........................................................21

7    *Johnston v. Pierce Packing Co.,*
     550 F.2d 474 (9th Cir. 1977) ......................................................................20
8

   *Klaffki v. Kaufman,*
9      52 Cal. App. 48 (1921) ...............................................................................10

10    *Kwan v. Mercedes-Benz of North America, Inc.,*
     23 Cal. App. 4th 174 (1994) .......................................................................21
11

   *McCoy v. Superior Court,*
12      157 Cal. App. 4th 225 (2007) ............................................................2, 10, 24

13    *McGlinchy v. Shell Chem. Co.,*
     845 F.2d 802 (9th Cir. 1988) ......................................................................12
14

   *Reichert v. General Ins. Co. of Am.,*
15      68 Cal. 2d. 822 (1968) ...............................................................................11

16    *Reynolds v. Bement,*
     36 Cal. 4th 1075 (2005)..............................................................................10
17

   *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.,*
18      102 Cal.App.4th 765 (2002)......................................................................9, 22

19    *Smith v. Rae-Venter Law Group,*
     29 Cal. 4th 345 (2002)..................................................................................9
20

   *Spangler v. Castello,*
21      147 Cal. App. 2d 49 (1956) ........................................................................19

22    *Sportmart, Inc. v. No Fear Inc.,*
     1996 WL 296643 (N.D. Ill. Jun. 3, 1996) ...................................................12
23

   *Toscano v. PGA Tour, Inc.,*
24      201 F. Supp. 2d 1106 (E.D. Cal. 2002) .......................................................12

25    *Walker v. Pacific Indem. Co.,*
     183 Cal. App. 2d 513 (1960) ......................................................................12
26

   *Wang Labs., Inc. v. Mitsubishi Elec., Am., Inc.,*
27      860 F. Supp. 1448 (C.D. Cal 1993) ..............................................................7

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1               iv             DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

# TABLE OF AUTHORITIES
## (continued)

Page

*Westways World Travel v. AMR Corp.*,
182 F. Supp. 2d 952 (C.D. Cal. 2001).................................................................................11

*Wright v. Schock*,
742 F.2d 541 (9th Cir. 1984) ..............................................................................................7

**Statutes**

Cal. Business & Professions Code
§17200 ............................................................................................................................8, 9

Cal. Labor Code
§1194 .................................................................................................................................10

Cal. Labor Code
§1774 ...................................................................................................................................9

Cal. Labor Code
§1911 .................................................................................................................................10

Cal. Labor Code
§201 ...........................................................................................................................passim

Cal. Labor Code
§202 ..............................................................................................................10, 19, 20, 21

Cal. Labor Code
§203 ...........................................................................................................................passim

Cal. Labor Code
§208 ..............................................................................................................8, 10, 19, 23

Cal. Labor Code
§218.5 ................................................................................................................................10

Cal. Labor Code
§226.7 .................................................................................................................................7

Cal. Labor Code
§227 ......................................................................................................................8, 18, 19

Fed. R. Civ. P.
56 ........................................................................................................................................6

Fed. R. Civ. P.
56(c) ...................................................................................................................1, 7, 20, 23

Fed. R. Civ. P.
56(e)(2) ........................................................................................................................7, 23

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

<u>Other Authorities</u>

4

11 James Moore et al., Moore's Federal Practice §56.40 (3d ed. 2007)..............................6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

vi

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

**PLEASE TAKE NOTICE** that on April 22, 2008, at 1:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Saundra Brown Armstrong, in Courtroom 3 of the United States District Court, Northern District of California, Oakland Division, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") will and hereby does move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment and/or summary adjudication in this action.[1]  Wal-Mart seeks the following relief; based upon the undisputed evidence, Wal-Mart is entitled to summary judgment and/or summary adjudication as to:

(1) The Sub-class Two "wage" claim because a claim to recover unpaid contractual wages must be asserted, in court, as a breach of contract claim and there is no such claim asserted in the First Amended Consolidated Complaint;

(2) The Sub-class Two "wage" claim and penalty claim because there is no genuine issue that wages are not owed;

(3) The Sub-class Two "wage" claim and penalty claim because the only Plaintiff representative of Sub-class Two lacks Article III standing.

(4) There are no Cal. Labor Code §227.3 violations or Cal. Labor Code §203 penalties because Plaintiffs have no evidence that the class members satisfied the condition precedent of returning to the store to receive final pay.

(5) Plaintiffs' claim for penalties under Cal. Labor Code §203 because Plaintiffs have no evidence establishing that any Wal-Mart policy for tendering final pay *caused* Wal-Mart to willfully underpay associates in general or in particular.

(6) Two statutes of limitations:  (a) Class members who have not pled a wage claim may not seek Labor Code §203 penalties for claims that accrued prior to one year from the filing of this action; and (b) Class members whose vacation pay claim accrued more than three years before this action commenced may not recover Labor Code §203 penalties.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Request for Judicial Notice, the Declarations of Rebecca Eisen and Denise Neumann Martin, Ph.D., the papers on file in this case, and any other matter which the Court deems appropriate.

---

[1]  On March 3, 2008, the parties met and conferred regarding Wal-Mart's potential motions for summary judgment and/or summary adjudication.  *See* Declaration of Rebecca Eisen In Support Of Defendant Wal-Mart Stores, Inc.'s Motions for Summary Judgment and/or Summary Adjudication ¶¶ 2-3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                      vii                      DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    **INTRODUCTION**

Federal Rule of Civil Procedure 56(c) compels the entry of summary judgment against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial.  Under this standard, summary adjudication in favor of Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is warranted on:  (1) the Sub-class Two wage and penalty claims; (2) Plaintiffs' final pay claims; (3) Plaintiffs' claims for California Labor Code ("Labor Code") §203 penalties; and (4) statutes of limitations issues.

Numerous grounds support the entry of summary adjudication in favor of Wal-Mart on the wage and penalty claims asserted on behalf of Sub-class Two (defined as class members who, according to Wal-Mart's computerized records, have not been paid all wages earned while they were employed by Wal-Mart).  Not only have Plaintiffs failed to assert a claim for breach of contract, as is necessary to allege a claim for traditional, non-statutory wages under California law, they also cannot prove any wages are in fact owed.

Wal-Mart's computerized records, which, pursuant to this Court's Class Certification Order define the class itself, indisputably show that there are no members of Sub-class Two because all associates were paid all non-vacation wages owed.  The expert retained by Plaintiffs to analyze Wal-Mart's computerized records has admitted to errors in his initial analysis of Sub-class Two's wage claims and adopted the corrective approach suggested by Wal-Mart's expert. Applying that corrective analysis, and even drawing all reasonable inferences in Plaintiffs' favor, there is no basis for Sub-class Two's wage claim, based on the undisputed data.  As to any remaining *de minimis* amount not yet reconciled – a total of *$6,502.65* associated with *359* former associates – the burden is on Plaintiffs to establish by admissible evidence from Wal-Mart's computerized records that even these minimal amounts reflect actual unpaid *wages*, rather than, *e.g.*, accounting adjustments.  Plaintiffs cannot satisfy their burden.  Therefore, Wal-Mart is entitled to summary adjudication on these wage claims as a matter of law as to Sub-class Two.

Wal-Mart is also entitled to summary adjudication of the pay claims of class members who cannot demonstrate that they satisfied the statutory conditions necessary to trigger Wal-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                                1

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

Mart's final pay obligations under California law. California's workplace tender rule requires an employer to tender final pay at the location where the employee worked unless the employee specifically requested that final pay be mailed. Wal-Mart was under no obligation and in fact cannot tender final pay in accord with California statutes *until* associates appear at the store to collect final payment or give Wal-Mart specific mailing instructions. Consequently, the Court should summarily adjudicate that Wal-Mart did not have a duty to tender final pay to any individual class member who cannot prove that he or she timely returned to the store or provided the requisite mailing instructions.

The Court should also grant summary adjudication and order that there is no triable issue of material fact regarding Plaintiffs' claim for penalties under Labor Code §203 because Plaintiffs proffered no evidence establishing that Wal-Mart's final pay policies in fact resulted in underpayments to associates. In order to satisfy the purpose of Labor Code §203 – to induce the prompt payment of wages – penalties are available *only* upon a showing of willfulness. By extension, the logic underlying §203's willfulness element requires Plaintiffs to prove that any policy Wal-Mart may have had regarding final pay actually resulted in particular underpayments claimed by particular class members. As there is no evidence of such causation, Wal-Mart is entitled to summary adjudication on Plaintiffs' penalty claims.

Finally, the Court should grant summary adjudication as to two statutes of limitations and order that: (1) Sub-class Two class members who have not pled a non-vacation wage claim may not seek Labor Code §203 penalties if their claim accrued more than one year prior to the filing of this action; and (2) class members whose vacation pay claim accrued more than three years before this action commenced may not recover §203 penalties. The first of these is an outgrowth of Plaintiffs' acknowledgment of the application of the California appellate ruling in *McCoy v. Superior Court*, 157 Cal. App. 4th 225, 233 (2007). The second arises from the fact that the statute of limitations for §203 penalties is three years prior to the commencement of this action.

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

Wal-Mart operates approximately 200 Wal-Mart stores and Sam's Clubs within California. Each employs hundreds of hourly employees, whom Wal-Mart refers to as

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                                2                DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1     "associates."  Ninety-five percent or more are classified as non-exempt hourly associates.  Hourly

2     associates receive hourly wages, overtime, shift premiums, and are eligible for different bonuses

3     and prizes.  McChristian Decl. ¶ 3; Nam Decl. ¶ 3.[2]

4         **A.**   **Vacation and Personal Time Off Policies**

5         Full-time Wal-Mart associates accrue vacation and personal time off (hereafter

6     "vacation") as soon as they begin work.  Following one year of employment, accrued vacation

7     hours become "available" to full-time associates.  Vacation time may only be used once it

8     becomes "available."  At the end of a full-time associate's second-year, any available but unused

9     vacation is automatically paid out at the associate's current wage.  At the same time, the associate

10     will have accrued another year's worth of vacation based on the individual's hours from the

11     previous year.  This vacation then becomes available and replenishes the previously used or paid

12     out vacation.  Any paid time off – either vacation or personal time – is recorded in the electronic

13     "time and attendance" database.  Wigger Decl. ¶¶ 3-5, 8; Nam Decl. ¶¶ 3, 11.

14         Under Wal-Mart's policies, associates accrue vacation for every "service hour," including

15     hours up until termination.  Wigger Decl. ¶¶ 4, 12, Exhs. 1-3.  Wal-Mart's computerized payroll

16     system thus contains an inherent lag between the time an associate records service hours and the

17     time when the vacation accrual on those hours occurs.  The regular payroll system, in any case,

18     cannot automatically record that an associate has used or should be paid vacation.  Because such

19     data must be entered manually into the database, a terminated associate must physically appear at

20     the store to receive tender of the final payout that includes vacation pay.

21         **B.**   **Wal-Mart's Final Pay Policies and Procedures**

22         Wal-Mart has developed an in-store, cash-based termination payout process to fully

23     compensate terminating associates all their wages owed, all accrued and available vacation time,

24     and all accrued and available personal time (for non-exempt associates who accrue such time).  In

25     Wal-Mart stores, Personnel Managers ("PMs") are in charge of processing and calculating final

26

27

28

---

[2]  The McChristian and Nam Declarations were each filed in support of Wal-Mart's Opposition to
Plaintiffs' Class Certification Motion.  These declarations and other case materials previously
filed with the Court are collected in the Request for Judicial Notice filed concurrently herewith.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1          3         DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

pay.  Upon learning that a California hourly associate's employment is terminated, if the associate is present in the store, the PM uses Wal-Mart's California Payout Worksheet to calculate what the associate is owed.  The PM logs on to an internal computer system and reviews data to determine wages owed based on the hours worked by the associate.  The PM also calculates and includes accrued and available vacation time and personal time and takes the associate to the store's Cash Office, where the associate receives a cash payout in the amount on the Payout Worksheet.  The Cash Office maintains its own log showing the amounts paid in cash.  At or about the time final payment is made, termination and final payout information is typically entered into the store's "SMART" system, which links to Wal-Mart's payroll system.  McChristian Decl. ¶ 7.  Regardless of whether a cash payout is made to a terminating associate, at the end of the payroll period in which a termination occurs, the payroll system will – as it does with regular payroll – compute and calculate amounts for regular non-vacation wages, and taxes to be withheld.  If an associate was paid in cash and this information was keyed in, the cash payment will appear as a "cash draw."  The balance, if any, is then issued in a payroll check and included with the other payroll checks sent to the associate's store.  McChristian Decl. ¶ 9.

### 1.   Expert Evidence In Connection With Sub-class Two's Wage Claims

On October 10, 2007, Plaintiffs filed their Motion for Class Certification, together with the Declaration of Martin M. Shapiro, Ph.D. ("Shapiro Decl.") in support.  With respect to Plaintiffs' Sub-class Two wage claim, Dr. Shapiro concluded that "[t]here were "26,866 terminated employees who never received full payment of their [non-vacation)] wages" and "[t]he aggregate unpaid amount was $8,684,974.34."  Shapiro Decl. ¶ 33.

On November 20, 2007, Wal-Mart filed its Opposition to Class Certification, including the Declaration of Denise Martin ("Martin Decl.") in support.  Dr. Martin explained that Dr. Shapiro (1) improperly interpreted situations where no "net" payment was reported; (2) improperly included unused sick hours and improperly aggregated multiple, negative sick hour entries; (3) calculated alleged damages for terminated associates who were already compensated through cash draws; (4) erroneously aggregated multiple negative vacation and sick time entries; and (5) calculated alleged damages for terminated associates who received a cash payment that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                                    4                DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1    was not reported to the Payroll database.  Martin Decl. 3:1-27; 4:1-11.

2         On December 4, 2007, Plaintiffs filed their Reply to Wal-Mart's Opposition and a

3    Supplemental Declaration of Shapiro in support. ("Shapiro Suppl. Decl.").  In his Supplemental

4    Declaration, Dr. Shapiro acknowledged the multiple errors in his original calculations, identified

5    by Dr. Martin, and attempted to correct them.  Regarding regular wages owed, Dr. Shapiro noted,

6    "Dr. Martin criticized my treatment of instances in which payment for work hours or benefit

7    hours were noted as gross pay in the Payroll database but no net check was archived in the

8    Payroll database" and "Dr. Martin also noted that I mistakenly included negative entries for sick

9    hours in my calculation of claims."  Shapiro Suppl. Decl. ¶¶ 13, 17.  Dr. Shapiro then concurred

10   with Dr. Martin's analysis and described how he intended to correct the errors.  He asserted that

11   he should subtract from the $8.6 million in alleged damages reported in the Shapiro Declaration:

12   (1) $2,230,170.60 in excess arrears[3] reflected in "undrafted payroll checks" and (2) $390,400.47

13   based on his erroneous inclusion of negative sick hour entries.  Shapiro Suppl. Decl. ¶¶ 13, 17.

14        On December 12, 2007, Wal-Mart filed a Supplemental Declaration of Dr. Martin

15   ("Martin Suppl. Decl.") in which Dr. Martin specifically identified still more errors in Dr.

16   Shapiro's revised computations and method:  (1) Dr. Shapiro proposed to credit only *net* amounts

17   of the cash payments to the associates reflected in the Cash Office database from his previously

18   calculated *gross* earnings amounts of damages; (2) where gross earnings but no net earnings were

19   reported, Dr. Shapiro ignored non-arrears amounts that represent actual payments to terminated

20   associates; (3) Dr. Shapiro failed to properly consider necessary information in the Cash Office

21   database reflecting actual cash payments; and (4) Dr. Shapiro incorrectly adjusted his original

22   erroneous inclusion of damages based on negative sick and vacation hours by improperly

23   _____

24   [3]  The term "arrears" refers to amounts in the Payroll database reflecting under-deductions or
     perceived over-payments by Wal-Mart, such that the associate is paid *more* than what is owed in

25   wages.  Cash payments in the Payroll database appear in the DOE table as a cash draw with two
     components: (1) a DOE_amount and (2) an arrears amount, if any.  When a cash payment

26   exceeds the amount calculated by the Payroll database as due the associate (based on reported
     gross earnings, deductions, and taxes), the excess payment is recorded in the arrears field.  Thus,

27   payments associated with hours uploaded to the Payroll database will be reported in the
     DOE_amount field, while payments for hours not entered into the system will be reported in the

28   arrears field.  Martin SJ/SA Decl. 4:13-17.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                              5                    DEFENDANT'S MOTION FOR SUMM. JDGMT.
                                                                AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
                                                                CASE NO. 06-02069 SBA (BZ)

aggregating *hours* instead of *dollars*.  Martin Suppl. Decl. 2:12-27; 3:1-6.

## C.   Order On Class Certification

On February 12, 2008, this Court granted in part and denied in part class certification.
Dkt. No. 250 ("Class Certification Order").  The Court certified the following Sub-class Two
wage class:

> All former California employees of defendant Wal-Mart Stores, Inc. whose
> employment ended during the period from March 20, 2002 through and including
> the date a judgment is rendered in this matter and who, based upon Wal-Mart's
> computerized records, are members of the following Subclasses:
>
> * * *
>
> Subclass No. 2:  Class members who, according to Wal-Mart's computerized
> records, have not been paid all wages they earned while employed by defendant.
> As used in this proposed Class Definition, the term "wages" includes hourly, pay,
> salary, and geographical assistance pay.

## III.   ARGUMENT

### A.   Legal Standard

Summary judgment is "an integral part of the Federal Rules as a whole, which are
designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex
Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment motions isolate and dispose of
factually unsupported claims or defenses.  *Id.*  Summary adjudication or "partial summary
judgment" is "a pretrial adjudication that certain issues shall be deemed established for the trial of
the case," and "serves the purpose of speeding up litigation by eliminating before trial matters
wherein there is no genuine issue of fact."  Fed. R. Civ. P. 56 advisory committee's note to
Subdivision (d), 1946 Amendment.  The Court may grant summary adjudication as to a particular
legal theory, affirmative defense, or summarily adjudicate issues of both law and fact.  In this
way, the Court can focus the litigation on the true matters in controversy.  11 JAMES MOORE ET
AL., MOORE'S FEDERAL PRACTICE §56.40 (3d ed. 2007); *see also Continental Airlines, Inc. v.
Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987); *First National Ins. Co. v.
Federal Deposit Ins. Corp.*, 977 F. Supp. 1051, 1055 (S.D. Cal. 1997).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                            6                    DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

Summary adjudication is also proper in class actions. *See, e.g., Bell v. Foster Poultry Farms*, 2007 U.S. Dist. LEXIS 25328, at *17 (E.D. Cal. Mar. 22, 2007) (adjudicating class claim for overtime in favor of Defendant). Whether or not the class has been certified, the Court may grant summary judgment based on considerations of fairness and economy when, as here, the defendant consents to the procedure. *See Wright v. Schock*, 742 F.2d 541, 545-46 (9th Cir. 1984).

Summary adjudication of a claim or issue is proper when the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law" on the issue or claim. Fed. R. Civ. P. 56(c); s*ee also*, *Wang Labs., Inc. v. Mitsubishi Elec., Am., Inc.*, 860 F. Supp. 1448, 1450-51 (C.D. Cal 1993). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party demonstrates the absence of genuine issues of material fact, the burden then shifts to the non-moving party to "present specific and supported material facts, of significant probative value, to preclude summary judgment." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1168 (N.D. Cal. 2007). The non-moving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If its evidence "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

**B.    Wal-Mart Is Entitled To Summary Adjudication As To The Sub-class Two "Wage" Claim Because No Breach of Contract Claim Is Asserted In The First Amended Consolidated Complaint.**

**1.    A Claim To Recover Unpaid Contractual Wages Must Be Asserted As A Breach of Contract Claim.**

The members of Sub-class Two seek to recover allegedly unpaid wages, *i.e.*, "hourly pay, salary and geographical assistance pay." *See* Class Certification Order 22:3. These wages, however, depend on the existence of a contract. California courts have long recognized that while employee rights to certain kinds of mandated compensation derive from the Labor Code itself, the right to one's *regular* wages is "a matter of private contract between the employer and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1

7

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

employee." *Earley v. Superior Court*, 79 Cal. App. 4th 1420, 1430 (2000).[4]  The Labor Code creates no requirement to pay standard, contractual wages, though it regulates "the time and manner" such contractual wages are paid.  For example, §§201-203 and §208 of the Labor Code regulate *when* and *where* contractual wages must be paid; neither, however, establishes a legal right to recover the wages themselves.

The members of Sub-class Two seek to recover allegedly unpaid contractual wages, *i.e.*, "hourly pay, salary and geographical assistance pay."  *See* Class Certification Order 22:3.  They also, and independently, seek §203 penalties on grounds that such wages were allegedly not paid timely and the failure to pay timely was allegedly willful.  But in the multiple pleadings that have been filed in this case, Plaintiffs only briefly asserted and then later abandoned a "breach of contract" claim whereby they could arguably have sought unpaid contractual wages.  In the operative First Amended Consolidated Complaint ("FACC"), no claim for contractual wages is asserted; only the claim for §203 late payment penalties can be found in the FACC.

Plaintiff Ballard – who is the sole Sub-class Two representative – *never* asserted a claim for unpaid contractual wages, even in the initial complaint he and Plaintiff Lyons filed in the Los Angeles Superior Court on May 17, 2006.  *See* Dkt. No. 10-3, Ballard Complaint.  That complaint asserted *only* claims for statutory vacation pay under Labor Code §227 and for late payment penalties under Labor Code §203 (First Cause of Action).[5]  Nowhere did Plaintiff Ballard assert or allege that he was owed but not paid contractually promised wages.  *See* Dkt. No. 10-3, Ballard

---

[4]  Mandated compensation includes minimum wage (§1194), vacation pay (§227.3), meal and rest break premiums (§226.7) and overtime (§§510, 1194).  Plaintiffs can assert entitlement to such monies under the applicable Labor Code sections (these Plaintiffs have so asserted).  So, for example, Sub-class One Plaintiffs claim that they were not paid and thus can recover unpaid *vacation* amounts, a claim asserted under Labor Code §227.  *See* FACC, Second Claim, "Statutory Wage Violation of California Labor Code §227.3 (Vested Vacation Wages)."  ¶¶ 51-58.  Plaintiffs also previously asserted another *statutory* compensation claim for overtime.  *See* FACC, Third Claim, "Statutory Wage Violation of California Labor Code §1194 (Failure to Pay Overtime Wages Due)."  ¶¶ 59-69.  But that claim was voluntarily dismissed.  Dkt. No. 106, Order Dismissing Third Claim, at 1 (July 30, 2007).

[5]  Other claims asserted initially by Ballard were a statutory overtime compensation claim under Labor Code §1194 and for late payment penalties under Labor Code §203 (Second Cause of Action) a claim for violation of the wage statement law under Labor Code §226 (Third Cause of Action), and a claim for unfair competition under California Business and Professions Code §17200 (Fourth Cause of Action).  *See* Dkt. No. 10-3, Ballard Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                    8                    DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

Complaint.

A claim labeled "breach of contract" did enter the case in November 2006 when Plaintiff Ballard's lawsuit merged with that of Plaintiffs Smith and Wiggins, resulting in a "Consolidated Class Action Complaint" ("CCAC"), Third Cause of Action ¶¶ 50-53, alleging "Wal-Mart agreed to pay wages" and "breached this agreement by failing to pay timely wages" CCAC ¶ 52.

However, following Wal-Mart's first motion to dismiss, Plaintiffs voluntarily amended and *dropped entirely the "Breach of Contract" claim*. No such claim currently exists in the FACC, as this Court recognized in its Class Certification Order, at footnote 3.[6]

### 2. California Courts Have Recognized That A Claim For Unpaid Contractual Wages Must Be Brought As A Breach of Contract Claim.

California courts recognize that if an employee is not paid all wages due, he or she can sue "for breach of contract and/or for the wages prescribed by statute." *Cuadra v. Millan*, 17 Cal. 4th 855, 858 (1998); *see also Smith v. Rae-Venter Law Group*, 29 Cal. 4th 345, 355 (2002) (contrasting an employee's administrative remedy with a request for judicial relief: the claimant may sue for "breach of contract" to collect wages not "prescribed by statute"); *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 774 (2002) (contrasting statutory wage claim under Labor Code §1774 with contract claim for breach of public works contract: "When seeking recovery for deficiency wages for breach of a public works contract, the Plaintiff must plead a common law class action for breach of contract...."). Because the wages Sub-class Two plaintiffs seek are *not* "prescribed by statute" (unlike Sub-class One plaintiffs who do seek statutorily-mandated vacation wages), the proper claim to recover such wages would have been the claim Plaintiffs have already abandoned — for "breach of contract."

The difference between claims for contractual wages and statutorily mandated payments was noted in *Earley*, 79 Cal. App. 4th at 1430: "[a]n employee's right to wages and overtime

---

[6] In opposing class certification, Wal-Mart pointed out that there is no "legal" claim for unpaid contractual wages asserted in the FACC. *See* Wal-Mart's Opposition, at 3 fn. 4. Plaintiffs' only response was in footnote 13 of their reply. They claimed they had erroneously referenced a breach of contract claim and *meant* to reference Business and Professions Code §17200. However, as the Court also noted, the Business and Professions Code claim is premised *solely* on the allegation that Defendant violated Labor Code §227.3. Class Certification Order, at fn. 6.

1   compensation clearly have different sources.  Straight-time wages (above the minimum wage) are

2   a matter of private contract between the employer and employee.  Entitlement to overtime

3   compensation, on the other hand, is mandated by statute.…"  *Id.*; *accord*, *Reynolds v. Bement*, 36

4   Cal. 4th 1075, 1084 (2005) ("An employee's wage rights may be provided for in an employment

5   contract and also are closely regulated by statute.  The Labor Code [] prescribes such matters as

6   the *time and manner* of paying wages.…" (emphasis added; internal quotation marks omitted).

7        *Earley* underscored the distinction another way.  It noted that attorneys' fees may be

8   recovered for failure to pay statutory overtime under Labor Code §1194, but contrasted Labor

9   Code §218.5, which allows a contractual wage claimant to recover attorneys' fees only under a

10  statute that gives any *prevailing party* (not just a successful employee) attorneys' fees.[7]  *See also*

11  *McCoy*, 157 Cal. App. 4th at 229-30 (differentiating the statute of limitations for a wage claim

12  with the statute for the independent claim for penalties under Labor Code §203).

13       Plaintiffs will likely argue that their "wage" claim need not be asserted as a claim for

14  breach of contract because it is somehow subsumed in their claim under Labor Code §§201-203

15  (labeled "Statutory Wage Violation of California Labor Code §§201-203 (Late Payment Penalty)

16  in the FACC)."  But those code sections, like §208, regulate *when* and *where* wages must be paid.

17  As the court so recently pointed out in *McCoy*, 157 Cal. App. 4th at 230, the purpose of Labor

18  Code §203 is to compel the *timely* payment of an employee's wages.  Labor Code §203 penalties

19  are thus available even when wages are in fact paid (if paid late).

20       The differential nature of contractual and statutory wage claims was elucidated in *Klaffki*

21  *v. Kaufman*, 52 Cal.App. 48, 51-52 (1921).  An employee sued to recover both unpaid wages *and*

22  a statutory penalty, under Labor Code §1911, a predecessor to Labor Code §203.

23       In the instant case there not only is a breach of contract – a breach of defendants'
         agreement to pay the wages when due – but over and beyond this mere breach of
24       contract there is something that, by the statute of this state, is made an actionable
         wrong – a wrong visited by the prescribed statutory penalty.  That wrong is the
25       *continuance* of the employer's breach of his contract to pay the wages when due.
         In actions of this character the plaintiff sues to recover, not only the wages due
26       him under his contract with his employer, but also the penalty that the statute
         allows him because his employer, in addition to breaching his contract, has done

27  _____

[7]  Effectively, when the legislature enacted Labor Code §218.5 in 1986, it legislatively included
28  in all employment contracts a "prevailing party" attorneys' fee clause.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                   10          DEFENDANT'S MOTION FOR SUMM. JDGMT.
                                                             AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
                                                             CASE NO. 06-02069 SBA (BZ)

him a further wrong – a wrong denounced by the statute, namely, the withholding of the wages for a greater period than five days after they become due.

\* \* \*

[T]his actionable wrong is the basis of a right of action that is additional to the wage-earner's right of action to recover the wages due under his contract. So that the right to the penalty is based upon an additional substantive right created by statute.

Finally, Labor Code §203 itself contemplates two independent claims — one for wages and one for penalties — when it states "[s]uit may be filed *for these penalties* at any time before the expiration of the statute of limitations *on an action for the wages* from which the penalties arise." Labor Code §203 (emphasis added). Here Plaintiffs have certainly filed "suit … for these penalties" but have *not* filed "an action for the wages." Accordingly, Defendant is entitled to summary adjudication as to the claims of Sub-class Two.

**C.   Wal-Mart Is Entitled To Summary Adjudication On Sub-class Two's Wage and Penalty Claims Because There Is No Genuine Issue That Wages Are Not Owed.**

**1.   The Fact Of Damage Is An Essential Element Of A Wage[8] Claim.**

Notwithstanding Plaintiffs' failure to premise their non-vacation wage claim upon a breach of contract, Wal-Mart is further entitled to judgment because Plaintiffs cannot establish an essential element of a wage claim, *i.e.*, that wages are in fact owed. "To state a claim for breach of contract, a plaintiff must allege the following essential elements: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 963 (C.D. Cal. 2001) (quoting *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d. 822, 830 (1968)). It is axiomatic that to succeed on a claim for unpaid wages, Plaintiffs must prove that they have been damaged, *i.e.*, that wages were in fact owed and unpaid by Wal-Mart.

A plaintiff must prove both the "fact" of damage and the "amount" of damages. The

---

[8]   The general term "wages" used throughout Section III.C. of this Motion refers to hourly pay, salary, and geographical assistance pay, consistent with the Court's class definition for Sub-class Two. Consistent with the Court's Class Certification Order, as used in this Section, the term "wages" *does not include* statutorily mandated vacation pay or personal time pay, which is the subject of Sub-class One.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                    11                DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

Ninth Circuit has explained, "[u]nder California law, uncertainty as to the *fact* of damage, rather than its amount … negatives the existence of a cause of action.… Uncertainty as to the fact of damage, that is, as to the … existence … of the damage, is fatal." *Berg v. First State Ins. Co.*, 915 F.2d 460, 465 (9th Cir. 1990) (quoting *Walker v. Pacific Indem. Co.*, 183 Cal. App. 2d 513, 517 (1960) and *Allen v. Gardner*, 126 Cal. App. 2d 335, 340 (1954)) (internal quotation marks omitted); *see also Sportmart, Inc. v. No Fear Inc.*, 1996 WL 296643, at *12 (N.D. Ill. Jun. 3, 1996). By contrast, "[w]here the fact of damage has been established, the precise amount of the damage need not be calculated with absolute certainty." *DuBarry Int'l, Inc. v. Southwest Forest Indus.*, 231 Cal. App. 3d 552, 562 (1991).

Here, Plaintiffs cannot prove the fact of unpaid wages. As explained more fully below, under Plaintiffs' method of establishing the fact of damage by analysis of Wal-Mart's computerized records, those records show that Plaintiffs were in fact paid all wages due, including Plaintiff Ballard, who is the sole representative of Sub-class Two[9]. Consequently, there is no genuine issue as to the fact of damage and Wal-Mart is therefore entitled to summary adjudication.

### 2. Dr. Shapiro's Admittedly Flawed Analysis Does Not Support Sub-class Two's Claims For Unpaid Wages And Is Insufficient To Defeat Summary Adjudication.

Courts have granted summary judgment where an expert's damages estimate is unsupported by factual analysis. *Sportmart, Inc.*, 1996 WL 296643, at *11 (citations omitted). Further, "[e]ven where an expert has provided a rationale for his conclusions, summary judgment may still be appropriate if the expert's reasoning is 'hopelessly flawed.'" *Id.* (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988)). "[S]ummary judgment for defendants is proper… if the plaintiff's sole evidence of damages is seriously flawed in some way that cannot be remedied before or at trial." *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1124 (E.D. Cal.

---

[9] Plaintiff Ballard is a prime example of an associate who, upon examination of Wal-Mart's computerized records and personnel records, was in fact paid all wages owed. Wal-Mart concurrently files herewith its Motion for Summary Judgment and/or Summary Adjudication as to Plaintiffs Barry Smith, Michael Wiggins, and Danton Ballard. *See also*, Martin SJ/SA Decl. Part V.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1

12

DEFENDANT'S MOTION FOR SUMM. JDGMT. AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

2002) (citing *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992)). Indeed, serious flaws in the damages analysis may place a plaintiff "in the position of having no proper proof of damages at all," thus justifying the entry of summary judgment based on a lack of evidence. *City of Vernon*, 955 F.2d at 1373.

Plaintiffs predicate their unpaid wage and penalty claims (and the very existence of Sub-class Two) exclusively on Dr. Shapiro's admitted misinterpretation and misapplication of Wal-Mart's computerized records. Dr. Shapiro's analysis alone, however, cannot sustain Plaintiffs' wage claims. Initially, Dr. Shapiro asserted that there were 26,866 terminated employees who never received full payment of their wages in the aggregate amount of $8,684,974.34. Shapiro Decl. ¶ 33. Later, in the face of Dr. Martin's Declaration, Plaintiffs and Dr. Shapiro both admitted that Dr. Shapiro's original analysis required correction. Although Plaintiffs' counsel characterized the necessary corrections based on Dr. Martin's analysis as providing "further refinement" to Dr. Shapiro's calculations, in fact, Dr. Shapiro's attempt to rectify the flaws pointed out by Dr. Martin only underscored the serious deficiencies in his methodology.[10] *See* Plaintiffs' Reply to Wal-Mart's Opposition 13:12-13; Shapiro Suppl. Decl. ¶¶ 12-15; 17-19.

Dr. Shapiro adopted Dr. Martin's *approach* and altered his conclusions, noting for example, that one element of his original aggregate damage amount for wages should be reduced by over two million dollars due to one of his errors. *See* Shapiro Suppl. Decl. ¶ 13. As evidenced by Dr. Shapiro's prompt attempt to revise his calculations according to Dr. Martin's analysis, there is no issue as to the proper categories of data that should be analyzed to determine whether any unpaid wages exist. Under this uncontested analysis, upon which both experts now agree, there can be no triable issue as to what the relevant data shows. Since the data shows *no wages owed*, Plaintiffs' claims as to Sub-class Two fails as a matter of law.

---

[10]   The seriousness of the defects in Dr. Shapiro's analysis is underscored by the fact that because his $8,684,974.34 damages amount is merely an aggregation of his calculations as to alleged individual wage claims, any downward revision to, including elimination of, that amount necessarily has ramifications for the very existence of the Sub-class. Potential class members whose wage claims evaporate upon proper analysis are no longer in Sub-class Two at all, as defined by the Court, by reference to the computerized records.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                                     13                    DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

### 3.   Analyzed Correctly, Wal-Mart's Computerized Records Demonstrate That Virtually All Wages Have Been Paid.

The experts' calculations begin and end with the understanding that the basic method for determining any unpaid wages is to subtract the wages paid from the wages owed.  However, even with this shared understanding, Dr. Shapiro's "corrective" calculations are still incorrect, due to additional errors.  With respect to Sub-class Two, Dr. Martin identified two components of Dr. Shapiro's still-flawed calculations:  (1) negative hours and (2) gross earnings without corresponding net earnings, which perpetuated an illusion of unpaid wages where none exist.

#### a.   There Is No Wage Claim Due To Negative Hours.[11]

Although correct in his premise that one must consider negative hours in assessing the existence of unpaid wages, Dr. Shapiro's calculation of damages from that premise is hopelessly flawed.

#### (1)  Negative Sick Hours.

In his Supplemental Declaration, Dr. Shapiro acknowledged that he "mistakenly included negative entries for sick hours in my calculation of claims."  Shapiro Suppl. Decl. ¶ 17.  Based on Dr. Shapiro's own output, $3,781,598.95 of the total $8,684,974.34 original wage claim was comprised of negative hours.  Martin SJ/SA Decl. 8 fn. 11.  Again based on Dr. Shapiro's own output, this $3,781,598.95 in negative hours is made up of 20,147 negative hour entries.  $3,704,675.58 of this $3,781,598.95 for negative hours results from 19,792 negative sick hour entries multiplied by the applicable base pay rates.  Martin SJ/SA Decl. 8:20-24.  However, in his Supplemental Declaration, Dr. Shapiro asserted that there were 20,203 (not 19,792) negative sick hour entries, totaling only $390,400.47 that should be subtracted from the aggregate $8,684,974.34 wage claim.  Shapiro Suppl. Decl. ¶ 17.

Dr. Shapiro's attempt to correct his earlier error is itself in error.  Rather than reporting the total *dollars* associated with the 20,203 instances of negative sick hour entries, Dr. Shapiro reported the total *hours* associated with those entries.  The 20,203 instances of negative sick time

---

[11]  The term "negative hours" refers to entries appearing on the Hours table of the Payroll database.  The hours are classified with pay sequence codes M and V through Z.  M indicates a negative adjustment and V through Z indicate a reversal.  Martin SJ/SA Decl. 3:4-8.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                     14        DEFENDANT'S MOTION FOR SUMM. JDGMT.
                                                            AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
                                                            CASE NO. 06-02069 SBA (BZ)

entries correspond to roughly 390,000 *hours*, not *dollars*, for an actual *dollar* total of $3,704,675.58.  Martin SJ/SA Decl. 9:1-10.  Thus, rather than the 1.2% error reported by Dr. Shapiro, the corrected figure for negative sick hour entries alone, eliminates *over forty percent* of Sub-class Two's wage claims.

### (2)  Negative Premium Hours.

Dr. Shapiro makes still another error, this time in the valuation of premium hours for time worked on Sundays.  In his calculations, Dr. Shapiro multiplied the number of negative premium hours by the associate's base pay rate.  However, this method grossly overstates the premium hour value, because the associate's base pay earned for a premium hour worked is already included as a component of the gross regular pay.  The proper method to account for negative premium hours is to multiply the premium hours by the additional $1.00 per hour that an associate would have earned.  Martin SJ/SA Decl. 9:19-24.  Correcting for Dr. Shapiro's error, the amount remaining based on negative premium hours is $8,818.25.

### (3)  Total Unreconciled Amounts Based on Negative Hours.

The original total wage claim based on negative hour entries of $3,781,598.95 (later "corrected" by Dr. Shapiro to $3,391,198.48) reduces to a value of just $13,238.54 for negative hour entries associated with a total of only 322 associates, just by virtue of proper calculation methods.  Martin SJ/SA Decl. 10:2-6.  Even this minimal remaining amount of $13,238.54 is largely attributable, not to unpaid wages, but to two non-wage items:  (1) accounting adjustments and (2) uncashed payroll checks, which together, account for all but $5,400.19 associated with 109 associates.

Many of these accounting adjustments occur when an error in an associate's social security number or employee identification number (*e.g.*, incorrect last digit) is discovered and the associate's earnings for the incorrect number are negated from the records but added back to the records for the correct number.  Martin SJ/SA Decl. 10:7-13.

Analysis of uncashed payroll checks reconciles still more of the $13,238.54 remaining after proper calculations based on relevant data fields.  Martin SJ/SA Decl. 10:14-16.  Even as to these minimal amounts, Plaintiffs will not be able to meet their burden under *Celotex* to prove

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1

15

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

that the remaining $5,400.19 reflects unpaid wages.  477 U.S. 317 at 323 ("[Defendant] is entitled to a judgment as a matter of law because [Plaintiffs have] failed to make a sufficient showing on an essential element of [their] case with respect to which [they] have the burden of proof.").

### b. Gross Earnings Without Corresponding Net Earnings

Dr. Shapiro calculated that $4,903,375.39 of the original $8,684,974.34 wage claim is comprised of instances of gross earnings without corresponding net earnings for a given payroll period, for 21,210 associates.  Martin SJ/SA Decl. 10:27-28; 11:1.  Dr. Shapiro initially calculated alleged damages for 27,858 terminated associates with gross earnings but no net earnings.  Martin Decl. 24:6-7.  In attempting to rectify his initial error of failing to consider 13,080 associates who received a cash draw matching an amount in the "DOE Table" from Wal-Mart's Payroll database, Dr. Shapiro compounded that initial error by then including only the amount recorded in the arrears field, when in fact the amount paid to the individual was the sum of the arrears amount *and* the amount recorded in the DOE_amount field of the Cash Office database.  Martin Supp. Decl. 7:1-5; *see also* Martin Decl. 24:7-10.

The proper way to calculate whether wages are owed is to: (1) aggregate gross earnings from the Earnings table of the Payroll database and (2) adjust those gross earnings for taxes and other deductions, including cash draw payments (reported on the DOE table of the Payroll database in the DOE_amount field, not the arrears field).  Martin SJ/SA Decl. 11:21-25.  Based on this proper analysis, *no amounts are owed* to 20,960 of the 21,210 associates alleged to have gross earnings without any net earnings, leaving only 250 associates.  As to those remaining associates, only $1,102.46 is unreconciled after calculating the data correctly.  Martin SJ/SA Decl. 12:8-17.

Needless to say, the final *de minimis*, as yet unreconciled amount of $6,502.65 for both components of Plaintiffs' wage claim is a far cry from even the "corrected" figure stated by Dr. Shapiro, which appears to be based only on his hasty look exclusively on electronic data.  This Court has already noted that errors in Dr. Shapiro's calculations "raise[] some concerns about [his] competence (or at least his attention to detail)."  Class Certification Order 21:3-5.  In fact, these fatal yet foundational errors entirely eviscerate Plaintiffs' wage claim and Sub-class Two.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1

16

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1   When analyzed properly and calculated correctly, the data from Wal-Mart's computerized records

2   simply do not show wages owing to any Wal-Mart associate.

3   **4.   Plaintiffs Cannot Meet Their Burden of Proof Because The Evidence And Any Justifiable Inferences Drawn From The Evidence Do Not Support Their Wage Claim.**

4

5   The affirmative evidence of full payment of wages to all but 359 of the 26,866 asserted

6   members of Sub-Class Two demonstrates that there is no genuine issue as to the fact of or the

7   amount of damages as to these individuals.[12]  Even as to these 359 associates, for whom an

8   aggregate amount of $6,502.65 is not yet reconciled, Plaintiffs still bear the burden on this motion

9   to prove that each is owed wages and how much.  Plaintiffs are unable able to meet this burden

10  because the computerized records cannot answer the question for these few associates — instead,

11  other records, including personnel files, must be accessed.  *See* Martin SJ/SA Decl. 2:16-21.

12  Thus, the evidence of full payment for all but 359 of the purported members of Sub-class

13  Two supports the reasonable inference that Wal-Mart's automated payroll system did in fact fully

14  pay *all* terminated class members all their non-vacation wages.  If the payroll system

15  demonstrably operated correctly to pay wages for all but 359 associates, it stands to reason that

16  the same payroll system worked correctly even as to those associates with as yet unreconciled

17  amounts.  Furthermore, the additional information found in personnel files supports the

18  reasonable inference that such amounts reflect, not unpaid wages, but ordinary accounting

19  adjustments, uncashed checks, and arrears.  *See* Martin SJ/SA Decl. 3:21-22; 4:1-17.  Even

20  Plaintiffs' own expert stated, "If you go to the payroll database and you look at what people were

21  getting paid, after all, most people did get the correct pay for the work they did .…  If a person

22  worked 23 hours, typically they ended up getting paid for 23 hours … the salaried people are the

23  same way."  Shapiro Depo. 194:10-13; 194:21-23.

24  Even if the Court views the evidence and draws inferences in the light most favorable to

25  Plaintiffs, the weight of the data, calculated by undisputed methods and showing all wages paid as

26  to all but 359 associates, cannot be ignored.  Inferences drawn in Plaintiffs' favor must be

27

28

---

[12]  In fact, there remain only 359 potential class members out of the asserted total of 136,709 associates who were allegedly underpaid.  Shapiro Decl. ¶¶ 33-34.

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

1-SF/7674255.1

17

DEFENDANT'S MOTION FOR SUMM. JDGMT. AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

justifiable.  *Anderson*, 477 U.S. at 255.  Here, nothing in the record justifies the inference that *any* of the unreconciled amount is attributable to wages owed.  On the contrary, the bulk of the evidence affirmatively supports the opposite inference – that Wal-Mart paid all earned wages. Accordingly, Wal-Mart is entitled to summary adjudication because there is no "genuine" issue for trial.  *Dong*, 513 F. Supp. 2d at 1168 ("An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

### 5.     The Only Plaintiff Representative of Sub-class Two Lacks Article III Standing.

Of the four named plaintiffs, Plaintiffs proffer only Ballard as their representative of Sub-class Two.  As demonstrated by Dr. Martin's accompanying declaration and Wal-Mart's accompanying motion for summary judgment and/or summary adjudication as to the named Plaintiffs, Ballard was indisputably overpaid by Wal-Mart.  Martin SJ/SA Decl. Sections V.A. and V.B.  (Lyons and Wiggins belong only to Sub-class One and Smith belonged only to Sub-class Three, which was not certified.)  Ballard has no standing to sue because he suffered no injury.  "At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class."  *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993); *see Bates v. UPS, Inc.*, 2007 U.S. App. LEXIS 29870, at *13 (9th Cir. Dec. 28, 2007) (en banc).  As there is no proper class representative for Sub-class Two, Wal-Mart is entitled to summary adjudication.

### D.     Wal-Mart Is Entitled to Summary Adjudication That There Are No Section 227.3 Violations or Section 203 Waiting Time Penalties Because Plaintiffs Have No Evidence That the Class Members Satisfied the Condition of Returning to the Store to Receive Final Pay.

Plaintiffs seek to hold Wal-Mart liable for failing to fully pay associates for accrued vacation and personal time when their employment terminated.  *See, e.g.*, Labor Code §227.3. For these alleged untimely failures, Plaintiffs also seek to recover Labor Code §203 penalties. These are statutory claims.  But an element of each is that the terminating associate be at the store where he/she worked to receive Wal-Mart's tender of final pay.  Plaintiffs have the burden of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                              18

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

proving that they satisfied their statutory obligation before they may claim rights under Labor Code §203 and §227.3. As class Plaintiffs cannot establish this essential prerequisite to the claims they bring, Wal-Mart is entitled to summary adjudication of both.

Wal-Mart has no obligation to calculate or tender final pay unless and until the terminated associate fulfills his/her predicate statutory duty: to be at the store to receive tender of final pay or to expressly request that Wal-Mart mail final pay to a designated address. As California's Division of Labor Standards Enforcement has explained:

> Labor Code section 208 further provides that the wages of an employee who **quits** shall be paid at the office or agency of the employer in the county where the employee has been performing labor. You are correct when you state that **this provision would require the quitting employee to return to the office or agency where the employee has been performing labor** to collect his or her wages. You are also correct in stating that **waiting time penalties would not accrue to an employee who fails to return to the place of employment** 72 hours after quitting (unless, of course, the employee has given at least 72 hours prior notice of intention to quit in which event the wages are due at the time of quitting (Labor Code section 202).

(DLSE Op. Ltr. 1986.09.15) (emphasis added). Wal-Mart cannot comply with its statutory tender obligation in any different manner or at any different place. Labor Code §§201, 202 and 208; *see Villafuerte v. Inter-Con Sec. Sys., Inc.*, 96 Cal. App. 4th Supp. 45, 50 (2002) (employer who mails final pay without an express request has not properly tendered and bears the risk if payment is not received). This issue implicates a majority of terminated associates. Martin Decl. Section V., at 19. Over 70% of the terminated associates identified by Dr. Shapiro as underpaid quit. *Id.* at 18-19.

The Court recognized this issue in its Class Certification Order, explaining:

> [W]hether and when waiting time penalties attach will depend, for each employee, on whether and when they provided notice of termination to Wal-Mart and **whether or when they either returned to the store to pick-up their final pay or provided Wal-Mart with an address to send it to.** This information is not contained in any of the electronic databases at issue, but can only be determined by an individual review of each potential class member's personnel file.

Class Certification Order 11:16-22 (emphasis added). Although the Court applied its statement to Sub-class Three, which was not certified, the statement applies with equal force to the sub-classes certified. Each presents statutory claims for waiting time penalties, vacation wages, or both. Each claim rests on the same statutes that the Court was considering when it partially denied class

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                    19

DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

certification — §§201, 202, 203, 208 and 227.3.  Under each statute, Wal-Mart cannot comply with its statutory duties unless terminating associates first satisfy their statutory duties.

Thus, the requirement that an associate physically appear at the store or provide mailing instructions is a condition precedent to Wal-Mart's statutory final pay duties.  *See, e.g.*, *Spangler v. Castello*, 147 Cal. App. 2d 49, 52-53 (1956) (holding that a purchaser failed to fulfill an express contract condition of depositing a down payment within a stated period and, therefore, the defendant was under no duty to perform).  "[W]here defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired."  *Consolidated World Invs. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).

When the substantive law makes a fact essential to the plaintiff's claim for relief, the burden of pleading and proving that fact rests with the plaintiff.  "[T]he definitional elements of a plaintiff's cause of action describe the minimum showing which the plaintiff must make to support a favorable judgment.  Accordingly, in order for the plaintiff to prevail, the record must contain sufficient evidence to support a finding in its favor on each and every element which the law requires to support recovery."  *Beck Dev. Co. v. Southern Pacific Transp. Co.*, 44 Cal. App. 4th 1160, 1206 (1996).[13]  Here, Plaintiff class members must prove they triggered Wal-Mart's duties under the final pay statutes by appearing at the store to pick up their final pay.  *Cf. Baker v. Wadsworth*, 6 Cal. App. 3d 253, 263 (1970) (holding employees bear the burden of proving that their unauthorized absences from work were justified).

Wal-Mart cannot violate any statutory final pay duty unless class Plaintiffs prove they triggered Wal-Mart's statutory duties.  No class-wide evidence of the trigger of the final pay statutes exists, as the Court has already recognized.[14]

Accordingly, Wal-Mart is entitled to summary adjudication of all class member claims

---

[13]  State "[r]ules governing presumptions and burdens of proof are generally regarded as substantive for purposes of *Erie R.R. v. Tompkins*…."  *Johnston v. Pierce Packing Co.*, 550 F.2d 474, 476 n.1 (9th Cir. 1977).

[14]  "[P]laintiffs have provided nothing suggesting that Wal-Mart is statutorily obligated to keep accurate electronic databases indicating when employees informed them that they would be quitting (as opposed to the actual termination date), or when associates made themselves available for tender of their final pay."  Class Certification Order 12:18-21.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

under Labor Code §§201, 202, 203, and 227.3.  *See Celotex*, 477 U.S. at 322 ("[T]he plain

language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.").

**E.    The Court Should Enter Summary Adjudication In Favor of Wal-Mart on Plaintiffs' Claim For Penalties Under Labor Code Section 203 Because Plaintiffs Have No Evidence Establishing That Any Wal-Mart Policy for Tendering Final Pay *Caused* Wal-Mart to Willfully Underpay Associates in General or in Particular.**

In order for Labor Code §203 waiting time penalties to apply in this case, Plaintiffs must

prove that Wal-Mart's failure to make timely payments pursuant to Labor Code §§201, 202, and

227.3 was "willful."  An employer's intentional conduct is not alone sufficient to establish

"willful" underpayment of wages.  California courts have defined willfulness in the context of

both Labor Code §203 and its criminal counterpart, as follows:

> The word "willfully" … implies a purpose or willingness to commit the act, and although it does not require an evil intent, it implies that the person knows what he is doing intends to do what he is doing and is a free agent.  [Labor Code §216(a)], construed together with the Penal Code definition of the word "willful," makes it a crime for an employer having the ability to pay, knowingly and intentionally to refuse to pay wages which he knows are due.  A similar construction was placed on section 203 of the Labor Code.…

*In re Trombley*, 31 Cal. 2d 801, 807-08 (1948) (internal citations omitted).  The difficulty

inherent in defining the term willfulness was recognized in *Kwan v. Mercedes-Benz of North*

*America, Inc.*, 23 Cal. App. 4th 174 (1994), an auto warranty case that relies on Labor Code §203

precedent.  In *Kwan*, Justice Werdegar explained that basing willfulness on knowledge "seems to

beg the crucial question: to 'know[] what he is doing' and 'intend[] to do what he is doing,' must

a person know, or at least have notice of, the circumstantial or consequential facts that bring the

action within the strictures of the law?"  *Kwan*, 23 Cal. App. 4th at 183 (citation omitted).

With regard to §203 penalties, Justice Werdegar's question must be answered in the

affirmative.  Thus, in order for Wal-Mart to be held liable for waiting time penalties, Plaintiffs

must prove at the very least that Wal-Mart knew associates were being underpaid during the final

pay process.  Penalties cannot be imposed on Wal-Mart if its final pay actions were "the result of

a good faith and reasonable belief [that] *the facts imposing the statutory obligation were not*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                    21          DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1    *present*." *Kwan*, 23 Cal. App. 4th at 185 (emphasis added).

2         Plaintiffs have suggested they can satisfy Labor Code §203's willfulness requirement by

3    proving Wal-Mart continued to use its existing final pay system.  Essentially, Plaintiffs insist that

4    a finding of willfulness can be based upon the fact that Wal-Mart instituted a cash-based, in-store

5    final pay system (in order to comply with California law) and then turned a "blind eye" to

6    underpayments, while at the same time not "allowing" overpayments to occur.[15]  Dkt. No. 217,

7    Plaintiffs' Reply to Wal-Mart's Opposition, at 16.  Putting aside the fact that the databases

8    examined by Dr. Shapiro show that three of the four named plaintiffs and all of Sub-class Two

9    were fully or overpaid, Plaintiffs misconstrue § 203's willfulness requirement.  Simply put, a

10   negligent or mistaken employer does not act willfully – even if a pattern of mistakes is shown.

11   *See Road Sprinkler*, 102 Cal. App. 4th at 782 ("An employer's good faith mistaken belief that

12   wages are not owed may negate a finding of willfulness.").

13        Moreover, while Plaintiffs hypothesize some generic evidence of Wal-Mart's willfulness

14   toward underpaid terminating associates, they have yet to answer the question the Court alluded

15   to in its Certification Order at 15:12-13 -- What is the evidence of this supposed, generic

16   willfulness?  California's statutorily mandated final pay process does not include or require any

17   automation or audit procedures to determine the efficacy of its final pay system.  Dr. Shapiro's

18   incomplete examination of Wal-Mart's Associate, Payroll, Cash Office, and PeopleSoft databases

19   does not establish either final pay violations or systemic shortcomings.  There is no evidence that

20   in-store Personnel Managers, who are to calculate and tender final pay under Wal-Mart's policies,

21   acted willfully insofar as they miscalculated final payments.  If, as Plaintiffs apparently claim,

22

23   [15]  Plaintiffs contend they will prove Wal-Mart acted to protect itself from vacation
     overpayments, while refusing to protect against underpayments by presenting the testimony of
24   Wal-Mart executives.  Yet Plaintiffs point to only one deposition, that of Diana McChristian, in
     support of this claim.  The testimony of Ms. McChristian, however, was taken out of context in
25   Plaintiffs' Motion for Class Certification. (Dkt. No. 149, 28:7-13).  Ms. McChristian explained
     that Wal-Mart's biweekly payroll system is computerized, but that California's final pay
26   requirements virtually mandate that final pay be calculated manually in order to comply with the
     rigid statutory deadlines.  This is not evidence of Wal-Mart protecting itself and neglecting its
27   associates.  In fact, quite the opposite is true. This is evidence of Wal-Mart's efforts to comply
     with California law.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                22                DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1    Wal-Mart came to know that mistakes occurred, it remains for Plaintiffs to produce their evidence

2    as to how and when Wal-Mart came to acquire this supposed knowledge and what Wal-Mart

3    should have done in response to avoid acting willfully, but did not do.

4          Plaintiffs also contend that Wal-Mart's willfulness may be shown by the "complete lack

5    of evidence of … any attempt to pay" in Wal-Mart's electronic databases.  Plaintiffs' Class

6    Certification Motion, at 27.  California law, however, does not have record-keeping requirements

7    regarding "attempts to pay" and, for purposes of the statutory claims in this case, the issue is

8    whether Wal-Mart complied with the specific requirements of the Labor Code sections at issue,

9    once (and if) particular Plaintiffs triggered Wal-Mart's obligations under those statutes by

10   appearing at their respective stores, per Labor Code §208, or providing mailing instructions.

11         As previously discussed, summary adjudication is warranted when there is no genuine

12   issue as to a material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R.

13   Civ. P. 56(c).  In establishing that a triable issue of material fact exists, Plaintiffs may not rely

14   merely on allegations or denials in their own pleadings.  Rather, Plaintiffs must produce

15   admissible evidence of specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).

16   Plaintiffs cannot meet their burden to show *specific facts* demonstrating that Wal-Mart *willfully*

17   implemented or maintained a policy to underpay its associates for their accrued vacation and

18   personal time when calculating final pay sums.  Because Plaintiffs cannot produce such evidence,

19   summary adjudication is appropriate regarding the claim for Labor Code §203 penalties.

20         In addition, to recover penalties, class Plaintiffs must prove Wal-Mart "willfully fail[ed]

21   to pay … any wages of *an* employee who [was] discharged or who quit[].…"  Labor Code §203

22   (emphasis added).  Any willful conduct must have *caused* underpayments to particular associates

23   if particular associates are to establish a claim for penalties.

24         Plaintiffs cannot prove willful conduct caused particular underpayments.  Over 70% of

25   terminating associates quit.  *See* Martin Decl. Section V. at 18-19.  The electronic Wal-Mart

26   databases reviewed by Dr. Shapiro do not show whether these terminated associates returned to

27   the stores to receive Wal-Mart's tender of final pay.  *Id*.  Unless Plaintiff class members prove

28   they did, Wal-Mart could not have willfully underpaid them.  Other underpayments over the class

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                      23                    DEFENDANT'S MOTION FOR SUMM. JDGMT.
                                                                         AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
                                                                         CASE NO. 06-02069 SBA (BZ)

period in this case (such as with Plaintiff Lyons) are undoubtedly the result of arithmetic and

human error with respect to particular calculations.  An essential element of individual Plaintiff

claims — causation — is missing in each such instance.  Therefore, the Court should grant Wal-

Mart summary adjudication; only Plaintiffs who can introduce admissible evidence that some

willful conduct by Wal-Mart was the cause in fact of their being underpaid can seek Labor Code

§203 penalties.

**F.    The Court Should Summarily Adjudicate Two Statute of Limitations Issues:  (1) Class Members Who Have Not Pled a Wage Claim May Not Seek Penalties For Claims That Accrued Prior to One Year From the Filing of This Action and (2) Class Members Whose Vacation Pay Claim Accrued More Than Three Years Before This Action Commenced May Not Recover Penalties.**

**1.    Class Members Who Have Not Pled a Wage Claim May Not Seek Penalties For Claims That Accrued Prior to One Year From the Filing of This Action.**

Sub-class Two class members have no claim for unpaid contractual wages.  *See ante*,

Section B.  Insofar as they seek Labor Code §203 penalties, the one-year statute of limitations for

penalties applies.  *McCoy*, 157 Cal. App. 4th at 233; *Beebe v. Mobility, Inc.*, 2008 U.S. Dist.

LEXIS 12400, at *11 (S.D. Cal. Feb. 20, 2008).  Therefore, the Court should summarily

adjudicate that Sub-class Two members who lack a wage claim may not seek penalties under

§203 if their wage claim accrued more than one year before this action was commenced, namely,

March 20, 2006, when the claims in this lawsuit were first filed in court.

**2.    Class Members Whose Vacation Pay Claim Accrued More Than Three Years Before This Action Commenced May Not Recover Penalties.**

Insofar as Plaintiffs seek Labor Code §203 penalties in connection with Labor Code

§227.3 vacation payments, no penalties are recoverable for class members whose claim accrued

more than three years prior to the commencement of this litigation.  *See McCoy*, 157 Cal. App.

4th at 229 ("[a]llowing for recovery of such a penalty as part of an action for payment of back

wages is consistent with th[e] intent [of inducing the payment of wages].  Within this framework,

making the statute of limitations coincident for both the wages and the penalty furthers the

statute's purpose.").  Any member of Sub-class One whose claim for unpaid vacation wages

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1                                                24                   DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)

1   accrued prior to March 20, 2003 does not have a penalties claim.  Therefore, as a matter of law,

2   the Court should summarily adjudicate such class member claims in favor of Wal-Mart.

3

4   Dated: March 13, 2008                   MORGAN, LEWIS & BOCKIUS LLP

5

6                                 By    /s/ *Rebecca Eisen*

7                                  Rebecca Eisen

8                                 Attorneys for Defendant
                                   WAL-MART STORES, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7674255.1              25             DEFENDANT'S MOTION FOR SUMM. JDGMT.
AND/OR SUMM. ADJUDICATION; MPA IN SUPPORT
CASE NO. 06-02069 SBA (BZ)