Louis M. Marlin, Esq. [State Bar No. 054053]
Stanley D. Saltzman, Esq. [State Bar No. 090058]
**MARLIN & SALTZMAN**
3200 El Camino Real, Suite 100
Irvine, California 92602
Telephone: (714) 669-4900
Facsimile: (714) 669-4750
louis.Marlin@MarlinSaltzman.com
ssaltzman@MarlinSaltzman.com
[See Additional Plaintiffs' Counsel Attached]

Attorneys for Plaintiffs, individually and on
behalf of all others similarly situated

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In Re WAL-MART STORES, INC. WAGE AND HOUR LITIGATION<br><br>This Document Relates To:<br><br>Case Nos.<br><br>C 06 02069 SBA (Smith) and<br>CV 06 05411 SBA (Ballard) | Case No. C 06 02069 SBA<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION AS TO PLAINTIFFS BARRY SMITH, MICHAEL WIGGINS AND DANTON BALLARD**<br><br>Date: April 22, 2008<br>Time: 1:00 p.m.<br>Location: United States Courthouse<br>Courtroom 3, Third Floor<br>1301 Clay Street<br>Oakland, CA 94612-5212 |

///
///
///
///
///
///
///

---

## ADDITIONAL PLAINTIFFS' COUNSEL

Arnold W. Schwartz, Esq.     [State Bar No. 063436]
Marcus J. Bradley, Esq.      [State Bar No. 174156]
**SCHWARTZ, DANIELS & BRADLEY**
29229 Canwood Street, Suite 208
Agoura Hills, California  91301
Telephone:     (310) 478-5838
Facsimile:     (310) 478-1232
Arnold.Schwartz@SchwartzDanielsBradley.com
Marcus.Bradley@SchwartzDanielsBradley.com

Peter M. Hart, Esq.     [State Bar No. 198691]
**LAW OFFICES OF PETER M. HART**
13952 Bora Bora Way, F-320
Marina Del Rey, California  90292
Telephone:     (310) 478-5789
Facsimile:     (310) 561-6441
HartPeter@msn.com

Bonnie R. MacFarlane, Esq. [State Bar No. 161526]
**BAILEY PINNEY PC**
720 Howe Ave, Suite 113
Sacramento, California  95825
Telephone:     (916) 923-5537
Facsimile:     (916) 923-5587
BMacfarlane@wagelawyer.com

Susan Simmons Seemiller, Esq. [State Bar No. 150546]
**BAILEY PINNEY, PC**
840 County Square Drive
Ventura, CA 93003
Telephone: (805) 339-9090
Facsimile (805) 339-0090
SSeemiller@wagelawyer.com

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  APPLICABLE SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . 5

III. ALL THREE PLAINTIFFS WERE NOT PAID ALL WAGES, VACATION AND/OR PERSONAL TIME WAGES OWED ON TERMINATION . . . . . . . . 6

    A.   Michael Wiggins . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   Danton Ballard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.   Barry Smith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  AS PLAINTIFFS BALLARD AND WIGGINS HAVE DEMONSTRATED THAT A GENUINE ISSUE OF FACT EXISTS THAT THEY ARE OWED WAGES AND/OR VACATION AND PERSONAL TIME PAY THE SECTION 17200 CLAIM SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . 10

V.   PLAINTIFFS SMITH AND WIGGINS ARE ENTITLED TO WAITING TIME PENALTIES UNDER §203 AS THEY HAVE STILL NOT BEEN PAID ALL MONIES OWED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.  PLAINTIFFS SMITH'S AND WIGGINS' CLAIMS FOR WAITING TIME PENALTIES UNDER §203 ARE NOT BARRED BY THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII. PLAINTIFFS' CLAIM FOR VIOLATION OF §226 SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII. PLAINTIFFS BALLARD, WIGGINS AND SMITH HAVE STANDING TO SUE UNDER ARTICLE III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IX.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# **TABLE OF AUTHORITIES**

**Federal Cases**   **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . 5

*Block v. City of L.A.*,
    253 F.3d 410, 418-19 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 324 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cleary v. News Corp.*,
    30 F.3d 1255, 1259 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*First Nat'l Bank v. Cities Serv. Co.*,
    391 U.S. 253, 289 & n.19, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968) . . . . . . . . . . . . . . . . 5

*Fong v. American Airlines, Inc.*,
    626 F.2d 759, 762-63 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fraser v. Goodale*,
    342 F.3d 1032, 1036-37 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167, 180-81 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*,
    199 F.3d 1365, 1369 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*T.W. Electrical Service Inc. v. Pacific Electrical Contractors Association*,
    809 F.2d 626, 630-31 (9th Cir. 02/05/1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tetra Techs. Inc. v. Harter*,
    823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ting v. United States*,
    927 F.2d 1504, 1509 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes and Rules**

Business & Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10

Federal Rules of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Civil Procedure 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Labor Code §203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 11, 12

Labor Code §208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Labor Code §226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 14

Labor Code §226(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Labor Code §227.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The gravamen of Defendant's Motion for Summary Judgment and/or Summary Adjudication springs from the erroneous belief that Plaintiffs, Michael Wiggins and Danton Ballard were timely paid in full for all of the wages they were owed upon the termination of their employment from Wal-Mart. They were not. Defendant is likewise under the misconception that Barry Smith is not pursuing a claim for the unpaid wages due and owing at termination.

Simply put, as set forth in the Declaration of Martin Shapiro, Ph.D., a review of Wal-Mart's databases establishes that Plaintiffs Michael Wiggins, Danton Ballard and Barry Smith were not paid all that they were owed upon termination of their employment with Wal-Mart. Although Defendant's expert, Dr. Denise Martin reaches a different conclusion following her review of Wal-Mart's databases, a triable issue of material fact has been created as to whether or not these particular Plaintiffs were paid all that they were owed termination. As this single issue forms the entire basis for Defendant's motion, the establishment of a triable issue of material fact as to whether the Plaintiffs received all monies owed causes the remaining contentions of Defendants, *i.e.*, lack of standing, entitlement to waiting time penalties, etc., to necessarily fail at this stage of the litigation. As set forth more fully below, based on the Declaration of Dr. Shapiro and the deposition testimony of the Plaintiffs, genuine issues of fact have been raised sufficient to defeat Defendant's Motion for Summary Judgment and/or Summary Adjudication.

With respect to Plaintiff Michael Wiggins, Defendant contends that the undisputed evidence reveals that Wiggins "received payment in full." The Declaration of Dr. Shapiro, however, effectively contradicts this assertion. Nonetheless, from this erroneous premise, Defendant extrapolates that Wiggins is not entitled to Labor Code §203[1] penalties; that Wal-Mart is not liable for Wiggins' §226 claim; that Wal-Mart is not liable for violations under *Business & Professions* Code §17200; and that Wiggins has no standing under Article III of the Constitution.

---

[1] All further references will be to the Labor Code and indicated by code section unless otherwise noted.

1  As set forth in the Declaration of Dr. Shapiro, Michael Wiggins is owed wages and/or
2  vacation and personal time and is, therefore, a viable member of subclasses 1 and 2. Moreover,
3  nowhere in Wiggins deposition does he admit "he received payment in full." To the contrary,
4  Wiggins testified that it was his position that he did not get all of the wages that he was owed
5  when he finally received his final pay. Wiggins Depo. 110:12-14.

6  Apparently, Defendant assumes that if money was handed to the three Plaintiffs after
7  termination that this act constitutes payment in full. While Plaintiffs agree that money was paid to
8  the three terminated Plaintiffs, they did not receive all that was owed to them.

9  Given that there is genuine issue of material fact as to the payment of all that was due
10 Michael Wiggins, genuine issues if material fact exist as to whether he is entitled to §203
11 penalties, whether Wal-Mart is liable for violation of §203, whether Wal-Mart is liable for
12 violations under *Business & Professions* Code §17200, and whether Wiggins has standing to
13 pursue his claims.

14 Likewise, there exists a genuine issue of material fact as to the payment of all that was due
15 Danton Ballard at termination. Accordingly, given that Dr. Shapiro has opined that Wal-Mart's
16 databases reveal substantial amounts of wages and vacation pay are owed to Ballard, genuine
17 issues of material fact exist, therefore, as to whether he is entitled to §203 penalties, whether Wal-
18 Mart is liable for violation of §203, whether Wal-Mart is liable for violations under *Business &*
19 *Professions* Code §17200, and whether Ballard has standing to pursue his claims.

20 Finally, in the moving papers, Defendant states that Plaintiff Barry Smith "concedes that
21 Wal-Mart paid him all of the wages he was owed in connection with his termination, but claims
22 that Wal-Mart failed to pay these wages timely and therefore seeks to recover only waiting time
23 penalties."

24 Specifically, in footnote 15, Defendant states:

25 > Plaintiff Smith has already admitted that he was paid all wages owed to
26 > him. Plaintiffs stated in their class certification motion: "Wal-Mart's computerized records reflect that . . . [Smith] was ultimately paid all earned and unpaid wages." Class Cert. Mot. 18:18-22. Furthermore, Plaintiff's
27 > own expert Dr. Shapiro concluded that Smith had been paid all wages owed, but not "in a timely manner." Shapiro Decl. ¶42 (Court Docket #149-
28 > 10). The Court has relied upon and accepted Plaintiffs' representation that

---

Plaintiffs' Opposition to Motion to Defendant's Motion for Summary Judgment
2

Smith had been paid all wages owed by Wal-Mart. *See* Order on Class Cert. 16:2-26 (Court Docket #250).

Plaintiffs deny any such concession that Smith has been paid all that he was owed. Plaintiffs' denial is premised on the Declaration of Dr. Shapiro submitted in support of the Motion for Class Certification, The Declaration of Dr. Shapiro in opposition to the Motion for Summary Judgment and/or Summary Adjudication and the deposition testimony of Barry Smith.

The apparent confusion regarding the claims of Barry Smith results from the inadvertent omission of Smith from subclasses 1 and 2 in Plaintiffs' Motion for Class Certification. In the motion, Smith was only referred to as a member of subclass 3. This unfortunate omission, however, was not a concession that Smith did not have a valid claim for unpaid wages and vacation and personal time as did the other members of subclasses 1 and 2. Moreover, Dr. Shapiro explicitly states in his Declaration in Support of the Motion for Class Certification that Smith "I conclude that Mr. Smith has not been paid all vacation and personal pay and all wages in a timely manner as reflected in Wal-Mart's records"[2] Shapiro Decl. ¶42.

As the Court will note, for purposes of the Motion for Summary Judgment and/or Summary Adjudication, Defendant has cited to Plaintiffs' Motion for Class Certification for the proposition that Smith has been paid all of his wages rather than to Dr. Shapiro's Declaration in support of the Motion for Class Certification which is misstated in footnote 14 in any event. Defendant's recitation that "Furthermore, Plaintiff's own expert Dr. Shapiro concluded that Smith had been paid all wages owed, but not "in a timely manner" is a blatant misstatement in

---

[2]Citations to the deposition testimony of the named Plaintiffs are in the format "[deponent's last name] Depo. [page]:[line(s)]". Citations to declarations are in the format "[declarant's last name] ¶[paragraph number]". Citations to Exhibits attached to a declaration submitted herewith are in the format "Ex. __". Citations to Exhibits attached to and authenticated in deposition testimony submitted herewith are in the format "Depo. Ex. __". Deposition testimony is attached to the declaration of Marcus J. Bradley filed herewith.
Citations to the Declaration Martin Shapiro, Ph.D., filed in support of Plaintiffs' Motion for Class Certification Motion (*see* Court Docket #149) are in the format "Shapiro Decl." Plaintiffs have submitted an additional declaration from Dr. Shapiro in Opposition to the Motion for Summary Judgement which is cited as "Shapiro MSJ Decl."

---

comparison to the actual declaration which states that: "I conclude that Mr. Smith has not been paid all vacation and personal pay and all wages in a timely manner as reflected in Wal-Mart's records." Shapiro Decl. ¶42

Nonetheless, recognizing the disparity between what is contained in the Motion for Class Certification and what is contained in Dr. Shapiro's Declaration in support thereof, Defendant has seized the opportunity to argue that Smith has abandoned his claim for loss of wages and/or vacation and personal time so as to focus the Court's attention solely on Smith's §203 claim. As Defendant maintains that this is Smith's only remaining claim Defendant seeks to dispense with it by claiming that Smith has no late claim because he absented himself from timely payment and that his claim is also barred by the applicable statute of limitations.

In fact Defendant is quick to alert the Court that "The Court has relied upon and accepted Plaintiffs' representation that Smith had been paid all wages owed by Wal-Mart." Rather than acknowledge what is contained in Shapiro Decl. ¶42 that Dr. Shapiro concludes "that Mr. Smith has not been paid all vacation and personal pay and all wages in a timely manner" Defendant seeks to capitalize on the obvious oversight in the certification motion and have this court penalize Smith by denying his valid claim. Moreover, Defendant was aware at the time of Smith's deposition on August 3, 2007 that he was claiming that he was not paid all wages and/or vacation and personal pay. Despite having been on notice since at least August of last year of Smith's specific claims, Defendant seeks to continue the pretense that no such claims exist despite evidence to the contrary. While Plaintiffs readily admit that there is a misstatement in the motion, it is unfortunate that Defendant has elected to attempt to capitalize on the error rather than allowing the Court to draw its own conclusion as to whether a true genuine issue of material fact exists as to whether Smith is indeed owed wages and/or vacation and personal pay.

For all of the following reasons, the Motion for Summary Judgment and/or Summary Adjudication as to Plaintiffs Michael Wiggins, Danton Ballard and Barry Smith must be denied in entirety. Additionally, Plaintiffs respectfully request that Plaintiff Barry Smith be reinstated as a member of subclasses 1 and 2 consistent with damages that he has suffered as identified in Wal-Mart's databases and declared to by Dr. Shapiro on multiple instances.

## II. APPLICABLE SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994).

In judging evidence at the summary judgment stage,[T]he judge does not weigh conflicting evidence with respect to a disputed material fact…Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions…These determinations are within the province of the fact finder at trial. Therefore, ***at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party***: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, ***the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact***. *T.W. Electrical Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630-31 (9th Cir. 02/05/1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 & n.19, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ) (internal citations omitted, emphasis added). See also, *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

Because "[v]erdicts cannot rest on inadmissible evidence" and a grant of summary judgment is a determination on the merits of the case, the evidence presented by the moving party must be admissible. Fed.R.Civ.P. 56(e); *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000). Hearsay statements found in affidavits are inadmissible. See, e.g., *Fong v. American Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980). Thus, the moving party's affidavits must be free of hearsay. For the nonmoving party, the evidence standard is lower. "We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material in a form not admissible in evidence may be used to avoid, but not to

---

Plaintiffs' Opposition to Motion to Defendant's Motion for Summary Judgment
5

obtain summary judgment . . . ." *Tetra Techs. Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993). The Ninth Circuit has held that "***to survive summary judgment***, a party does ***not*** necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citing *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001)) (emphasis added).

### III. ALL THREE PLAINTIFFS WERE NOT PAID ALL WAGES, VACATION AND/OR PERSONAL TIME WAGES OWED ON TERMINATION

Based on his review of Wal-Mart's databases, Dr. Shapiro has concluded that each of the three Plaintiffs, Michael Wiggins, Danton Ballard and Barry Smith were not paid all wages and/or vacation and personal time wages owed at the time of termination. Dr. Shapiro has set forth competent, reliable evidence to contradict the Declaration of Dr. Martin as to whether these three Plaintiffs were paid all that they were owed. Accordingly, a genuine issue of material fact exists to defeat summary adjudication.

### A.     Michael Wiggins

Michael Wiggins was hired as an un-loader at a Wal-Mart location in Martinez on April 30, 2004. Wiggins Depo. 77:23-24.

Although disputed by Defendant, as shown in Wal-Mart's Associate database Wiggins was terminated involuntarily on July 4, 2004. Shapiro MSJ Decl. ¶16. According to Wal-Mart Payroll database records, Mr. Wiggins received gross payment of $15.77 for 1.75 unused vacation pay-out and $38.83 for 4.31 accrued vacation hours. (Wal-Mart's Payroll database does not show Mr. Wiggins' to be changed from active to terminated, but the Payroll database does show the payment of accrued vacation hours. Payment for accrued hours, in contrast to currently available hours, is triggered only upon termination.) Shapiro MSJ Decl. ¶16.

Wal-Mart payroll records also show that Mr. Wiggins was underpaid 2.49 hours accrued vacation regular hours, 0.06 accrued vacation overtime hours and 0.97 accrued personal hours. At the base pay rate of $9.01 per hour, Mr. Wiggins's unpaid 3.52 hours (2.49 + 0.06 + 0.97) were worth $ 31.72. Shapiro MSJ Decl. ¶16.

1    According to Wal-Mart Associate database records, Wiggins returned to work on July 8,
2  2004 and was terminated involuntarily on October 20, 2004, having last worked on October 6,
3  2004. Shapiro MSJ Decl. ¶18.

4    Wiggins was paid no vacation pay or personal pay on or after the October 20, 2004
5  termination. Wal-Mart Payroll records of October 20, 2004 show that Mr. Wiggins was owed
6  11.68 accrued regular vacation hours, 0.37 accrued vacation overtime hours and 4.80 accrued
7  personal hours at the time of his termination. Wal-Mart records show that Mr. Wiggins' accrued
8  and available vacation hours were reset to zero on October 29, 2004. Wal-Mart records also show
9  that 4.80 hours of accrued personal time were canceled by a negative entry added to the payroll
10 records on October 29, 2004. Shapiro MSJ Decl. ¶18.

11   The unpaid amounts for Wiggins upon his "second termination" include the unpaid
12 amounts carried forward in Wal-Mart's payroll database from his "first termination." Wiggins'
13 final pay rate was $9.41. He was owed an unpaid total of 16.85 hours (11.68 + 0.37 + 4.80) of
14 accrued vacation and personal time. Therefore, Wiggins was owed $158.56. Shapiro MSJ Decl.
15 ¶18.

16   Wal-Mart's Cash Office database contains an entry on December 3, 2004 showing a cash
17 payment of $155.64 to Wiggins together with a "NO" in answer to the Yes/No question of
18 whether the cash fund transfer was entered into the timekeeper (Payroll) system. The n-entry of
19 the payment into the timekeeper system meant that deduction (e.g., Social Security taxes and
20 stock purchases) were not submitted to the intended recipients and were not credited to Wiggins'
21 accounts. Therefore, the payment was effectively a gross payment and Wiggins remains
22 underpaid by $ 2.92. Shapiro MSJ Decl. ¶18.

23   **B.   Danton Ballard**

24   Danton Ballard was hired on July 30, 2004 as an hourly non-exempt associate. Ballard
25 Depo.12:5-10, 13:1-4, 15:1-20. Thereafter, he was terminated involuntarily on March 3, 2006.
26 Ballard Depo. 71:13-72:8, 75:13-76:2. At the time of his termination, Ballard was being paid a
27 base rate salary of $1,673.08 plus $250.96 regional pay zone, biweekly; therefore, he was being
28 paid a total gross of $1,924.04 biweekly. Shapiro MSJ Decl. ¶18.

1    Wal-Mart records show that Ballard was paid $192.40 gross regular pay (0.1 times the
2  biweekly total gross) on March 3, 2006.  Based upon a five-day work-week, Ballard was paid,
3  therefore, for one day of work during the biweekly period ending on March 3, 2006.  However,
4  Ballard should have been paid for the entire biweekly pay period because he was terminated on
5  the last day of the pay period.  Therefore, Ballard is owed the remaining 0.9 times the $1,924.04
6  biweekly total gross wages, that is, $1,731.64.  Shapiro MSJ Decl. ¶18.
7    Wal-Mart records also show that Mr. Ballard had 8.45 hours of accrued regular vacation
8  time and 0.03 hours of accrued over-time vacation time that originated during Ballard's tenure as
9  an hourly employee.  Shapiro MSJ Decl. ¶18.
10    Wal-Mart records show that these unpaid vacation hours were reset to zero on April 14,
11  2006.  Wal-Mart records also show that Ballard had 5.66 hours of available personal time and
12  1.69 hours of accrued personal time both canceled by negative entries on April 28, 2006;  The
13  total unpaid vacation and personal hours equal 15.83 hours (8.45 + 0.03 + 5.66 + 1.69).  At
14  $1,924.04 biweekly total gross, 15.83 hours is 0.1979 (15.83/80.00) of a biweekly pay period and
15  is equivalent to $380.72 (0.1979 times $1,924.04).  Consequently, Ballard is owed an additional
16  $380.72.  Shapiro MSJ Decl. ¶18.
17    Finally, with respect to Danton Ballard, Dr. Martin has opined that Ballard is owed
18  nothing and that Dr. Shapiro bases his opinion that Ballard is owed wages as the misinterpretation
19  of data.  Specifically, Dr. Martin opines that Dr. Shapiro erred by crediting Ballard with money
20  owed to another salaried manager, Richard Mandala.  She states: "Plaintiffs base their claim for
21  wages owed upon a faulty entry in the Payroll Database" wherein an entry of wages for an R.
22  Mandala was incorrectly recorded in Mr. Ballard's data.  Dr. Martin is incorrect.  No where in his
23  report does Dr. Shapiro base any part of his analysis on this incorrect "Mandala" entry.  He bases
24  his analysis on the undisputed fact, as reflected in the records, that Mr. Ballard was terminated on
25  the last day of a payroll period, he was a salaried employee, and he only received 1 day of pay,
26  rather than the 10 to which he was entitled.  Additionally, Dr. Shapiro has calculated vacation pay
27  that was underpaid on termination based on entries for Danton Ballard contained in Wal-Mart's
28  databases.

1  C.  **Barry Smith**

2  Barry Smith was hired as a "management trainee" at Wal-Mart's Milpitas store on
3  September 22, 2003. At that time, Smith received an annual base salary of $36,000 and a 75%
4  Geographical Assistance Program (GAP)[3] adjustment which resulted in him receiving a total
5  annual salary of $63,000. Smith Depo. 30:5-32:6. Thereafter, Smith became a salaried exempt
6  assistant manager six months later on March 6, 2004.

7  On December 17, 2004, Smith attended a meeting with Store Manager Kevin Throneberry
8  in which Throneberry told Smith that "I don't want you in my store." Smith Depo. 75:22-24.
9  Smith left the Wal-Mart store immediately after the conversation.

10  According to Wal-Mart's records, Barry Smith was terminated involuntarily on December
11  22, 2004, effective back to December 18, 2004. Shapiro MSJ Decl. ¶18. Smith returned to the
12  Wal-Mart store in Milpitas on January 2, 2005. Smith Depo. 84:12-15. In the interim, however,
13  he inquired on numerous occasions, beginning on December 17, 2004, about how to retrieve his
14  final pay. Smith Depo 77:10-14. Wal-Mart takes great pains to set forth the entire history of
15  Smith's travels but ultimately acknowledges that Smith was paid on January 2, 2005 at which
16  time he was given a cash payment of $1,315.87. Even given the cash payment, Smith testified,
17  however, that the amount he received was not accurate as he was not paid all that he was owed.
18  Smith Depo. 104:12-23.

19  The cash payment of $1,315.87 consisted of one-week regular pay plus $758.68 vacation
20  pay and $280.99 unused vacation pay-out, as verified by gross payroll records on December 24,
21  2004. Smith's biweekly pay, at the time of his termination, was $1,461.16 plus $1,095.81 G.A.P.
22  pay, thereby totaling $2,557.03. Wal-Mart's payroll records show that Smith was paid for one-
23  week's work at the time of his termination, but that Smith received no Geographical Assistance
24  Program (GAP) pay for the last pay period. Therefore, based on the Wal-Mart's computer
25  records, Smith is owed one-week of G.A.P. pay, $547.91 (0.5 times $1,095.81.) However, a

---

27  [3]GAP pay is contained in the DOE (Deductions and Other Earnings) table of the Payroll
28  database. GAP pay, denoted by DOE codes 77, R1, R2 and TG, is calculated as a percentage of the
employee's base pay. GAP pay is paid for all service hours – regular pay, overtime pay, vacation
pay, personal time pay, etc.

---

Plaintiffs' Opposition to Motion to Defendant's Motion for Summary Judgment
9

paper copy of Wal-Mart's Termination Worksheet contains the same monetary values but assigns them to different categories. Shapiro MSJ Decl. ¶18.

Specifically, Smith's Termination Worksheet is incorrect in that it shows GAP wages being paid for both regular wages and accrued vacation pay. However, the Termination Worksheet shows that Smith was underpaid for both accrued vacation pay and its associated GAP pay. The Termination Worksheet shows that Smith was credited with 5/26 accrual of the two-week vacation due to employees who have passed their first anniversary of employment. The 5/26 calculation is incorrect. According to Wal-Mart's records, Smith was hired on September 22, 2003 and terminated on December 18, 2004. Accordingly, Smith had second-year service time from Wednesday, September 22, 2004, through Saturday, December 18, 2004, a period of twelve and one-half weeks, or 6.25 of the 26 pay periods in a year. Therefore, Smith was underpaid by 1.25 pay periods of vacation pay and its associated GAP pay. The underpayment of accrued vacation pay is equal to 1.25/26 times the sum of $1,461.16 vacation pay plus $1,095.81 associated GAP pay, thereby totaling 1.25/26 times $2,557.03, the product being equal to $122.93. Therefore, Barry Smith remains unpaid in the amount of $122.93. Shapiro MSJ Decl. ¶18.

## IV. AS PLAINTIFFS BALLARD AND WIGGINS HAVE DEMONSTRATED THAT A GENUINE ISSUE OF FACT EXISTS THAT THEY ARE OWED WAGES AND/OR VACATION AND PERSONAL TIME PAY THE SECTION 17200 CLAIM SHOULD NOT BE DISMISSED

As stated repeatedly above, Plaintiffs Ballard and Wiggins have demonstrated a genuine issue that they are owed vacation payments from Wal-Mart. Even accounting for all the money Defendant says that is gave Plaintiffs, Ballard and Wiggins are still owed money. Consequently, their 17200 claim should not be dismissed. Defendant acknowledges a viable *Business & Profession* Code Section 17200 claims may exist premised on claim for unpaid vacation under §227.3. As Ballard and Wiggins have established that they have claims for unpaid vacation, their claims must be allowed to proceed and summary adjudication must be denied.

/ / /

/ / /

## V. PLAINTIFFS SMITH AND WIGGINS ARE ENTITLED TO WAITING TIME PENALTIES UNDER §203 AS THEY HAVE STILL NOT BEEN PAID ALL MONIES OWED

Defendant contends that Plaintiffs Smith and Wiggins cannot recover waiting time penalties under §203 because they absented and/or secreted themselves. Defendant admits that Plaintiffs eventually returned to the store to receive all money tendered. From that point forward they were underpaid and entitled to claim the penalty. Consequently, the numerous pages in the motion dedicated to convincing the Court that Smith and Wiggins absented and/or secreted themselves and therefore cannot recover under §203 are irrelevant. The fact remains that according to Defendant's databases, even after accounting for and including the payments from which they secreted themselves from receiving for some period of time, once received the Plaintiffs were still underpaid. As such, Smith and Wiggins remain underpaid regardless of when they did eventually return to the store.

Defendant argues that "if an employee does not appear in person at the place of employment to receive his or her final wages, the employee is not entitled to waiting time penalties for any time which passes prior to him or her actually showing up to receive the final wages." While as a general proposition this may be correct under §203, there is an implicit assumption that the employee is being tendered all that is owed on termination. This scenario is not present here. As noted above, Smith and Wiggins were not tendered all wages and vacation and/or personal time owed on termination. They did eventually pick up their checks and were underpaid. Consequently, Defendant cannot argue that Smith and Wiggins failed to return "timely" to the place of tender when Defendant has underpaid them all along. This is especially true in a situation where an employee may not know that he is being underpaid.

Defendant essentially argues that it is entitled to summary adjudication as to the §203 claims of Smith and Wiggins because Defendant had no obligation to calculate or tender final pay unless they fulfilled their predicate statutory duty: to be at the store to receive tender of final pay or to expressly request that Defendant mail final pay to a designated address. But here, Defendant admits Plaintiffs did not pick up their checks and Plaintiffs assert the were underpaid.

///

As Defendant underpaid both Smith and Wiggins, it remains liable for the remaining underlying payments owed and potentially the penalty under §203. Thus, contrary to Defendant's arguments, the workplace tender rule under §208 is entirely irrelevant to these Plaintiffs.

As stated above, if Plaintiffs were tendered full payment when they returned to the store they would not be entitled to claim penalties. In the cases contending underpayment as defined by the Labor Code, they would be entitled to claim and receive penalties. For all of the reasons that the class allege that Defendant's conduct to be willful under §203 Wiggins and Smith also allege the same conduct. So as not to burden the Court with unnecessary repetition, Plaintiffs respectfully incorporates by reference and refers to section V, at pages 16-19 of the contemporaneously filed Opposition to Motion for Summary Judgment as to the Class.

## VI. PLAINTIFFS SMITH'S AND WIGGINS' CLAIMS FOR WAITING TIME PENALTIES UNDER §203 ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant argues that a one-year statute of limitations applies to the claims of Smith and Wiggins because no underlying wages are owed them. As Plaintiffs have demonstrated above through the Declaration of Dr. Shapiro, both Smith and Wiggins are, in fact, owed, wages vacation and/or personal time. Accordingly, Plaintiffs contend that a one-year statute of limitations would not apply to the claims of Smith and Wiggins.

In support of the position that a one-year statute of limitations applies, Defendant again adopts the erroneous position that Smith and Wiggins were paid all that was owed to them. Defendant assumes, therefore, that Smith and Wiggins have claims for waiting time penalties only. This assumption is incorrect. Smith and Wiggins continue to have claims for the underpayment of wages and vacation and/or personal time. Accordingly, the appropriate statute of limitations is set forth in §203 which provides that "[s]uit may be filed for [waiting time] penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise."

Barry Smith was terminated in December 2004. Smith's original Complaint was filed on March 20, 2006. As Smith was not paid all wages due at the time he received his final pay on January 2, 2005, the filing of Smith's Complaint falls within the applicable three-year statute of

limitations and is not barred.

Likewise, Michael Wiggins was terminated on October 20, 2004. Wiggins' original Complaint was filed on March 20, 2006. As Wiggins was not paid all wages due at the time he received his final pay on December 3, 2004, the filing of Wiggins' Complaint falls within the applicable three-year statute of limitation and is not barred.

Accordingly, the summary adjudication as to the issue of the statute of limitations should be denied.

## VII. PLAINTIFFS' CLAIM FOR VIOLATION OF §226 SHOULD NOT BE DISMISSED

Section 226(a) requires that an employer provide each employee with an itemized statement showing, among other things, gross wages earned, total hours worked by the employee "except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime," all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

To succeed with a claim for damages under that Section 226, an employee must prove that he or she suffered "injury as a result of a knowing and intentional failure by an employer to comply" with the requirements of section. *See* Labor Code Section 226(e). Plaintiffs believe that a triable issue exists as to whether Defendant complied with the statute and whether Plaintiffs have suffered injury.

Defendant contends that Plaintiffs have not identified how Wal-Mart allegedly violated Section 226, other than to claim that their wage statements were "inaccurate." As set forth in the Declaration of Dr. Shapiro, Plaintiffs, Smith, Ballard and Wiggins were all underpaid on termination. Consequently, it would naturally follow that all of their final wage statements were incorrect based on the assumption that the Plaintiffs were underpaid..

For example, Barry Smith was given a cash payment on January 2, 2005 in the amount of $1,315.87. Smith testified, however, that the amount he received was not accurate as he was not

1 paid all that he was owed. Smith Depo.104:12-23.

2  The cash payment of $1,315.87 consisted of one-week regular pay plus $758.68 vacation
3 pay and $280.99 unused vacation pay-out, as verified by gross payroll records on December 24,
4 2004. Smith's biweekly pay, at the time of his termination, was $1,461.16 plus $1,095.81 G.A.P.
5 pay, thereby totaling $2,557.03. Wal-Mart's payroll records show that Smith was paid for one-
6 week's work at the time of his termination, but that Smith received no Geographical Assistance
7 Program (GAP) pay for the last pay period. Therefore, based on the Wal-Mart's computer
8 records, Smith is owed one-week of G.A.P. pay, $547.91 (0.5 times $1,095.81.) However, a
9 paper copy of Wal-Mart's Termination Worksheet contains the same monetary values but assigns
10 Smith's Termination Worksheet shows GAP wages being paid for both regular wages and accrued
11 vacation pay. However, the Termination Worksheet shows that Smith was underpaid for both
12 accrued vacation pay and its associated GAP pay. The Termination Worksheet shows that Smith
13 was credited with 5/26 accrual of the two-week vacation due to employees who have passed their
14 first anniversary of employment. The 5/26 calculation is incorrect.

15  According to Wal-Mart's records, Smith was hired on September 22, 2003 and terminated
16 on December 18, 2004. Accordingly, Smith had second-year service time from Wednesday,
17 September 22, 2004, through Saturday, December 18, 2004, a period of twelve and one-half
18 weeks, or 6.25 of the 26 pay periods in a year. Therefore, Smith was underpaid by 1.25 pay
19 periods of vacation pay and its associated GAP pay. The underpayment of accrued vacation pay is
20 equal to 1.25/26 times the sum of $1,461.16 vacation pay plus $1,095.81 associated GAP pay,
21 thereby totaling 1.25/26 times $2,557.03, the product being equal to $122.93. Therefore, Barry
22 Smith remains unpaid in the amount of $122.93. Shapiro MSJ Decl. ¶18.

23  Moreover, Smith testified that he was harmed as he did not get all that he was entitled to.
24 Smith Depo. 186:23-187:6. Additionally, Wiggins testified that it was his position that he did not
25 get all of the wages that he was owed when he finally received his final pay. Wiggins Depo.
26 110:12-14.

27  Consequently, a triable issue exists as to whether Defendant violated §226 and the
28 summary adjudication must be denied.

Plaintiffs' Opposition to Motion to Defendant's Motion for Summary Judgment

14

## VIII. PLAINTIFFS BALLARD, WIGGINS AND SMITH HAVE STANDING TO SUE UNDER ARTICLE III

In order to satisfy Article III's standing requirement, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

In the present case it is readily apparent that a genuine issue of material fact has been created as to whether Plaintiffs, Ballard, Wiggins and Smith were not paid all that they were owed upon termination of their employment with Wal-Mart. As such, they have satisfied the 'injury in fact' prong. Moreover, the injury can be easily traced to the Defendant for the failure to pay all wages owed on termination.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment/Adjudication as to Plaintiffs Michael Wiggins, Danton Ballard and Barry Smith. Additionally, Plaintiffs respectfully request that Barry Smith be reinstated as a member of subclasses 1 and 2 consistent with damages that he has suffered as identified in Wal-Mart's databases and declared to by Dr. Shapiro.

DATED: April 1, 2008

MARLIN & SALTZMAN
SCHWARTZ, DANIELS & BRADLEY
LAW OFFICES OF PETER M. HART
LAW OFFICES OF BONNIE R. MAC FARLANE

By: _____
MARCUS J. BRADLEY
Attorneys for Plaintiffs