Louis M. Marlin, Esq. [State Bar No. 054053]
Stanley D. Saltzman, Esq. [State Bar No. 090058]
**MARLIN & SALTZMAN**
3200 El Camino Real, Suite 100
Irvine, California 92602
Telephone: (714) 669-4900
Facsimile: (714) 669-4750
louis.Marlin@MarlinSaltzman.com
ssaltzman@MarlinSaltzman.com
[See Additional Plaintiffs' Counsel Attached]

Attorneys for Plaintiffs, individually and on behalf of all others similarly situated

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In Re WAL-MART STORES, INC. WAGE AND HOUR LITIGATION | Case No. C 06 02069 SBA |
| | **CLASS ACTION** |
| This Document Relates To:<br>Case Nos.<br>C 06 02069 SBA (Smith) and<br>CV 06 05411 SBA (Ballard) | **DECLARATION OF MARTIN M. SHAPIRO, Ph.D., IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS BARRY SMITH, MICHAEL WIGGINS AND DANTON BALLARD** |
| | Date: April 20, 2008<br>Time: 1:00 p.m.<br>Location: United States Courthouse<br>Courtroom 3, Third Floor<br>1301 Clay Street<br>Oakland, CA 94612-5212 |

///
///
///
///
///
///
///

---
Declaration of Martin M. Shapiro, Ph.D., in Support of Opposition to Motion for Summary Judgment
1

## ADDITIONAL PLAINTIFFS' COUNSEL

Arnold W. Schwartz, Esq.   [State Bar No. 063436]
Marcus J. Bradley, Esq.    [State Bar No. 174156]
**SCHWARTZ, DANIELS & BRADLEY**
29229 Canwood Street, Suite 208
Agoura Hills, California  91301
Telephone:    (310) 478-5838
Facsimile:    (310) 478-1232
Arnold.Schwartz@SchwartzDanielsBradley.com
Marcus.Bradley@SchwartzDanielsBradley.com


Peter M. Hart, Esq.   [State Bar No. 198691]
**LAW OFFICES OF PETER M. HART**
13952 Bora Bora Way, F-320
Marina Del Rey, California  90292
Telephone:    (310) 478-5789
Facsimile:    (310) 561-6441
HartPeter@msn.com


Susan Simmons Seemiller [Bar No. 150546]
**BAILEY PINNEY PC**
840 County Square Drive
Ventura, CA 93003
(805) 339-9090 Fax: (805) 339-0090
sseemiller@wagelawyer.com


Bonnie R. MacFarlane, Esq.   [State Bar No. 161526]
**LAW OFFICES OF BONNIE R. MAC FARLANE**
720 Howe Ave, Suite 113
Sacramento, California  95825
Telephone:    (800) 230-5528
Facsimile:    (800) 230-5866
BMacfarlane@wagelawyer.com

---

Declaration of Martin M. Shapiro, Ph.D., in Support of Opposition to Motion for Summary Judgment
2

I, MARTIN M. SHAPIRO, declare as follows,

1. I am a United States citizen, over the age of 21, and competent to testify to the matters stated herein. I am familiar with the facts set forth herein and if called upon as a witness, I could and would competently testify thereto.

2. I have a Bachelor's degree from Yale University and a Ph.D. degree from Indiana University with concentrations in Psychology and Mathematics. I also have a J.D. degree from Emory University. Currently, I am a Professor of Psychology at Emory University located in Atlanta, Georgia. I have been a professor at various institutions of higher learning for over 47 years. My areas of interest are in the application of quantitative and scientific concepts of legal processes; the design, construction and evaluation of test and measurement operations and statistics and quantitative measures. I have also taught courses in advanced statistics.

3. Attached hereto as Exhibit A is a true and correct copy of my Curriculum Vita. My Vita sets forth an accurate representation of my background and experience.

4. I submit this Declaration in response to Defendant's Motion for Summary Judgment/Adjudication as to Plaintiffs, Barry Smith, Michael Wiggins and Danton Ballard.

5. I previously have served as an expert in class action employment cases. I have developed formulae in these cases, based upon the employers' machine readable data, for calculating class wide damages and for apportioning theses damages to the individual class members.

6. I have been retained as a consultant in the instant cases for Plaintiffs. I also have been retained as an expert in approximately twenty other wage and hour class actions decided or pending against Wal-Mart. Through these other cases involving Wal-Mart, I have gained familiarity with the relevant Wal-Mart electronic databases.

7. I have attended the depositions of Wal-Mart employees responsible for three of Wal-Mart's computer databases and I have read deposition testimony of other Wal-Mart Information Technology employees responsible for Wal-Mart's in-store computer systems and home-office computer systems. Specific to the instant cases, I have read the deposition testimony

1  of Diana McChristian taken on August 28, 2007 specifically regarding the electronic Payroll data
2  for accrued and available vacation and personal time.

3     8.     I have reviewed Wal-Mart Stores' "Payroll and Scheduling Guide." The Guide
4  contains descriptions of numerous computer monitor displays for editing data as well as numerous
5  procedures for generating reports. Separate sections of the guide deal with procedures for
6  terminating employees, determining vacation benefits, determining personal time benefits and the
7  disbursement of cash payments to employees. The data entry and reporting programs used by
8  Wal-Mart in all Wal-Mart and Sam's Club stores include data transfer methods and report
9  generation programs for time-clock punches and payroll calculations. The system permits the
10 entry of time-clock data generated by employees swiping their badges through time-clocks or by
11 management adding, changing or deleting time-clock data via computer work stations. Although
12 these edits modify the time records for payroll purposes, an electronic trail of these deletions,
13 changes and additions is maintained in the Associate database. The time and attendance data in
14 the Associate database are electronically transmitted to a central computing facility at corporate
15 headquarters where they are stored in memory for use in numerous computer operations including
16 payroll calculations.

17    9.     Specifically, I am familiar with Wal-Mart's Associate database which tracks
18 employee time, attendance and payment records at the store level. In addition to all time-clock
19 entries, the Associate database contains records of each employee's subsequent payroll additions
20 such as vacation pay, sick pay and personal pay, as well as all actual dollar advances or
21 reimbursements. The Timekeeper-Master table of the Associate database contains records which
22 are created whenever an employee is credited with additional payable hours (such as holiday pay,
23 vacation pay, sick pay, or personal time pay) or dollar amounts for advances and reimbursements.

24    10.    I also am familiar with Wal-Mart's Payroll database. The Payroll database, using
25 the information uploaded from each store's Associate database, contains the details of Wal-Mart
26 employee's payroll checks, the hours and dollar amounts attributed to work, vacation, personal
27 and other payroll categories. Wal-Mart's work week ends at midnight Friday, i.e., 12:00 midnight
28 between Friday evening and Saturday morning. Each store's payroll-related information is

1  uploaded to the Bentonville, Arkansas headquarters early Saturday morning after it is finalized at
2  the store level. Pay checks are printed on Sunday, delivered to the stores on Tuesday and
3  distributed to employees on Thursday.

4      11.    I also am familiar with Wal-Mart's PeopleSoft database which contains the
5  demographic information for each salaried employee and the job history of each salaried
6  employee. The PeopleSoft database is the product of a commercial software vendor. The job
7  histories include hire dates, termination dates and termination reasons.

8      12.    I also a familiar with Wal-Mart's Cash Office database which contains information
9  regarding the cash registers, cash register operators, cash register reconciliation and all cash
10 movements within the store. The movement of cash within the store includes money infusions
11 into cash register drawers, money pulls from cash register drawers, and disbursements of money
12 from the store whether by cash, check or bank deposits. Electronic records of the disbursements
13 of money to employees also are entered into the Associate database from which they then flow
14 into the Payroll database.

15     13.    Wal-Mart produced four computer databases: (1) The Associate database for
16 303,998 hourly employees from January 1, 2001 through June 23, 2007, and 174,742 of them
17 have a termination as their last employment action after March 20, 2002, (2) The PeopleSoft
18 database for 4,472 salaried employees, 1,508 of whom have a termination as their last
19 employment action after March 20, 2002, (3) The Payroll database for 156,200 terminated hourly
20 and salaried employees with payroll ending dates from April 5, 2002 through May 25, 2007, and
21 (4) The Cash Office database with entries from August 8,2003 to July 6, 2007. (Associate
22 database tables from one of the stores were missing and were produced after the completion of the
23 analyses.

24     14.    The above databases contain the following information:

25     a.    <u>Hire date</u>: The hire date for hourly employees is contained in the <u>asc</u> table
26 of the Associate database. The hire date for salaried employees is contained in the <u>job</u> table of the
27 PeopleSoft database. Hire date is required for the calculation of accrued vacation time and
28 accrued personal time. Accrued vacation time and accrued personal time are based upon the

---

Declaration of Martin M. Shapiro, Ph.D., in Support of Opposition to Motion for Summary Judgment
5

1  number of service hours. On each anniversary of an employee's hire date, the employee's accrued
2  vacation time and accrued personal time convert to available vacation time and available personal
3  time, respectively. On each anniversary of an employee's hire date, unused available vacation
4  time and unused available personal time should be paid to the employee.

5        b.     Service hour: "A service hour is time for which the Associate receives
6  compensation from the Company, (i.e., hours worked or benefit hours such as bereavement,
7  holiday, illness protection hours, vacation, personal time, jury duty, etc.)." (Wal-Mart Vacation
8  Policy, PD-64) At the store level, the number of benefit hours and the time clock badge swipes
9  are contained in the timekeeper tables (tmkp_mstr, tmkp_punch, tmkp_audit) of the Associate
10 database and are summarized daily in the pay-sum table of the Associate database. At the
11 headquarters level, the number of work hours and benefit hours are contained in the
12 hr_asc_hours_type and the hr_asc_earnings tables of the Payroll database.

13       c.     Associate type: Hourly employees are either full-time, part-time, or
14 temporary. Salaried employees are full-time. An associate's type is contained in the asc table of
15 the Associate database and in the hr_pd_assoc table of the Payroll database. The accrual of
16 vacation time and personal time is a function of both years-of-service and associate type.

17       d.     Accrued vacation time: "'Accrued' vacation is the amount of time an
18 Associate accumulates based on his/her service hours during the current year to be taken as paid
19 vacation the next year." (Wal-Mart Vacation Policy, PD-64) Full-time employees accrue
20 vacation hours from the start of employment and part-time employees accrue vacation hours after
21 one year of employment. Full-time employees accrue vacation time at a rate of 0.019231 hours
22 for each service hour in the first year, at a rate of 0.038462 in the second through sixth years, at a
23 rate of 0.057692 in the seventh through fourteenth years, and at a rate of 0.076924 in the fifteenth
24 year and thereafter. Part-time employees accrue vacation time at a rate of 0.019231 for each
25 service hour in the second year and thereafter. Accrued vacation hours are contained in the
26 hr_pd_assoc table of the Payroll database. The number of accrued vacation hours is updated on
27 each biweekly payroll ending date. I have verified the accuracy of the biweekly accruals by
28

applying the appropriate years-of-service multiplier rates to the number of service hours contained in the pay-sum table of the Associate database for each biweekly payroll period.

  e. <u>Available vacation time</u>: "At the Associate's anniversary date of employment, 'accrued' vacation time converts to 'available' vacation time. 'Available' vacation is the amount of paid vacation time an Associate may use during the current year." (Wal-Mart Vacation Policy, PD-64) Available vacation hours are contained in the <u>hr_pd_assoc</u> table of the Payroll database. The number of available vacation hours is updated on each biweekly payroll ending date. The number of available vacation hours decreases whenever an employee uses vacation hours and the number of available vacation hours increases on each employment anniversary date. I have verified the accuracy of the biweekly availability by comparing changes in the available hours to the usage and annual insertion of available vacation hours.

  f. <u>Accrued personal time</u>: "'Accrued' Personal Time is the amount of time an Associate accumulates based on his/her service hours during the first year of employment. After one (1) year, 'accrued' personal time converts to 'available' time. After one (1) year of employment, Associates continue to accrue personal time each pay period based on service hours." (Wal-Mart Personal Time, PD-65) Personal time accrues at a rate of 0.007693 hours for each service hour beginning with the start of employment for both full-time and part-time employees. Accrued personal hours are <u>not</u> contained in the Payroll database. However, I calculated the number of accrued personal hours on each biweekly payroll ending date. For full-time and part-time employees, the number of accrued personal hours is 0.007693 hours for each service hour in the pay-sum table of the Associate database for each biweekly payroll period. For full time employees and for part-time employees after the first year of employment, I have verified the accuracy of the biweekly accruals by applying the appropriate years-of-service multiplier rates to the number of accrued vacation hours in the <u>hr_pd_assoc</u> table of the Payroll database. Personal hours are accrued at 40% of the accrual rate for vacation hours for first-year full-time employees and for all part-time employees after the first year; personal hours are accrued at 20% of the accrual rate for vacation hours for second through sixth year full-time employees; personal hours are accrued at 13.33…% of the accrual rate for vacation hours for seventh through

fourteenth year full-time employees; and, personal hours are accrued at 10% of the accrual rate for vacation hours for fifteenth and subsequent year full-time employees.

      g.    <u>Available personal time</u>: "'Available' personal time is the amount of personal time an Associate has available for use." (Wal-Mart Personal Time, PD-65) Available personal hours are contained in the <u>hr_asc_hours</u> table of the Payroll database. The available personal hours bear the hour-type code <u>ZZ</u> and are updated on each biweekly pay period. Accrued personal hours convert to available personal hours on the anniversary date of the employee's hire date. I have verified the accuracy of the biweekly availability by comparing changes in the available hours to the usage and annual insertion of available personal hours. Available personal hours also are increased in small increments by the conversion of excess sick hours at the rate of one-half hour of available personal time for each excess sick hour. I have reviewed the <u>hr_asc_hours</u> table of the Payroll database, and I have observed these small biweekly infusions of available personal time. (The Payroll database produced by Wal-Mart in the instant cases does not contain a field for sickness protection hours, even though I have seen such a field in the file layout of the Payroll database produced in other cases.)

      h.    <u>Employee status</u>: The day-by-day employee status for hourly employees is contained in the <u>pay_sum</u> table of the Associate database; employee status for salaried employees is contained in the <u>job</u> table of the PeopleSoft database; and, employee status for all employees is contained in the <u>hr_pd_assoc</u> table of the Payroll database. The change in employee status in the Associate, PeopleSoft, and Payroll tables differentiates the active-employee events from the terminated-employee events.

      i.    <u>Termination date</u>: Termination date is contained in the <u>asc_ter</u> table of the Associate database for hourly employees and in the <u>job</u> table of the PeopleSoft database for salaried employees. The <u>asc_ter</u> table for hourly employees also contains "last day worked" and a yes/no indicator of the employee's "eligibility for rehire." The <u>job</u> table PeopleSoft database contains both an action date and an effective date for every personnel action in the employees job history.

1    j.   Termination reason: Termination reason is contained in the ter_rsn table of the Associate database for hourly employees and in the job table of the PeopleSoft database for salaried employees.

k.   Hourly pay-rate: The hourly pay-rate for hourly employees is contained in the base_pay field of the hr_pd_assoc table of the Payroll database. The base pay for salaried employees is given as 1/26 of their annual salary. The hourly pay-rate for salary employees is calculated by dividing the amount in the base_pay field of the hr_pd_assoc table of the Payroll database by 80.

l.   Geographical Assistance Pay: GAP pay is contained in the DOE (Deductions and Other Earnings) table of the Payroll database. GAP pay, denoted by DOE codes 77, R1, R2 and TG, is calculated as a percentage of the employee's base pay. GAP pay is paid for all service hours – regular pay, overtime pay, vacation pay, personal time pay, etc.

m.   Amount of wages due upon termination: The hours of wages due upon termination for hourly employees is contained in the hr_asc_hours table of the Payroll database. Alternatively, the number of hours is contained in the pay_sum table of the Associate database. To calculate the amount of wages due a terminating hourly employee, multiply by the base hourly pay-rate. The hours of wages due upon termination for salaried employees is contained in the hr_asc_hours table of the Payroll database. Alternatively, the number of day's wages due a salaried employee is calculated as the number of work days (five work days in a week) between the beginning of the pay period and the termination date contained in the job table of the PeopleSoft database. To calculate the amount of wages due a terminating salaried employee, multiply by the number of work days prior to termination by one-tenth of the base pay. For the salaried employee, the amount of GAP pay paid in previous biweekly pay periods is reduced by the same proportion used to calculate wages. For the hourly employee, the GAP hourly rate paid in previous biweekly periods is applied to the number of hours owed for the final pay period.

n.   Amount of vacation time and personal time due upon termination: The amount due upon termination for vacation time and personal time is the sum of accrued vacation time, available vacation time, accrued personal time, and available personal time, all described

---

Declaration of Martin M. Shapiro, Ph.D., in Support of Opposition to Motion for Summary Judgment

9

1. above, plus accrued vacation time and accrued personal time at an accrual rate appropriate to the final pay-out of wages for the last biweekly pay period. That is, the accrued vacation time and the accrued personal time is updated in the calculation to reflect the hours paid in the final pay-out. For those employees receiving GAP pay, Gap pay is applied to the final pay-out of vacation and personal hours.

o. <u>Cash pay-out</u>: The amounts and dates of cash payments made at the store level, by either cash or check, are contained redundantly in the <u>tmkp_mstr</u> and <u>pay_sym</u> files of the Associate database, in the <u>hr_asc_doe</u> file of the Payroll database, and in the <u>cash_fund_trn_txt</u>, <u>cash_fund_xfer</u> and <u>cft_time_keep_data</u> of the Cash Office database. The corresponding monetary details upon which the cash payments for wages and benefits are based are included in the ensuing biweekly payroll entries.

15. I have reviewed and analyzed the above databases and concluded that Plaintiffs, Michael Wiggins, Danton Ballard and Barry Smith were not fully compensated by Defendant, Wal-Mart Stores, Inc. on termination.

16. Michael L. Wiggins was terminated involuntarily from store 3493 on July 4, 2004, as shown in Wal-Mart's Associate database. According to Wal-Mart Payroll database records, Mr. Wiggins received gross payment of $15.77 for 1.75 unused vacation pay-out and $38.83 for 4.31 accrued vacation hours. (Wal-Mart's Payroll database does not show Mr. Wiggins' to be changed from active to terminated, but the Payroll database does show the payment of accrued vacation hours. Payment for accrued hours, in contrast to currently available hours, is triggered only upon termination.) Wal-Mart payroll records also show that Mr. Wiggins was underpaid 2.49 hours accrued vacation regular hours, 0.06 accrued vacation overtime hours and 0.97 accrued personal hours. At the base pay rate of $9.01 per hour, Mr. Wiggins's unpaid 3.52 hours (2.49 + 0.06 + 0.97) were worth $ 31.72.

17. According to Wal-Mart Associate database records, Mr. Wiggins returned to work on July 8, 2004 and was terminated involuntarily on October 20, 2004 from store 3493, having last worked on October 6, 2004. Mr. Wiggins was paid no vacation pay or personal pay on or after the October 20, 2004 termination. Wal-Mart Payroll records of October 20, 2004 show that Mr. Wiggins

---

Declaration of Martin M. Shapiro, Ph.D., in Support of Opposition to Motion for Summary Judgment
10

1    was owed 11.68 accrued regular vacation hours, 0.37 accrued vacation overtime hours and 4.80
2    accrued personal hours at the time of his termination. Wal-Mart records show that Mr. Wiggins'
3    accrued and available vacation hours were reset to zero on October 29, 2004. Wal-Mart records also
4    show that 4.80 hours of accrued personal time were canceled by a negative entry added to the payroll
5    records on October 29, 2004.

6         18.    The unpaid amounts for Mr. Wiggins upon his "second termination" include the
7    unpaid amounts carried forward in Wal-Mart's payroll database from his "first termination." Mr.
8    Wiggins' final pay rate was $9.41. He was owed an unpaid total of 16.85 hours (11.68 + 0.37 + 4.80)
9    of accrued vacation and personal time. Therefore, Mr. Wiggins was owed $158.56. Wal-Mart's Cash
10   Office database contains an entry on December 3, 2004 showing a cash payment of $155.64 to Mr.
11   Wiggins together with a "NO" in answer to the Yes/No question of whether the cash fund transfer
12   was entered into the timekeeper (Payroll) system. The n-entry of the payment into the timekeeper
13   system meant that deduction (e.g., Social Security taxes and stock purchases) were not submitted to
14   the intended recipients and were not credited to Mr. Wiggins' accounts. Therefore, the payment was
15   effectively a gross payment and Mr. Wiggins remains underpaid by $ 2.92.

16        19.    Danton L. Ballard was terminated involuntarily on March 3, 2006 from store 2568.
17   At the time of his termination, Mr. Ballard was being paid a base rate salary of $1,673.08 plus
18   $250.96 regional pay zone, biweekly; therefore, he was being paid a total gross of $1,924.04
19   biweekly. Wal-Mart records show that Mr. Ballard was paid $192.40 gross regular pay (0.1 times the
20   biweekly total gross) on March 3, 2006. Based upon a five-day work-week, Mr. Ballard was paid,
21   therefore, for one day of work during the biweekly period ending on March 3, 2006. However, Mr.
22   Ballard should have been paid for the entire biweekly pay period because he was terminated on the
23   last day of the pay period. Therefore, Mr. Ballard is owed the remaining 0.9 times the $1,924.04
24   biweekly total gross wages, that is, $1,731.64.

25        20.    Wal-Mart records also show that Mr. Ballard had 8.45 hours of accrued regular
26   vacation time and 0.03 hours of accrued over-time vacation time that originated during Mr. Ballard's
27   tenure as an hourly employee. Wal-Mart records show that these unpaid vacation hours were reset
28   to zero on April 14, 2006. Wal-Mart records also show that Mr. Ballard had 5.66 hours of available

1  personal time and 1.69 hours of accrued personal time both canceled by negative entries on April 28,
2  2006; The total unpaid vacation and personal hours equal 15.83 hours (8.45 + 0.03 + 5.66 + 1.69).
3  At $1,924.04 biweekly total gross, 15.83 hours is 0.1979 (15.83/80.00) of a biweekly pay period and
4  is equivalent to $380.72 (0.1979 times $1,924.04). Consequently, Mr. Ballard is owed an additional
5  $380.72.

6  21.   Barry D. Smith was terminated involuntarily from store 2119 on December 22, 2004,
7  effective back to December 18, 2004 according to Wal-Mart's records. Mr. Smith was given a cash
8  payment of $1,315.87 (net) for one-week regular pay plus $758.68 vacation pay and $280.99 unused
9  vacation pay-out, as verified by gross payroll records on December 24, 2004. Mr. Smith's biweekly
10  pay, at the time of his termination, was $1,461.16 plus $1,095.81 G.A.P. pay, thereby totaling
11  $2,557.03. Wal-Mart's payroll records show that Mr. Smith was paid for one-week's work at the time
12  of his termination, but that Mr. Smith received no Geographical Assistance Program (GAP) pay for
13  the last pay period. Therefore, based on the Wal-Mart's computer records, Mr. Smith is owed one-
14  week of G.A.P. pay, $547.91 (0.5 times $1,095.81.) However, a paper copy of Wal-Mart's
15  Termination Worksheet contains the same monetary values but assigns them to different categories.

16  22.   Mr. Smith's Termination Worksheet shows GAP wages being paid for both regular
17  wages and accrued vacation pay. However, the Termination Worksheet shows that Mr. Smith was
18  underpaid for both accrued vacation pay and its associated GAP pay. The Termination Worksheet
19  shows that Mr. Smith was credited with 5/26 accrual of the two-week vacation due to employees who
20  have passed their first anniversary of employment. The 5/26 calculation is incorrect. According to
21  Wal-Mart's records, Mr. Smith was hired on September 22, 2003 and terminated on December 18,
22  2004. Accordingly, Mr. Smith had second-year service time from Wednesday, September 22, 2004,
23  through Saturday, December 18, 2004, a period of twelve and one-half weeks, or 6.25 of the 26 pay
24  periods in a year. Therefore, Mr. Smith was underpaid by 1.25 pay periods of vacation pay and its
25  associated GAP pay. The underpayment of accrued vacation pay is equal to 1.25/26 times the sum
26  of $1,461.16 vacation pay plus $1,095.81 associated GAP pay, thereby totaling 1.25/26 times
27  $2,557.03, the product being equal to $122.93. Therefore, Barry Smith remains unpaid in the amount
28  of $122.93.

23. My analysis in this matter is ongoing and I reserve the right to update my results and conclusions as new information becomes available to me.

I declare under penalty of perjury under the laws of the State of California and the laws of the United States that the foregoing is true and correct. Executed on April 1, 2008, in Atlanta, Georgia.

*Martin M. Shapiro, Ph.D.*

---

Declaration of Martin M. Shapiro, Ph.D., in Support of Opposition to Motion for Summary Judgment

13