REBECCA EISEN, State Bar No. 96129
THOMAS M. PETERSON State Bar No. 96011
KENT M. ROGER, State Bar No. 95987
ERIC MECKLEY, State Bar No. 168181
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: (415) 442-1000; Fax: (415)442-1001
Email: reisen@morganlewis.com
      tmpeterson@morganlewis.com
      kroger@morganlewis.com
      emeckley@morganlewis.com

Attorneys for Defendant
WAL-MART STORES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In Re WAL-MART STORES, INC. WAGE AND HOUR LITIGATION,<br><br><br>This document relates to Case Nos.:<br>C 06-02069 SBA (Smith) and<br>C 06-05411 SBA (Ballard) | Case No. C 06-02069 SBA (BZ)<br>      C 06-05411 SBA (BZ)<br><br>**DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN CONNECTION WITH THEIR OPPOSITIONS TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION**<br><br>Date:      April 22, 2008<br>Time:     1:00 p.m.<br>Place:    Courtroom 3<br>Judge:   Hon. Saundra Brown Armstrong |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

# TABLE OF CONTENTS

**Page**

I.    DEFENDANTS' OBJECTIONS TO THE SHAPIRO SJ DECLARATIONS ..................1

    A.    Introduction ........................................................................................1

    B.    Procedural Background ........................................................................1

    C.    Dr. Shapiro's Testimony .....................................................................2

        1.    The Shapiro Class SJ Declaration ..........................................2

        2.    The Shapiro Indiv. SJ Declaration ..........................................2

    D.    The Shapiro SJ Declarations Fail To Meet the Applicable Legal Standards. .........3

        1.    Summary Judgment Standard ..................................................3

        2.    Admissibility of Expert Testimony ..........................................3

    E.    Numerous Errors In Dr. Shapiro's Analysis And Calculations Render The Shapiro SJ Declarations Unreliable and Inadmissible ..........................................4

II.   OBJECTIONS TO STATEMENTS CONTAINED IN BOTH OF THE SHAPIRO SJ DECLARATIONS ........................................................................6

III.  OBJECTIONS TO STATEMENTS CONTAINED IN THE SHAPIRO CLASS SJ DECLARATION ........................................................................17

IV.   OBJECTIONS TO STATEMENTS CONTAINED IN THE SHAPIRO INDIV. SJ DECLARATION ........................................................................22

V.    OBJECTIONS TO EXHIBITS ATTACHED TO DECLARATION OF STANLEY SALTZMAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ..................................26

    A.    Objections to Exhibit E .....................................................................26

    B.    Objections to Exhibit F .....................................................................26

    C.    Objections to Exhibit G .....................................................................26

    D.    Objections to Exhibit I .....................................................................26

    E.    Objections to Exhibit N .....................................................................26

    F.    Objections to Exhibit O .....................................................................26

    G.    Objections to Exhibit Q .....................................................................26

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

# TABLE OF AUTHORITIES

Page

**Cases**

509 U.S. at 589 ...................................................................................................3

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*
135 F. Supp. 2d 1031 (N.D. Cal. 2001) ...............................................................5

*City of Vernon v. S. Cal. Edison Co.*
955 F.2d 1361 (9th Cir. 1992 ) .............................................................................5

*Daubert v. Merrell-Dow Pharmaceutica, Inc.*
509 U.S. 579 (1993) ...............................................................................................3

*Elsayed Mukhtar v. Cal. State Univ. at Hayward*
299 F.3d 1053 (9th Cir. 2002) ...............................................................................5

*General Electric Co. v. Joiner*
522 U.S. 136 (1997) ...............................................................................................3

*Guillory v. Domtar Indus.*
95 F.3d 1320 (5th Cir. 1996) ...............................................................................5

*Kumho Tire Co. Ltd.  v. Carmichael*
526 U.S. 137 (1999) ...............................................................................................3

*L.H. v. Schwarzenegger*
519 F. Supp. 2d 1072 (E.D. Cal. 2007) ...............................................................3

*Lust v. Merrell Dow Pharms, Inc.*
89 F.3d 594 (9th Cir. 1996) ...........................................................................3, 4

*Nakajima v. General Motors Corp.*
857 F.Supp. 100 (D.D.C. 1994) ...........................................................................5

*Nixon-Egli Equip. Co. v. John A. Alexander Co.*
949 F. Supp. 1435 (C.D. Cal. 1996) ...................................................................3

**Statutes**

Cal. Practice Guide:
Federal Civil Procedure Before Trial § 14:97 ...................................................3

Fed. R. Civ. P.
23(b)(3) ...................................................................................................................2

Fed. R. Civ. P.
56(e)(1) .............................................................................................................1, 3

Fed. R. Evid. 104(a) ...........................................................................................3

Fed. R. Evid. 602 ...............................................................................................3

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

ii

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Evid. 702 ...................................................................................................3, 4

FRE 401 ..................................................................................................................26

FRE 402 ..................................................................................................................26

FRE 602 ..................................................................................................................27

FRE 701 ..................................................................................................................27

FRE 901 ..................................................................................................................27

**Digest**

*Colony Holdings, Inc. v. Texaco Ref. and Mktg., Inc.*
    2001 WL 1398403 ................................................................................................3

*Hampton v. Broadway Mar. Shipping Co.*
    1997 WL 102500 (N.D. Cal. Feb. 25, 1997) ......................................................3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

1    Defendant Wal-Mart Stores, Inc. ("Wal-Mart") hereby objects to certain evidence

2   submitted by Plaintiffs in support of their oppositions to Wal-Mart's Motion for Summary

3   Judgment and/or Summary Adjudication as to Class Issues and Wal-Mart's Motion for Summary

4   Judgment as to Individual Plaintiffs Barry Smith, Michael Wiggins, and Danton Ballard.

5    The evidence to which Defendant objects is contained in the Declaration of Martin M.

6   Shapiro, Ph.D. filed in support of Plaintiffs' Opposition to Wal-Mart's Motion for Summary

7   Judgment and/or Summary Adjudication ("Shapiro Class SJ Declaration"), the Declaration of

8   Martin M. Shapiro, Ph.D filed in support of Plaintiffs' Opposition to Wal-Mart's Motion for

9   Summary Judgment as to Plaintiffs Barry Smith, Michael Wiggins, and Danton Ballard ("Shapiro

10  Indiv. SJ Declaration") (collectively "Shapiro SJ Declarations"), and the Exhibits attached to the

11  Declarations of Plaintiffs' counsel Stanley Saltzman ("Saltzman Declaration") and Marcus

12  Bradley ("Bradley Declaration").

13  **I.    DEFENDANTS' OBJECTIONS TO THE SHAPIRO SJ DECLARATIONS.**

14      **A.    Introduction**

15    Wal-Mart objects to the Shapiro Class SJ Declaration and the Shapiro Indiv. SJ

16  Declaration because neither Declaration satisfies the requirement of reliability for the admission

17  of expert testimony and will not assist the Court in assessing whether there is a genuine issue for

18  trial.  Dr. Shapiro's numerous errors in analysis and calculation of the data in Wal-Mart's

19  computerized records render his testimony inherently unreliable.  Plaintiffs may not rely on the

20  Shapiro SJ Declarations in opposing Wal-Mart's motions for summary judgment.  *See* Fed. R.

21  Civ. P. 56(e)(1) (requiring that affidavits supporting or opposing a motion for summary judgment

22  "be made on *personal knowledge*, set out facts that would be *admissible in evidence*, and show

23  that the affiant is *competent* to testify on the matters stated.").

24      **B.    Procedural Background**

25    In this action, Plaintiffs claimed, based on Dr. Shapiro's analysis, that Wal-Mart is liable

26  to a class of 145,000 former associates whose employment with Wal-Mart in its 200 California

27  stores terminated during the period from March 20, 2002, through and including the date a

28  judgment is rendered in this matter.  On October 10, 2007, Plaintiffs moved for class certification

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                    1                        CASE NO. C 06-02069 SBA (BZ)
                                                                           DEFENDANT'S OBJECTIONS TO EVIDENCE

1   pursuant to Fed. R. Civ. P. 23(b)(3).  On February 12, 2008, the Court entered its Order certifying

2   a class of former California Wal-Mart associates consisting of the following Sub-classes:

3       • Subclass No. 1:  Class members who, according to Wal-Mart's computerized

4         records, have not been paid all accrued and unused vacation and personal time

5         they earned while employed by defendant.

6       • Subclass No. 2:  Class members who, according to Wal-Mart's computerized

7         records, have not been paid all wages.

8   Class Certification Order (Dkt. #250) 21:25-28; 22:1-3, 27-28. [1]

9       On March 13, 2008, Wal-Mart filed its Motions for Summary Judgment and/or Summary

10  Adjudication, as to class legal issues and as to the claims of each named Plaintiff.  *See* Dkt. #269

11  and Dkt. #267.  On April 1, 2008, Plaintiffs filed their Oppositions to Wal-Mart's Motions for

12  Summary Judgment/Summary Adjudication, together with the Shapiro SJ Declarations.

13      **C.      Dr. Shapiro's Testimony**

14          **1.      The Shapiro Class SJ Declaration**

15      The Shapiro Class SJ Declaration purports to respond to just two points in the Declaration

16  of Denise Neumann Martin, Ph.D. in Support of Defendant Wal-Mart Stores, Inc.'s Motions for

17  Summary Judgment and/or Summary Adjudication ("Martin SJ Decl.").  Dr. Shapiro addresses

18  (1) Dr. Martin's analysis of negative hour entries constituting an accounting adjustment and (2)

19  Dr. Martin's analysis of the treatment of no reported net earnings where gross earnings are

20  reported.  Shapiro Class SJ Decl. ¶ 16.

21          **2.      The Shapiro Indiv. SJ Declaration**

22      The Shapiro Indiv. SJ Declaration purports to describe the fact, manner and amount of the

23  supposed underpayments of regular wages and vacation to the three named Plaintiffs Ballard,

24  Wiggins and Smith.

25

26

27

---

[1]  The Court noted that "wages" in the Sub-class Two definition refers to hourly pay, salary, and
geographical assistance pay.  *Id.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                    2                        CASE NO. C 06-02069 SBA (BZ)
                                                                    DEFENDANT'S OBJECTIONS TO EVIDENCE

**D.     The Shapiro SJ Declarations Fail To Meet the Applicable Legal Standards.**

1.     **Summary Judgment Standard**

"When a motion for summary judgment is made, [Plaintiffs] must respond by affidavit or otherwise setting forth specific facts showing there is a genuine issue of material fact." Schwarzer, et al., CAL. PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 14:97. Federal Rule of Civil Procedure 56(e) requires that affidavits supporting or opposing a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). "Competence to testify requires that the witness have personal knowledge of the facts comprising his testimony." *L.H. v. Schwarzenegger*, 519 F. Supp. 2d 1072, 1078 (E.D. Cal. 2007) (citing Fed. R. Evid. 602).

In addition, specifically with respect to expert testimony, "the *Daubert* standard can be invoked at the summary judgment stage as well as at trial or in motions *in limine*." *Nixon-Egli Equip. Co. v. John A. Alexander Co.*, 949 F. Supp. 1435, 1447 (C.D. Cal. 1996) (citing *Lust v. Merrell Dow Pharms, Inc.*, 89 F.3d 594 (9th Cir. 1996)). It is Plaintiffs' burden as the proponent of the expert testimony, to establish by a preponderance of the evidence that the expert testimony is admissible under Fed. R. Evid. 702. *Colony Holdings, Inc. v. Texaco Ref. and Mktg., Inc.*, 2001 WL 1398403, at *3 (C.D. Cal. Oct. 29, 2001) (citing Fed. R. Evid. 104(a)). "[I]f the expert's testimony is inadmissible by reason of inadequate supporting data or scientific methodology, it may properly be rejected in analyzing a summary judgment motion." *Hampton v. Broadway Mar. Shipping Co.*, 1997 WL 102500, at *4 (N.D. Cal. Feb. 25, 1997).

2.     **Admissibility of Expert Testimony**

In determining the admissibility of expert testimony, the Ninth Circuit is guided by the United States Supreme Court's decisions in *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Supreme Court charged trial judges with the responsibility to act as gatekeepers at trial to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire*, the Supreme Court clarified

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                    3                           CASE NO. C 06-02069 SBA (BZ)
                                                                             DEFENDANT'S OBJECTIONS TO EVIDENCE

1   that this gatekeeper function applies to all expert testimony, not just testimony based in science.

2   526 U.S. at 147-48.  As the Ninth Circuit has explained, the district court's role under *Daubert* is

3   to separate inadmissible opinions based on "junk science" from those based on scientific method.

4   *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 597 (9th Cir. 1996).  Under *Daubert*, the trial

5   judge serves a gate keeping function to ensure that only expert testimony that is both relevant and

6   reliable reaches the jury.

7       Federal Rule of Evidence 702, as amended to incorporate *Daubert*, requires the proponent

8   of expert testimony to satisfy three criteria to establish that the proffered testimony is sufficiently

9   reliable to be admitted as evidence.  These criteria are: "(1) the testimony is based upon sufficient

10  facts or data, (2) the testimony is the product of ***reliable principles and methods***, and (3) the

11  witness has ***applied*** the principles and methods ***reliably to the facts of the case***."  Fed. R. Evid.

12  702 (emphasis added).  Plaintiffs, as the proponents of Dr. Shapiro's testimony, have "the burden

13  of establishing that the pertinent admissibility requirements are met by a preponderance of the

14  evidence."  Advisory Committee Notes to 2000 Amendments to Fed. R. Evid. 702.

15       The Advisory Committee Notes to Rule 702 identify additional factors courts may

16  consider in determining the reliability of expert testimony, including, (1) whether experts are

17  proposing to testify about matters growing naturally and directly from their work outside of

18  litigation or whether their opinions were developed for purposes of testifying, (2) whether the

19  expert has unjustifiably extrapolated from ***an accepted premise to an unfounded conclusion***, and

20  (3) whether the expert had ***adequately accounted for obvious alternative explanations***.  Advisory

21  Committee Notes to 2000 Amendments to Fed. R. Evid. 702 (emphasis added).

22      **E.**    **Numerous Errors In Dr. Shapiro's Analysis And Calculations Render The**
           **Shapiro SJ Declarations Unreliable and Inadmissible.**

23

24       As demonstrated in Wal-Mart's moving papers and in its Replies to Plaintiffs'

25  Oppositions, including the Declaration of Denise Neumann Martin, filed concurrently herewith,

26  Dr. Shapiro's analysis of the computerized records is replete with errors.  Dr. Shapiro has already

27  acknowledged making several significant errors in his initial calculations of the alleged damages

28  for Sub-class Two.  *See, e.g.*, Shapiro Supplemental Declaration in Support of Class Certification

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1               4               CASE NO. C 06-02069 SBA (BZ)
                                             DEFENDANT'S OBJECTIONS TO EVIDENCE

¶¶ 12, 13, 17, 18.  His subsequent "corrections" have been shown to be erroneous and he continues to make errors even in his latest, drastically reduced, Sub-class Two damage amounts.

For example, Dr. Shapiro purported to state the dollar impact of a correction of an earlier error, but instead of aggregating hours and multiplying those hours by the wage rate to arrive at the dollar value of those hours, he simply reported the aggregated hours amount as the dollar amount.  Also, Dr. Shapiro failed to account for and properly credit Wal-Mart for actual cash draw payments to associates in his analysis.  But even when he purported to include such payments in his analysis, he used the wrong field in the database and failed to account for payroll deductions and taxes, rendering his "correction" faulty.  *See* Martin SJ Decl. 3:9-12, 4:18-22.

Multiple courts have refused to rely upon expert testimony containing similar deficiencies. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371-73 (9th Cir. 1992 ) (affirming summary judgment for defendant where plaintiff submitted flawed damages model); *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041-42 (N.D. Cal. 2001) (finding that damages model contained "entirely too many assumptions and simplifications" and as a result, "the amount of damages caused . . . are entirely too speculative to support a jury verdict.").

Shapiro's testimony will not assist the trier of fact in understanding the evidence or in determining a fact in issue and, for that reason, should not be admitted.  *Elsayed Mukhtar v. Cal. State Univ. at Hayward,* 299 F.3d 1053, 1063 (9th Cir. 2002); *Guillory v. Domtar Indus.*,95 F.3d 1320, 1331 (5th Cir. 1996) ("[A]n opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant."); *Nakajima v. General Motors Corp.*, 857 F.Supp. 100, 105 (D.D.C. 1994) ("Where, as here, the expert's opinion is based on an incorrect assumption . . . the testimony should not be permitted because it fails to serve its purpose of aiding the trier of fact in its determination . . . .").  Dr. Shapiro's unreliable testimony cannot aid the Court in determining, on a motion for summary judgment, if Plaintiffs have established an essential element of their Sub-Class Two claim – i.e. whether there are any amounts owing as wages.  As discussed above, his calculations and analysis of the data are full of errors.

For all of the above reasons, this Court should exclude both Shapiro SJ Declarations in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                    5                    CASE NO. C 06-02069 SBA (BZ)
                                                                       DEFENDANT'S OBJECTIONS TO EVIDENCE

their entirety.

## II. OBJECTIONS TO STATEMENTS CONTAINED IN BOTH OF THE SHAPIRO SJ DECLARATIONS

Wal-Mart objects to the following identical statements which are contained in both of the declarations submitted by Shapiro in opposition to Defendant's motion for summary judgment:

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Shapiro Class SJ Decl. 4:3-7; Shapiro Indiv. SJ Decl. 4:3-7.<br><br>The Guide contains descriptions of numerous computer monitor displays for editing data as well as numerous procedures for generating reports.  Separate sections of the guide deal with procedures for terminating employees, determining vacation benefits, determining personal time benefits and the disbursement of cash payments to employees. | Dr. Shapiro's description of Wal-Mart's records is inadmissible; those documents speak for themselves.  FRE 1001-1003. |
| Shapiro Class SJ Decl. 5:25-28, 6:1-4; Shapiro Indiv SJ Decl. 5:25-28, 6:1-4<br><br><u>Hire date</u>: The hire date for hourly employees is contained in the <u>asc</u> table of the Associate database. The hire date for salaried employees is contained in the <u>job</u> table of the PeopleSoft database.  Hire date is required for the calculation of accrued vacation time and accrued personal time.  Accrued vacation time and accrued personal time are based upon the number of service hours.  On each anniversary | Dr. Shapiro lacks foundation for his statement that he can determine the "hire date" of an associate from the Associate database.  FRE 602.  Vacation and personal time matters are not relevant to Sub-class Two.  FRE 402.  Dr. Shapiro's analysis of the "hire date" is unreliable and misleading, in part, because it relies exclusively on the PeopleSoft Database and ignores other evidence that may be necessary to determine the accrual of vacation and personal time.  FRE 401, 402, 703.  Dr. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                          6                    CASE NO. C 06-02069 SBA (BZ)
                                                                            DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| of an employee's hire date, the employee's accrued vacation time and accrued personal time convert to available vacation time and available personal time, respectively.  On each anniversary of an employee's hire date, unused available vacation time and unused available personal time should be paid to the employee. | Shapiro's opinion that "unused available vacation time and unused available personal time ***should be paid*** to the employee" is an improper legal conclusion and, on that basis, cannot assist a trier of fact in assessing liability.  FRE 701, 702. |
| Shapiro Class SJ Decl. 6:8-12; Shapiro Indiv. SJ Decl. 6:8-12<br>At the store level, the number of benefit hours and the time clock badge swipes are contained in the timekeeper tables (tmkp_mstr, tmkp_punch, tmkp_audit) of the Associate database and are summarized daily in the pay-sum table of the Associate database.  At the headquarters level, the number of work hours and benefit hours are contained in the hr_asc_hours type and the hr_asc_earnings tables of the Payroll database. | Dr. Shapiro's statement that he can determine the "benefit hours" of Wal-Mart associates from the Associate Database lacks foundation.  FRE 602.  "Benefit hours" are not relevant to Sub-class Two.  FRE 402.  Dr. Shapiro's analysis of the "benefit hours" is unreliable, in part, because it relies exclusively on the Associate Database and ignores other evidence that may be necessary to determine the accrual of vacation and personal time.  FRE 703.  Dr. Shapiro lacks foundation for his statement that these "benefit hours" are summarized daily in the Associate database.  FRE 602. |
| Shapiro Class SJ Decl. 6:13-16; Shapiro Indiv. SJ Decl. 6:13-16<br>Associate type: Hourly employees are either full-time, part-time, or temporary. Salaried employees are full-time.  An associate's type is contained in the asc table of the Associate | Dr. Shapiro's determination of "associate type" lacks foundation.  FRE 602.  Dr. Shapiro's determination is also unreliable because he fails to consider other evidence that may be necessary to determine "associate type."  FRE 703.  Dr. Shapiro's opinion regarding the |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| database and in the hr_pd_assoc table of the Payroll database.  The accrual of vacation time and personal time is a function of both years-of-service and associate type. | accrual of vacation/personal time lacks foundation.  FRE 602.  Accrual of vacation time is not relevant to Sub-class Two.  FRE 402. |
| Shapiro Class SJ Decl. 6:17-27, 7:1-2; Shapiro Indiv. SJ Decl. 6:17-27, 7:1-2<br><br>Accrued vacation time: "'Accrued' vacation is the amount of time an Associate accumulates based on his/her service hours during the current year to be taken as paid vacation the next year." (Wal-Mart Vacation Policy, PD-64).  Full-time employees accrue vacation hours from the start of employment and part-time employees accrue vacation hours after one year of employment. Full-time employees accrue vacation time at a rate of 0.019231 hours for each service hour in the first year, at a rate of 0.038462 in the second through sixth years, at a rate of 0.057692 in the seventh through fourteenth years, and at a rate of 0.076924 in the fifteenth year and thereafter. Part-time employees accrue vacation time at a rate of 0.019231 for each service hour in the second year and thereafter. Accrued vacation hours are contained in the hr_pd_assoc table of the Payroll database. The number of accrued | Dr. Shapiro's description and determination of "accrued vacation time" is not relevant to Sub-class Two and also lacks foundation.  FRE 402, 602.  Dr. Shapiro's determination of "accrued vacation time" is also unreliable because he relies exclusively on the Payroll Database and fails to consider other evidence that may be necessary to determine "accrued vacation time."  FRE 703.  Dr. Shapiro's opinion regarding the method and rate of accrual lacks foundation.  FRE 602.  Dr. Shapiro's calculations of "accrued vacation time" are inaccurate and unreliable.  FRE 703.  Dr. Shapiro's claim that he "verified" the accuracy of these calculations is an impermissible legal conclusion.  FRE 701. |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| vacation hours is updated on each biweekly payroll ending date. I have verified the accuracy of the biweekly accruals by applying the appropriate years-of-service multiplier rates to the number of service hours contained in the pay-sum table of the Associate database for each biweekly payroll period. | |
| Shapiro Class SJ Decl. 7:3-11; Shapiro Indiv. SJ Decl. 7:3-11<br><br>Available vacation time: "At the Associate's anniversary date of employment, 'accrued' vacation time converts to 'available' vacation time. 'Available' vacation is the amount of paid vacation time an Associate may use during the current year." (Wal-Mart Vacation Policy, PD-64). Available vacation hours are contained in the hr_pd_assoc table of the Payroll database. The number of available vacation hours is updated on each biweekly payroll ending date. The number of available vacation hours decreases whenever an employee uses vacation hours and the number of available vacation hours increases on each employment anniversary date. I have verified the accuracy of the biweekly availability by comparing changes in the available hours to the usage and | Dr. Shapiro's description and determination of "available vacation time" is not relevant to Sub-class Two and also lacks foundation. FRE 402, 602. Dr. Shapiro's determination is also unreliable because he relies exclusively on the Payroll Database and fails to consider other evidence that may be necessary to determine "available vacation time." FRE 703. Dr. Shapiro's opinion regarding the method and rate of availability of vacation lacks foundation. FRE 602. Dr. Shapiro's calculations of "available vacation time" are inaccurate and unreliable. FRE 703. Dr. Shapiro's claim that he "verified" the accuracy of these calculations is an impermissible legal conclusion. FRE 701. |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| annual insertion of available vacation hours. | |
| Shapiro Class SJ Decl. 7:12-28, 8:1-2; Shapiro Indiv. SJ Decl. 7:12-28, 8:1-2 <br><br> Accrued personal time: "'Accrued' Personal Time is the amount of time an Associate accumulates based on his/her service hours during the first year of employment. After one (1) year, 'accrued' personal time converts to 'available' time. After one (1) year of employment, Associates continue to accrue personal time each pay period based on service hours." (Wal-Mart Personal Time, PD-65). Personal time accrues at a rate of 0.007693 hours for each service hour beginning with the start of employment for both full-time and part-time employees. Accrued personal hours are <u>not</u> contained in the Payroll database. However, I calculated the number of accrued personal hours on each biweekly payroll ending date. For full-time and part-time employees, the number of accrued personal hours is 0.007693 hours for each service hour in the pay-sum table of the Associate database for each biweekly payroll period. For full time employees and for part-time employees after the first year of employment, I have verified the | Dr. Shapiro's description and determination of "accrued personal time" is not relevant to Subclass Two and also lacks foundation.  FRE 402, 602.  Dr. Shapiro's determination of "accrued personal time" is also unreliable because he relies exclusively on the Payroll Database and fails to consider other evidence that may be necessary to determine "accrued personal time."  FRE 703.  Dr. Shapiro's opinion regarding the method and rate of accrual of personal time lacks foundation.  FRE 602.  Dr. Shapiro's calculations of "accrued personal time" are inaccurate and unreliable.  FRE 703.  Dr. Shapiro's claim that he "verified" the accuracy of these calculations is an impermissible legal conclusion.  FRE 701. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

10

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| accuracy of the biweekly accruals by applying the appropriate years-of-service multiplier rates to the number of accrued vacation hours in the hr_pd_assoc table of the Payroll database. Personal hours are accrued at 40% of the accrual rate for vacation hours for first-year full-time employees and for all part-time employees after the first year; personal hours are accrued at 20% of the accrual rate for vacation hours for second through sixth year full-time employees; personal hours are accrued at 13.33% of the accrual rate for vacation hours for seventh through fourteenth year full-time employees; and, personal hours are accrued at 10% of the accrual rate for vacation hours for fifteenth and subsequent year full-time employees. | |
| Shapiro Class SJ Decl. 8:3-13; Shapiro Indiv. SJ Decl. 8:3-13<br><br>Available personal time: "'Available' personal time is the amount of personal time an Associate has available for use." (Wal-Mart Personal Time, PD-65) Available personal hours are contained in the hr_pd_assoc hours table of the Payroll database. The available personal hours bear the hour-type code ZZ and | Dr. Shapiro's description and determination of "available personal time" is not relevant to Sub-class Two and also lacks foundation.  FRE 402, 602.  Dr. Shapiro's determination is also unreliable because he relies exclusively on the Payroll Database and fails to consider other evidence that may be necessary to determine "available personal time."  FRE 703.  Dr. Shapiro's opinion regarding the method and |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                        11                    CASE NO. C 06-02069 SBA (BZ)
                                                                           DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| are updated on each biweekly pay period. Accrued personal hours convert to available personal hours on the anniversary date of the employee's hire date. I have verified the accuracy of the biweekly availability by comparing changes in the available hours to the usage and annual insertion of available personal hours. Available personal hours also are increased in small increments by the conversion of excess sick hours at the rate of one-half hour of available personal time for each excess sick hour. I have reviewed the hr_pd_assoc hours table of the Payroll database, and I have observed these small biweekly infusions of available personal time. | rate of availability of personal time lacks foundation.  FRE 602.  Dr. Shapiro's calculations of "available personal time" are inaccurate and unreliable.  FRE 703.  Dr. Shapiro's claim that he "verified" the accuracy of these calculations is an impermissible legal conclusion.  FRE 701. |
| Shapiro Class SJ Decl. 8:22-27; Shapiro Indiv. SJ Decl. 8:22-27<br><br>Termination date: Termination date is contained in the asc_ter table of the Associate database for hourly employees and in the job table of the PeopleSoft database for salaried employees. Termination date is used for ascertaining the duration of any late-payment penalty for employees who are paid-out in full within thirty-three days. The asc_ter table for hourly employees also contains "last day | Dr. Shapiro's description and determination of "termination date" and "last day worked" is not relevant to Sub-class Two; late payment penalties for associates paid out in full are not relevant to this action.  FRE 402.  Dr. Shapiro's statement regarding "termination date" and "last day worked" lacks foundation.  FRE 602.  Dr. Shapiro's determination is also unreliable because he relies exclusively on the Associate and PeopleSoft Databases and fails to consider other evidence that may be necessary to |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| worked" and a yes/no indicator of the employee's "eligibility for rehire." The job table PeopleSoft database contains both an action date and an effective date for every personnel action in the employees job history. | determine the "termination date" or the "last day worked." FRE 703. Dr. Shapiro's determination of "termination date" and "last days worked" are inaccurate and unreliable. FRE 703. Dr. Shapiro's reference to "termination" is vague and ambiguous. FRE 611(a). |
| Shapiro Indiv. SJ Decl. 9:1-3<br>Termination reason: Termination reason is contained in the ter_rsn table of the Associate database for hourly employees and in the job table of the PeopleSoft database for salaried employees. | Dr. Shapiro's description and determination of "termination reason" is not relevant to Sub-class Two. FRE 402. Dr. Shapiro's description and determination of "termination reason" lacks foundation. FRE 602. Dr. Shapiro's determination of "termination reason" is also unreliable because he relies exclusively on the Associate and PeopleSoft Databases and fails to consider other evidence that may be necessary to determine the "termination reason." FRE 703. Dr. Shapiro's determinations of "termination reason" are inaccurate and unreliable. FRE 703. Dr. Shapiro's reference to "termination" is vague and ambiguous. FRE 611(a). |
| Shapiro Class SJ Decl. 9:9-12; Shapiro Indiv. SJ Decl. 9:9-12<br>Geographical Assistance Pay: GAP pay is contained in the DOE (Deductions and Other | Dr. Shapiro's opinion description and determination of "GAP pay" lacks foundation. FRE 602. Dr. Shapiro's opinion as to codes denoting GAP pay, calculation of GAP pay, |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

13

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Earnings) table of the Payroll database. GAP pay, denoted by DOE codes 77, R1, R2, and TG, is calculated as a percentage of the employee's base pay. GAP pay is paid for all service hours – regular pay, overtime pay, vacation pay, personal time pay, etc. | and the types of service hours for which GAP pay is paid is inaccurate and unreliable. FRE 703. |
| Shapiro Class SJ Decl. 9:13-25; Shapiro Indiv. SJ Decl. 9:13-25.<br><br>Amount of wages due upon termination: The hours of wages due upon termination for hourly employees is contained in the hr_asc_hours table of the Payroll database. Alternatively, the number of hours is contained in the pay_sum table of the Associate database. To calculate the amount of wages due a terminating hourly employee, multiply by the base hourly pay-rate. The hours of wages due upon termination for salaried employees is contained in the hr_asc_hours table of the Payroll database. Alternatively, the number of day's wages due a salaried employee is calculated as the number of work days (five work days in a week) between the beginning of the pay period and the termination date contained in the job table of the PeopleSoft database. To calculate the amount of wages due a terminating salaried | Dr. Shapiro's opinion regarding the "amount of wages due upon termination" lacks foundation and constitutes an improper legal conclusion. FRE 602, 701. Dr. Shapiro's calculation of "wages due" cannot assist the trier of fact because it is an opinion regarding the ultimate legal issue in this case. FRE 702. Dr. Shapiro's calculation of these "wages due" is inaccurate and unreliable. FRE 703. Dr. Shapiro's reference to "termination" is vague and ambiguous. FRE 611(a). |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

14

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| employee, multiply by the number of work days prior to termination by one-tenth of the base pay. For the salaried employee, the amount of GAP pay paid in previous biweekly pay periods is reduced by the same proportion used to calculate wages.  For the hourly employee, the GAP hourly rate paid in previous biweekly periods is applied to the number of hours owed for the final pay period. | |
| Shapiro Class SJ Decl. 9:26-28, 10:1-4; Shapiro Indiv. SJ Decl. 9:26-28, 10:1-4. <u>Amount of vacation time and personal time due upon termination</u>: The amount due upon termination for vacation time and personal time is the sum of accrued vacation time, available vacation time, accrued personal time, and available personal time, all described above, plus accrued vacation time and accrued personal time at an accrual rate appropriate to the final pay-out of wages for the last biweekly pay period. That is, the accrued vacation time and the accrued personal time is updated in the calculation to reflect the hours paid in the final pay-out. | Dr. Shapiro's opinion regarding the "amount of vacation and personal time due upon termination" is not relevant to Sub-class Two and also lacks foundation.  FRE 402, 602.  Dr. Shapiro's opinion regarding the "amount of vacation and personal time due upon termination" constitutes an improper legal conclusion.  FRE 701.  Dr. Shapiro's calculation of "vacation and personal time due" cannot assist the trier of fact because it is an opinion regarding the ultimate legal issue in this case.  FRE 702.  Dr. Shapiro's calculation of "vacation and personal time due" is unreliable because he relies exclusively on three electronic databases and fails to consider other evidence that may be necessary to calculate vacation and personal time at |

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7687956.1                    15

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| | termination. FRE 703. Dr. Shapiro's calculation is also inaccurate and unreliable. FRE 703. Dr. Shapiro's reference to "termination" is vague and ambiguous. FRE 611(a). |
| Shapiro Class SJ Decl. 10:6-11; Shapiro Indiv. SJ Decl. 10:6-11.<br><br>Cash pay-out: The amounts and dates of cash payments made at the store level, by either cash or check, are contained redundantly in the tmkp_mstr and pay_sym files of the Associate database and in the hr_asc_doe file of the Payroll database. The corresponding details upon which the cash payments for wages and benefits are based are included in the ensuing biweekly payroll entries. | Dr. Shapiro's opinion regarding the amounts and dates of a "cash pay-out" " is not relevant to Sub-class Two; late payment penalties for associates paid out in full are not relevant to this action. FRE 402. Dr. Shapiro's opinion regarding amounts and dates of a "cash pay-out" also lacks foundation. FRE 602. Dr. Shapiro's opinion is also unreliable because he relies exclusively on three electronic databases and fails to consider other evidence that may be necessary to calculate final pay. FRE 703. Dr. Shapiro's calculation of the "cash pay-out" is also inaccurate and unreliable. FRE 703. Dr. Shapiro's opinion regarding the relevance of the "cash pay-out" is an improper legal conclusion and lacks foundation. FRE 701. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

16

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

### III.   OBJECTIONS TO STATEMENTS CONTAINED IN THE SHAPIRO CLASS SJ DECLARATION

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Shapiro Class SJ Decl. 10:26-28; 11:1-5<br><br>In the [Martin SJ Declaration], page 10, negative hour entries are described as constituting "off-setting corrections of hours entered incorrectly in the data" or "the movement of hours from one WIN number to another for the same associate."  These characterizations of data entries as "incorrect" are merely unsubstantiated assertions.  There is nothing in the database that denotes data entries as "incorrect" and there is nothing in the database with which to pair one positive datum entry with one negative datum entry.  There is nothing in the data to indicate that either data entry of a pair is "incorrect."  If, arguendo, the positive and negative data entries could be paired, there is nothing in the database to indicate which member of the pair was "incorrect." | Dr. Shapiro's opinion that characterizations regarding data entries are "unsubstantiated assertions" lacks foundation.  FRE 602, 702.  Dr. Shapiro's  opinion that nothing in the database denotes data entries as "incorrect" is also inaccurate and unreliable.  FRE 703. |
| Shapiro Class SJ Decl. 10:17-25<br><br>Furthermore, I have analyzed the Payroll data again and I was unable to find any instances of one Social Security Number being associated with more than one WIN number in the Payroll | Dr. Shapiro's opinion regarding the Payroll data and the conclusion in the Martin SJ Declaration regarding WIN number and Social Security number entries lacks foundation.  FRE 602, 702.  Dr. Shapiro's opinion regarding the |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

17

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| data. I find nothing in the database to support the conclusion in the [Martin SJ Declaration], page 10, that "The negative entries represent the movement of hours from one WIN number to another for the same associate." | Payroll data and the conclusion in the Martin SJ Declaration regarding WIN number and Social Security number entries inaccurate and unreliable. FRE 703. |
| Shapiro Class SJ Decl. 11:11-13<br>Therefore, it is my opinion that the treatment of negative hours for wages in the [Martin SJ Declaration] is without merit and does not provide an accurate analysis of negative, unpaid wages. | Dr. Shapiro's opinion that the treatment in the Martin SJ Declaration "is without merit" and does not provide an accurate analysis of negative, unpaid wages" lacks foundation. FRE 602, 702. |
| Shapiro Class SJ Decl. 11:22-28<br>The study described in the [Martin SJ Declaration] was conducted on an inappropriate sample. Although the claims in this case are limited to terminated employees the study was not limited to terminated employees, in fact, based upon the number of currently active and newly terminated employees in any Payroll period, most of the included employees must have been active employees. Furthermore, the study was limited to employees for whom both gross earnings and net earnings were reported, even though the pay periods of interest were those for whom there was no net pay amount reported for newly terminated employees. | Dr. Shapiro's opinion that the sample for the study described in the Martin SJ Declaration was "inappropriate" lacks foundation, and is inaccurate, and unreliable. FRE 602, 703. Dr. Shapiro's opinion that the "pay periods of interest" are those for whom no net pay amount was reported for newly terminated employees lacks foundation. FRE 602. Dr. Shapiro's reference to "pay periods of interest" is vague and ambiguous. FRE 611(a). |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                           18

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| **Shapiro Class SJ Decl. 12:1-6**<br>Furthermore, the results of the study demonstrate that the methodology employed in the study could not and did not "move accurately from gross earnings to net earnings." In spite of the fact that the payroll periods were not restricted to newly terminated employee[s], approximately 1.0 percent of the pay periods, 30,000 pay periods would amount to a maximum error of $15,000,000, that is $5.00 times 3,000,000 pay periods. | Dr. Shapiro's opinion regarding the potential and actual accuracy of the methodology employed in the Martin SJ Declaration lacks foundation.  FRE 602.  Dr. Shapiro's opinion as to the "maximum error" is inaccurate, and unreliable.  FRE 703. |
| **Shapiro Class SJ Decl. 12:7-13**<br>The conclusion in the [Martin SJ Declaration], page 12, that the methodology was "able to move accurately from gross earnings to net earnings" assumes that a $5.00 error between the database net earnings and the methodology's calculations of net earnings is acceptable.  But, there should be no error.  A methodology which fails to calculate correctly the net pay due an employee, when all payroll hours, benefits, taxes, and other deductions are stored in the database, certainly is not an accurate methodology.  The Wal-Mart Payroll database and the [Martin SJ Declaration] methodology are not using the same formulae. | Dr. Shapiro's opinion regarding the supposed assumption that a "$5.00 error" is "acceptable" lacks foundation.  FRE 602.  Dr. Shapiro's opinion as to the accuracy of "a methodology which fails to calculate correctly the net pay due an employee" also lacks foundation.  *Id.* Dr. Shapiro's opinion regarding the Wal-Mart Payroll database formula and the Martin SJ Declaration formula lacks foundation.  *Id.*  Dr. Shapiro's conclusion that the Martin SJ Declaration is "incorrect" is inaccurate and unreliable.  FRE 703. |

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

1-SF/7687956.1                                      19

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| The [Martin SJ Declaration] is "incorrect." | |
| Shapiro Class SJ Decl. 12:20-28, 13:1-3<br>Footnote 14 [of the Martin SJ Declaration] asserts that "taxes are not reported separately for different types of earnings," but that is not the source of the problem; the same tax rate is applied to all taxable earnings during the same pay period.  The taxes could be apportioned to regular pay, overtime pay, other taxable pay, vacation pay and personal time pay.  The operative part of footnote 14 with respect to defendant's methodology is that "it is not possible to determine how much of the net earnings are related to regular and overtime wages versus other wages such as vacation and personal time." | Dr. Shapiro's opinion as to the tax rate applicable to taxable earnings lacks foundation, and is inaccurate and unreliable.  FRE 602, 703.  Dr. Shapiro's opinion as to the "operative part" of Footnote 14 of the Martin SJ Declaration lacks foundation.  FRE 602. |
| Shapiro Class SJ Decl. 13:4-7<br>The problem with the methodology used for the second issue in the [Martin SJ Declaration] is that it was not designed to distinguish between wages and vacation time.  Therefore, the methodology used by Dr. Martin in the analyses of the second issue described in the [Martin SJ Declaration] is incapable of correctly calculating the unpaid wage. | Dr. Shapiro's opinion lacks foundation as to what Dr. Martin's methodology was "not designed" to do.  FRE 602.  Dr. Shapiro's opinion regarding the capacity of the methodology used by Dr. Martin to correctly calculate "unpaid wage" is inaccurate and unreliable.  FRE 703. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                                     20                    CASE NO. C 06-02069 SBA (BZ)
                                                                        DEFENDANT'S OBJECTIONS TO EVIDENCE

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Shapiro Class SJ Decl. 13:8-10<br><br>For the above reasons, it is my opinion that the data analyses contained in the [Martin SJ Declaration] analyzing unpaid wages are inaccurate and that there continue to be substantial unpaid wages associated with plaintiff sub-class 2. | Dr. Shapiro's opinion as to the accuracy of the analyses in the Martin SJ Declaration lacks foundation.  FRE 602.  Dr. Shapiro's opinion regarding "substantial unpaid wages" is inaccurate and unreliable, and lacks foundation.  FRE 703, 602. |
| Shapiro Class SJ Decl. 14:6-13<br><br>It is readily apparent in the above table that un-cashed, un-replaced Wal-Mart payroll checks represent less than two-tenths of one-percent of all payroll checks.  This is true for both escheated or un-escheated checks, or the sum of both escheated and un-escheated payroll checks.  It is true in terms of the number of checks and the dollar value of checks.  Even if it were assumed, without any supporting evidence, that all of the un-cashed, un-replaced and un-escheated checks were checks issued upon termination, the 818 checks would represent less than one percent of all 86,327 checks issued upon termination and would have a monetary value equal to 1.5% of the $18,596,301 value of such checks. | Dr. Shapiro's opinion of what is "readily apparent" with respect to "un-cashed, un-replaced Wal-Mart payroll checks" lacks foundation.  FRE 602.  Dr. Shapiro's opinion regarding the monetary value of un-cashed, un-replaced and un-escheated checks is inaccurate and unreliable.  FRE 703. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1

21

CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

IV.     **OBJECTIONS TO STATEMENTS CONTAINED IN THE SHAPIRO INDIV. SJ DECLARATION**

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Shapiro Indiv. SJ Decl. 5:8-14<br><br>I also am familiar with Wal-Mart's Cash Office database which contains information regarding the cash registers, cash register operators, cash register reconciliation and all cash movements within the store. … Electronic records of the disbursements of money to employees also are entered into the Associate Database from which they then flow into the Payroll Database. | Dr. Shapiro's description as to how cash disbursements reflected in the Cash Office database relate or "flow" to entries in the Associate and Payroll databases is irrelevant and lacks foundation.  FRE 401, 402. |
| Shapiro Indiv. SJ Decl. 10:15-16<br><br>Michael L. Wiggins was terminated involuntarily from store 3493 on July 4, 2004, as shown in Wal-Mart's Associate Database. | Dr. Shapiro's statement that Wiggins was terminated on July 4, 2004 is irrelevant and immaterial given that Wiggins' unpaid wage claim (for a total of $2.92, as described in his sworn interrogatory responses) is not premised or dependent upon whether or not Wiggins' employment terminated in July 2004.  FRE 401, 402.<br><br>Dr. Shapiro's statement also lacks foundation and ignores the existence of other evidence such as Wiggins' personnel file documents and other Payroll database files (specifically, the "Paid Associates" file), which indicate that Wiggins was <u>not</u> terminated on that date.  FRE 602 703. |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Shapiro Indiv. SJ Decl. 10:21-24<br><br>Wal-Mart payroll records also show that Mr. Wiggins was underpaid 2.49 hours accrued vacation regular hours, 0.06 accrued vacation overtime hours and 0.97 accrued personal hours.  At the base rate of $0.91 per hour, Mr. Wiggins's unpaid 3.52 hours (2.49 + 0.06 + 0.97) were worth $31.72. | Dr. Shapiro's statement that Wiggins was "underpaid" in connection with a July 4, 2004 termination is irrelevant and immaterial given that Wiggins' unpaid wage claim (for a total of $2.92, as described in his sworn interrogatory responses) is not premised or dependent upon whether or not Wiggins' employment terminated in July 2004.  FRE 401, 402. In addition, Dr. Shapiro's statement that Wiggins was underpaid in connection with a July termination lacks foundation and is irrelevant because Dr. Shapiro fails to acknowledge other evidence such as Wiggins' personnel file documents and other Payroll database files (specifically, the "Paid Associates" file), which indicate that he was not terminated on that date, and in fact Wiggins confirms in sworn interrogatory responses that he was <u>not</u> re-hired and has himself submitted no declaration stating that he was terminated in July.  FRE 401, 402, 602. |
| Shapiro Indiv. SJ Decl. 10:27-28<br><br>Mr. Wiggins was paid no vacation pay or personal pay on or after the October 20, 2004 termination. | Dr. Shapiro's statement that Wiggins was not paid on or after the October 20 termination, and thus not paid all vacation/personal time reflected in the records, is directly contradicted by Wiggins' own sworn deposition testimony |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
|  | (Wiggins Depo. 58:20-63:5, 87:6-22), sworn statements from the store personnel manager (Annatone Decl. ¶¶ 6-22, Exs. 1-13) and a file entry in the Cash Office Database -- all of which Shapiro completely ignores, rendering his conclusions lacking in foundation, irrelevant, immaterial and unreliable.  FRE 401, 402, 602, 703. |
| Shapiro Indiv. SJ Decl. 11:12-15<br>The n-entry of the payment into the timekeeper system meant that the deduction (e.g., Social Security taxes and stock purchase) were not submitted to the intended recipients and were not credited to Wiggins' accounts.  Therefore, the payment was effectively a gross payment and Mr. Wiggins remains underpaid by $2.92. | Dr. Shapiro's statement as to the effect/result of the "n" entry is irrelevant as Plaintiff Wiggins was provided cash to replace a previously issued money order, and lacks foundation, as Dr. Shapiro does not explain the bases for this statement.  FRE 602.<br>Dr. Shapiro's statement that the $155.56 payment was "effectively a gross payment" is a legal conclusion, lacking in foundation and irrelevant.  FRE 401, 402, 602, 703. |
| Shapiro Indiv. SJ Decl. 11:21-23<br>Mr. Ballard should have been paid for the entire biweekly pay period because he was terminated on the last day of the pay period. | Dr. Shapiro's statement is a legal conclusion and lacks foundation.<br>Dr. Shapiro does not rely on any factual predicate, such as whether Ballard worked more than one day during the pay period.  Dr. Shapiro is not a legal expert and has no knowledge regarding the extent of an employer's obligation to pay a salaried exempt |

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| | employee for work performed.  FRE 401, 402, 602, 703. |
| Shapiro Indiv. SJ Decl. 11:28; 12:1-2<br><br>Wal-Mart records also show that Mr. Ballard had 5.66 hours of available personal time and 1.69 hours of accrued personal time both canceled by negative entries on April 28, 2006. | Dr. Shapiro's statement is irrelevant and immaterial, because Ballard was a salaried exempt managerial associate who, pursuant to Wal-Mart's policy, did not accrue and was not eligible for "personal time."  Because working time for salaried exempt managerial associates is not tracked in the electronic payroll database, Dr. Shapiro's statement lacks foundation and is unsupported by any evidence regarding whether Ballard took time away from work after becoming an exempt employee, thus negating any remaining "personal time" in the Payroll Database.  FRE 401, 402, 602, 703. |
| Shapiro Indiv. SJ Decl. 12:11-14<br><br>Wal-Mart's payroll records show that Mr. Smith was paid for one-week's work at the time of his termination, but that Mr. Smith received no Geographical Assistance Program (GAP) pay for the last pay period.  Therefore, based on the Wal-Mart's computer records, Mr. Smith is owed one-week GAP pay, $547.91 (0.5 times $1,095.81). | Dr. Shapiro's statement lacks foundation and is irrelevant and immaterial.  Dr. Shapiro acknowledges that the "paper record" (*i.e.*, Termination Payout Worksheet") demonstrates that Smith <u>was</u> paid for the GAP pay on his final week of work; thus, the "computer records" are irrelevant and immaterial.  FRE 401, 402, 602, 703. |

MORGAN, LEWIS &<br>BOCKIUS LLP<br>ATTORNEYS AT LAW<br>SAN FRANCISCO

| Dr. Shapiro's Statement | Wal-Mart's Objection |
|---|---|
| Shapiro Indiv. SJ Decl. 12:20, 22-24; 12:27-28 The 5/26 calculation is incorrect. … Mr. Smith had second-year service time from Wednesday, September 22, 2004, through Saturday, December 18, 2004, a period of twelve and one-half weeks, or 6.25 of the 26 pay periods in a year. … Barry Smith remains unpaid in the amount of $122.93. | Dr. Shapiro's statement lacks foundation and is irrelevant and immaterial.  Dr. Shapiro ignores Smith's sworn testimony that he took one week off during this period and was off work for a "decision day" and, in addition, Dr. Shapiro does not account for or refer to any evidence demonstrating that Smith worked during this entire period, or evidence which would otherwise have reduced his proportionate vacation accrual.  FRE 401, 402, 602, 703. |

**V.      OBJECTIONS TO EXHIBITS ATTACHED TO DECLARATION OF STANLEY SALTZMAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

**A.      Objections to Exhibit E**

This document is irrelevant and immaterial.  FRE 401, 402.

**B.      Objections to Exhibit F**

This document is irrelevant and immaterial.  FRE 401, 402.

**C.      Objections to Exhibit G**

This document is irrelevant and immaterial.  FRE 401, 402.

**D.      Objections to Exhibit I**

This document is irrelevant and immaterial.  FRE 401, 402.

**E.      Objections to Exhibit N**

This e-mail document is irrelevant and immaterial.  FRE 401, 402.

**F.      Objections to Exhibit O**

This e-mail document is irrelevant and immaterial.  FRE 401, 402.

**G.      Objections to Exhibit Q**

Plaintiffs have failed to authenticate this document in any way and have simply attached it

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                    26                    CASE NO. C 06-02069 SBA (BZ)
DEFENDANT'S OBJECTIONS TO EVIDENCE

1    to the declaration of their counsel.  FRE 901.  The statements in this document regarding

2    "penalties" lack foundation, constitute speculation and are inadmissible.  FRE 602. To the extent

3    Plaintiffs attempt to rely on statements in this document regarding "penalties", such statements

4    constitute inadmissible opinion testimony by a lay witness.  FRE 701.  Given the generalized and

5    theoretical nature of the statements in this document regarding "penalties", such statements are

6    also irrelevant and immaterial.  FRE 401, 402.

7

8    Dated: April 8, 2008                          MORGAN, LEWIS & BOCKIUS LLP

9                                                  By:_____/S/_____
                                                           Rebecca Eisen
10

11                                                 Attorneys for Defendant
                                                   WAL-MART STORES, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7687956.1                          27          CASE NO. C 06-02069 SBA (BZ)
                                                    DEFENDANT'S OBJECTIONS TO EVIDENCE