1  Louis M. Marlin, Esq. [Bar No. 054053]
   Stanley D. Saltzman, Esq. [Bar No. 090058]
2  **MARLIN & SALTZMAN**
   3200 El Camino Real, Suite 100
3  Irvine, CA   92602
   (714) 669-4900 Fax: (714) 669-4750
4  louis.marlin@marlinsaltzman.com
   ssaltzman@marlinsaltzman.com
5
   Peter M. Hart [Bar No. 198691]
6  **LAW OFFICES OF PETER M. HART**
   13952 Bora Bora Way, F-320
7  Marina Del Rey, CA 90292
   (310) 478-5789 Fax: (310) 561-6441
8  hartpeter@msn.com
9  Attorneys For: Plaintiffs and Proposed Plaintiff Class*
10 *Additional Counsel on Following Page

11
                **IN THE UNITED STATES DISTRICT COURT**
12
             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13

14 In Re WAL-MART STORES, INC.     ]   Case Numbers:        C 06 02069 SBA
   WAGE AND HOUR LITIGATION        ]
15                                 ]   **CLASS ACTION**
                                   ]
16 _____ ]   EXHIBIT A FILED IN SUPPORT OF
                                   ]   MEMORANDUM OF POINTS &
17 This Document Relates To:       ]   AUTHORITIES IN SUPPORT OF
                                   ]   **UNOPPOSED** MOTION FOR PRELIMINARY
18 Case Nos.                       ]   APPROVAL OF CLASS ACTION
                                   ]   SETTLEMENT
19 C 06 02069 SBA (Smith) and      ]
   CV 06 05411 (SBA) Ballard       ]   **Judge:** Hon. Saundra B. Armstrong
20                                 ]   Date   :
                                   ]   Time   :
21 _____ ]   Courtroom :   3, 3d Floor

22

23

24

25

26

27

28

                                    1

1  **ADDITIONAL PLAINTIFFS' COUNSEL**

2  **BAILEY PINNEY PC**
   1498 S.E. Tech Center Place, Suite 290
3  Vancouver, Washington 98683
   Telephone:      (360) 567-2551
4  Facsimile:      (360) 567-3331
   bbailey@wagelawyer.com
5  jdpinney@wagelawyer.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A Filed In Support Of Motion For Preliminary Approval of Class Action Settlement

C 06-02069 SBA (BZ)

# SETTLEMENT AGREEMENT

## 1.   PREAMBLE

1.1   This Settlement Agreement is made and entered into as of the dates set forth below individually and on behalf of the Named Plaintiffs, the Class Representatives, and the Class Members, all as further defined below, and on behalf of Wal-Mart, as further defined below.

## 2.   DEFINITIONS

2.1   The term *"Agreement"* as used herein means this Settlement Agreement.

2.2   The term *"Approved Claimants"* as used herein means those Claimants whose Claims have been approved for payment.

2.3   The term *"Approved Claims"* as used herein means those Claims which are approved by the Claims Administrator for payment after the deadline for audits allowable under Section 8 has expired, or, if an audit is made, after all audits have been resolved in accordance with Subsection 8.7 of this Agreement.

2.4   The term *"Attorneys' Fees and Costs"* as used herein means the amount of attorneys' fees and costs to be requested by Class Counsel subject to Court approval in accordance with Subsection 5.1.3 of this Agreement.

2.5   The term *"Claim"* as used herein means any Claim submitted by way of a Settlement Class Member by way of a Claim Form.

2.6   The term *"Claim Form"* as used herein means the Claim Form attached hereto as Exhibit 1, which has been agreed to by the Parties subject to Court approval as the method by which Claimants may submit Claims.  Only those Settlement Class Members who submit a Claim Form are eligible to recover a share of the Settlement proceeds.

2.7   The term *"Claimant"* as used herein means any Settlement Class Member who submits a Claim Form.

2.8   The term *"Claims Administrator"* as used herein means  Epiq Systems, Inc., the entity agreed to by the Parties subject to Court approval which will perform the duties of, among other things:  (i) mailing the Notice and Claim Forms to Class Members; (ii) tracking returned Claim Forms and Opt-Out Letters; (iii) notifying the Parties of determinations regarding submitted Claim Forms and Opt-Out Letters consistent with this Agreement; (iv) issuing any required tax paperwork; and (v) with the approval of Wal-Mart and Class Counsel, selecting, engaging, supervising, compensating, removing, and replacing the Trustee of the QSF.

2.9     The term *"Class Counsel"* as used herein means the following counsel who appeared on behalf of Plaintiffs and the class in the Litigation:  Marlin & Saltzman, LLP, Law Offices of Peter M. Hart, and Bailey Pinney PC.

2.10    The term *"Class Settlement Amount"* as used herein means up to Eighty-Six Million Dollars ($86,000,000) to be paid by Wal-Mart pursuant to this Settlement, as described more fully in Subsection 5.1 of this Agreement.

2.11    The term *"Court"* as used herein means the District Court and any appellate court which may review any orders entered by the District Court related to this Settlement.

2.12    The term *"District Court"* as used herein means the United States District Court for the Northern District of California (The Honorable Saundra Brown Armstrong).

2.13    The term *"Employer's Share of Taxes"* as used herein means any taxes on wages ordinarily paid by the employer which Wal-Mart has agreed to pay as part of the Class Settlement Amount.

2.14    The term *"Execution"* as used herein refers to the signing of this Agreement by all signatories hereto.

2.15    The term *"Final Judgment"* as used herein refers to the Final Judgment approving the Settlement, releasing all claims, and dismissing the Litigation with prejudice which this Settlement contemplates will be entered and approved by the Court.

2.16    The term *"Litigation"* as used herein means the consolidated lawsuits *In re Wal-Mart Stores Wage and Hour Litigation*, Case No. 020269SBA (Smith Case No. C-06-000269SBA and Ballard Case No. C-06-05411SBA ((United States District Court for the Northern District of California)).

2.17    The term *"Named Plaintiffs"* as used herein means the named plaintiffs in the Litigation, Danton Ballard, Nathan Lyons, Barry Smith and Michael Wiggins.  Class Counsel shall request that each of the Named Plaintiffs be appointed as Class Representatives.

2.18    The term *"Net Settlement Amount"* as used herein means the Class Settlement Amount less the combined aggregate of the Attorneys' Fees and Costs approved by the Court, the Incentive Awards approved by the Court, Notice and Administration Costs and the amount to be set aside for late Claims as provided in Subsection 8.3.

2.19    The term *"Notice"* as used herein means a document substantially in the form of the Notice attached hereto as Exhibit 2 which has been agreed to by the Parties subject to Court approval and which the Claims Administrator will mail to each Settlement Class Member explaining the terms of the Settlement and the Claims, Opt-Out, and objection processes.

DEN 97,181,998v2

2.20    The term *"Notice and Administration Costs"* or *"Administration* Costs" as used herein means the cost to run the class list against the National Change of Address database maintained by the United States Postal Service, typeset, print, and mail the Notice, Claim Form, "no postage required" return envelope and the Reminder Postcard to Settlement Class Members, perform agreed upon skip-tracing of returned mailings, payment of postage required to comply with this Agreement, the costs associated with newspaper publication of the Summary Notice, and all other expenses, including fees to be paid to the Claims Administrator, necessary to administer the Settlement in accordance with this Agreement.

2.21    The term *"Opt-Out Letter"* as used herein refers to a request to opt-out or exclude oneself from the Settlement to be sent by any Settlement Class Member who elects to be excluded from the Settlement Class. A Settlement Class Member must submit an Opt-Out Letter to exclude himself or herself from the Settlement and from the release of claims pursuant to this Settlement. Those who submit a valid and timely Opt-Out Letter will no longer be considered part of the Settlement Class after a valid and timely Opt-Out Letter is received.

2.22    The term *"Parties"* as used herein means the Named Plaintiffs, the Settlement Class Representatives, the Settlement Class Members, and Wal-Mart.

2.23    The terms *"Qualified Settlement Fund"* or *"QSF"* as used herein means the Qualified Settlement Fund to be set up in accordance with Section 9 of this Agreement.

2.24    The term *"Released Claims"* as used herein means the claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liabilities that are released, acquitted and discharged pursuant to Section 10 of this Agreement.

2.25    The term *"Reminder Postcard"* as used herein means a postcard to be sent by the Claims Administrator at the half way point of the claims period to those Settlement Class Members who, as of that date, have not submitted a Claim Form or an Opt-Out Letter.

2.26    The term *"Settlement"* as used herein means the compromise and settlement of the Litigation as contemplated by this Agreement.

2.27    The term *"Settlement Class"* as used herein means the class to be certified for settlement purposes in accordance with this Agreement. The Settlement Class shall be divided into *"Settlement Subclasses"* in accordance with Subsection 4.2 of this Agreement.

2.28    The term *"Settlement Class Members"* as used herein means the members of the Settlement Class.

3

2.29   The term *"Settlement Class Period"* as used herein means the period of time from March 20, 2002 up through and including March 26, 2010.

2.30   The term *"Settlement Class Representatives"* as used herein means Danton Ballard, Nathan Lyons, Barry Smith and Michael Wiggins, who Class Counsel requests be appointed by the Court as class representatives for purposes of the Settlement Class.

2.31   The term *"Settlement Effective Date"* as used herein means the first day following the last of the following occurrences:

2.31.1. The date upon which the District Court enters a Final Judgment approving the Settlement and there have been no timely objections made to the settlement pursuant to section 8.13 hereafter; or

2.31.2. If timely objections to the Settlement have been made, the date the time to appeal or seek permission to appeal or seek other judicial review of the entry of a Final Judgment approving the Settlement has expired with no appeal or other judicial review having been taken or sought; or

2.31.3. If an appeal or other judicial review has been taken or sought: (i) the date the Final Judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom; or (ii) the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the District Court or to a lower appellate court following an appeal or other review, the date the Final Judgment is entered by the District Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Judgment has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after a remand, the time periods in this Subsection shall apply.

2.32   The term *"Summary Notice"* as used herein means a document substantially in the form of the Summary Notice attached hereto as Exhibit 3 which has been agreed to by the Parties subject to Court approval and which shall be used for publication purposes.

2.33   The term *"Third-Party Expert"* as used herein means Nickerson & Associates, the third-party entity agreed to by the Parties who shall perform the calculations contemplated in Subsection 5.1.1.

2.34   The term *"Wal-Mart"* as used herein means Wal-Mart Stores, Inc., Sam's East, Inc., Sam's West, Inc., Wal-Mart Stores East, Inc., Wal-Mart Stores East, LP, Wal-Mart Associates, Inc. and any of their current or former subsidiaries, affiliates, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, partners, employers, attorneys, personal representatives, executors, and shareholders, including

4

their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, and those plans' respective trustees, administrators, and fiduciaries.

## 3.   RECITALS

3.1   On March 20, 2006, plaintiffs Barry Smith and Michael Wiggins filed suit in the District Court for the Northern District of California.  On May 17, 2006, Plaintiffs Danton Ballard and Nathan Lyons filed a similar suit in state court in Los Angeles County, California.  The Ballard/Lyons case was removed to federal court, transferred to the District Court and consolidated before the Honorable Saundra Brown Armstrong with the Smith/Wiggins suit.  On March 27, 2007, Plaintiffs filed a First Amended Complaint alleging claims previously alleged in one or both of the original Complaints, including claims for damages and penalties for:  (1) wages allegedly not fully paid on termination of employment (Cal. Labor Code §§201-203); (2) failure to pay accrued vacation at termination (Cal. Labor Code §227.3); (3) failure to pay overtime and straight time wages to terminated employees (Cal. Labor Code §§500, 510 1194); (4) failure to accurately record and report wages of terminated employees (Cal. Labor Code §226); (5) tortious conversion of wages; and (6) unfair business practices in connection with the foregoing (Business & Professions Code §17200), as well as claims for conversion, punitive damages, pre-judgment and post-judgment interest, attorneys' fees, costs, disbursements, expert witness fees, and other, further relief as the District Court deemed just and equitable.  One claim previously alleged - breach of contract was not re-alleged in the First Amended Complaint.  Wal-Mart denied, and continues to deny, all of Plaintiffs' allegations.

3.2   On February 13, 2008, the District Court granted in part and denied in part Plaintiffs' Motion for Class Certification.  Wal-Mart's Petition for Leave to Appeal to the Ninth Circuit pursuant to Rule 23(f) was granted, and Wal-Mart's appeal of the District Court's class certification ruling is currently pending.  Oral argument has been completed and, at the request of the parties, the Ninth Circuit has agreed to stay further proceedings pending the presentation of this Settlement to the District Court.

3.3   On December 4, 2009, the Parties participated in a private mediation with former District Court Judge Layn R. Phillips.  On February 27, 2010 a second session was held with former District Court Judge Phillips and former District Court Judge Thomas R. Brett.  As a result of these mediation sessions, and as a result of other arms-length negotiations, the Parties reached an agreement to settle the Litigation in accordance with the terms set forth in the Term Sheet dated February 27, 2010.  The Term Sheet is superseded and replaced by this Settlement Agreement.

3.4   Named Plaintiffs, the Settlement Class Representatives, and the Settlement Class Members believe this Litigation is meritorious based on applicable law.  Class Counsel represents that they have conducted a thorough investigation into the facts of this case, and have diligently pursued an investigation of the Named Plaintiffs and the Settlement

5

Class Members' claims against Wal-Mart, including, but not limited to: (i) interviewing Class Members and analyzing the results of Settlement Class Member interviews; (ii) reviewing over 1 million relevant documents; (iii) researching the applicable law and the potential defenses; (iv) conducting depositions of Wal-Mart representatives and executives, as well as the expert retained by Wal-Mart; (v) hiring and consulting with experts; (vi) developing the argument for class certification; (vii) defending against the appeal; (viii) advocating for the rights of the putative class; and (ix) preparing for trial. Based on their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Wal-Mart, trial risk, and appellate risk.

3.5     Wal-Mart has also actively investigated the facts surrounding Plaintiffs and the Settlement Class' claims and actively defended itself, including, but not limited to: (i) reviewing voluminous documents for production to plaintiffs or placement on a privilege log; (2) interviewing fact witnesses; (ii) conducting depositions; (iii) hiring and consulting with experts; (vi) defending against class certification; (v) preparing for and taking the interlocutory appeal; and (vii) preparing for trial. Wal-Mart denies any liability or wrongdoing of any kind associated with the claims alleged and contends that this Litigation is not appropriate for class or collective action treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure or any other federal or state rule, statute, law, or provision. Wal-Mart continues to assert that the Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues make the Litigation unmanageable consistent with due process. Wal-Mart also preserves and does not waive other objections, including without limitation its position that the electronic records and other evidence as alleged by Plaintiffs are insufficient to demonstrate whether a particular associate was properly paid or was paid late. Wal-Mart further asserts that it has complied with all applicable provisions of California statutory and common law. Wal-Mart further states that despite its good faith belief that it is not liable for any of the claims asserted, and despite its good faith belief that neither certification nor collective action treatment is appropriate, Wal-Mart will not oppose the District Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. Other than for purposes of this Settlement, Wal-Mart does not waive its objections to certification of the Settlement Class, or any other class, in this Litigation, or in any other lawsuit, as a litigation class.

3.6     The entry of Final Judgment in this Litigation shall release and dismiss with prejudice all claims which were or which could have been alleged in any Complaint filed in the Litigation, with the exception of any claims which might be retained by Settlement Class Members who exclude themselves from the Settlement which shall be dismissed without prejudice, and Wal-Mart shall retain any existing defenses to such excluded claims. The

6

Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement, to effectuate its terms, and to dismiss this Litigation with prejudice.

3.7    Each of the forgoing Recitals are incorporated into this Agreement as if fully set forth in the body of the Agreement.

## 4.    CERTIFICATION OF SETTLEMENT CLASS AND SUBCLASSES

4.1    The Settlement Class shall consist of all former hourly and salaried associates who were at one time employed by Wal-Mart (including Sam's Club and Distribution Centers) in the State of California, but whose employment with Wal-Mart ended at any time from March 20, 2002 up through and including March 26, 2010.

4.2    The Settlement Class shall be divided into Settlement Subclasses as follows:

    4.2.1.  A *"Salaried Associate Subclass"* which shall be comprised of those Settlement Class Members who worked at a Wal-Mart store or Sam's Club and were paid on a salaried basis at the time of their termination.

    4.2.2.  A *"Distribution Center Subclass"* which shall be comprised of those Settlement Class Members who worked at a Distribution Center and were paid on either an hourly or salaried basis at the time of their termination.

    4.2.3.  An *"Hourly Associate Subclass"* which shall be comprised of those Settlement Class Members who worked at a Wal-Mart store or Sam's Club and were paid on an hourly basis at the time of their termination.

    4.2.4.  A Settlement Class Member can be a member of one or more Settlement Subclasses.

4.3    In order to implement the Settlement, Class Counsel shall request that the District Court amend its prior order regarding class certification in the Litigation to cover the Settlement Class Period, the Settlement Class (and Settlement subclasses), and all claims and individuals covered by this Settlement. The form of settlement class certification order shall, subject to Court approval, expressly state that the Parties and Class Counsel agree that certification of the Settlement Class is a conditional certification for settlement purposes only, and that Wal-Mart retains its right to object to certification of this Litigation, or any other wage and hour class action, or any other class action, under Rule 23 of the Federal Rules of Civil Procedure or any other applicable rule, statute, law, or provision. The form of the settlement class certification order shall, subject to Court approval, also expressly state that the parties agree that Class Counsel, Plaintiffs and the Class do not waive their right to continue to assert that the class previously certified by the District Court is legally and factually appropriate and in compliance with applicable

7

law, including, but not limited to, Rule 23 of the Federal Rules of Civil Procedure, or any other applicable rule, statute, law, or provision. A form of amended class certification order for settlement purposes only, subject to Court approval, is attached as Exhibit 4.

4.4    The Parties and Class Counsel agree that, if approved, certification of the Settlement Class is a conditional certification for settlement purposes only, and if for any reason the District Court does not grant final approval of the Settlement, or if final approval is not given following the appeal of any order by the District Court, or if for any reason the Settlement Effective Date does not occur, the certification of the Settlement Class for settlement purposes shall be deemed null and void without further action by the Court or any of the Parties, each Party shall retain all of their respective rights and shall be returned to their relative legal positions as they existed prior to execution of this Agreement, and neither this Agreement, nor any of its accompanying exhibits or any orders entered by the Court in connection with this Agreement, shall be admissible or used for any purpose in this Litigation.

4.5    The Parties and Class Counsel agree that, if approved, certification of the Settlement Class for settlement purposes is in no way an admission by Wal-Mart that class certification is proper in this Litigation, any other wage and hour litigation, or any other litigation, against Wal-Mart. Moreover, Wal-Mart continues to assert that this Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues make the case unmanageable consistent with due process. The Parties and Class Counsel further agree that, other than to effectuate the Settlement of this Litigation in this jurisdiction, the certification of the Settlement Class for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, are not intended to be admissible or used in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour litigation, or any other litigation, against Wal-Mart. Provided, however, that nothing in this Subsection prevents Wal-Mart from providing information regarding the Settlement of this Litigation in connection with proceedings to approve the settlement of another wage and hour action brought against Wal-Mart. If such circumstances arise, Wal-Mart shall notify Class Counsel of its intent to make such a submission and shall meet and confer in good faith regarding the contents of such submission. Any such notice shall give Class Counsel sufficient time to object to such use if deemed necessary.

5.    TERMS OF SETTLEMENT

5.1    Subject to the other terms and conditions of this Agreement, and in consideration of the releases and dismissals set forth in this Agreement, and subject to Court approval, Wal-Mart agrees that the Class Settlement Amount shall be a comprised of a maximum payment of Eighty-Six Million U. S. Dollars ($86,000,000) (the "**Ceiling**"), the payment

8

of which shall depend upon the participation by Settlement Class Members. In no event, however, shall less than Forty-Three Million U.S. Dollars ($43,000,000) (the "**Floor**") be paid by Wal-Mart. Approved Claims, Employer's Share of Taxes, Attorneys' Fees and Costs approved by the Court, Incentive Awards approved by the Court, Notice and Administration Costs shall all be paid from the Class Settlement Amount and shall all count against the Floor.

5.1.1.   Only those Settlement Class Members who submit an approved Claim Form shall be eligible to recover a share of the Net Settlement Amount. A portion of the Net Settlement Amount shall be allocated as set forth below to each of the Subclasses, as those Subclasses are defined in Subsection 4.2.

5.1.1.1.   *Salaried Net Settlement Amount*. Each member of the Salaried Associate Subclass shall be eligible to recover a fixed amount of Six Hundred Dollars ($600) from the Net Settlement Amount and which shall be apportioned for tax purposes in accordance with Subsection 5.1.8 of this Agreement. The aggregate Salaried Net Settlement Amount shall be the total number of Settlement Class Members in the Salaried Associate Subclass multiplied by Six Hundred Dollars ($600).

5.1.1.2.   *Distribution Center Net Settlement Amount*. Each member of the Distribution Center Subclass shall be eligible to recover a fixed amount of Three Hundred Dollars ($300) from the Net Settlement Amount which shall be apportioned for tax purposes according to Subsection 5.1.8 of this Agreement. The aggregate Distribution Center Net Settlement Amount shall be the total number of Settlement Class Members in the Distribution Center Associate Subclass multiplied by the fixed amount of Three Hundred Dollars ($300).

5.1.1.3.   *Hourly Net Settlement Amount*. Each member of the Hourly Associate Subclass shall be eligible to recover a share of the Net Settlement Amount, which shall be calculated as follows: the Hourly Net Settlement Amount shall be multiplied by a fraction, the numerator of which is the amount of wages and penalties (if any) that the Third-Party Expert determines from updated computer records provided by Wal-Mart as remaining unpaid to the Hourly Associate Subclass Member for work performed during the Settlement Class Period, and the denominator of which is the total amount of wages and penalties (if any) that a Third-Party Expert agreed to by the Parties determines remain unpaid to all members of the Hourly Associate Subclass during the Settlement Class Period. The resulting figure shall be the

9

amount to which each member of the Hourly Associate Subclass is eligible to claim, subject to apportionment for tax purposes according to Subsection 5.1.8 of this Agreement, provided however that no Claimant shall receive less than Fifty Dollars ($50) and no Claimant shall receive more than Six Hundred Dollars ($600) before taxes.

5.1.1.4.   Wal-Mart has consistently maintained that the electronic records and other evidence as alleged by Plaintiffs are insufficient to demonstrate whether a particular associate was properly paid or was paid late, and further, that such records cannot form the basis for class certification.   Plaintiffs have consistently maintained that said records are sufficient.  The Parties agree that Wal-Mart preserves and does not waive this position or its objection as a result of this Settlement and plan of distribution. Class Counsel has determined that, subject to Court approval, the formula and plan of distribution set forth in this Agreement is the most appropriate method to distribute the settlement funds to the Hourly Associate Subclass.  Solely for purposes of this Settlement, Wal-Mart defers to the decision and judgment of the Court and Class Counsel in this regard.  The Parties and Class Counsel further agree that the dollar values allocated to Claims payable under this Settlement are for purposes of settlement only, and are not admissible as evidence, as an admission by Wal-Mart, or for any purpose in this Litigation or any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum or other proceeding against Wal-Mart.

5.1.1.5.   The Parties agree that the data to be provided to the Third-Party Expert is confidential.  The Third Party Expert who receives the updated data from Wal-Mart shall maintain that data in confidence and shall not provide it to Class Counsel or their expert.

5.1.1.6.   All costs attendant to work done by the Third-Party Expert shall be borne by Wal-Mart in addition to the Class Settlement Amount.

5.1.2.   Class Counsel may request that, subject to Court approval, each Settlement Class Representative be paid an Incentive Award of Twenty-Five Thousand Dollars ($25,000).  The Incentive Awards shall count against the Floor.

5.1.3.   Class Counsel shall apply to the District Court for an award of Attorneys' Fees and Costs which shall be paid from the Class Settlement Amount and which shall

10

be counted against the Floor.  Wal-Mart will not oppose Class Counsel's application for a reasonable award of Attorneys' Fees and Costs.  In addition, on request of Class Counsel, Judge Layn R. Phillips and Judge Thomas R. Brett, both of whom mediated the settlement of the Litigation, may opine regarding Class Counsel's application for a reasonable award of Attorneys' Fees and Costs.

5.1.4.  Wal-Mart shall pay reasonable Notice and Administration Costs to be determined as follows:

5.1.4.1. Class Counsel shall obtain an estimate from the Claims Administrator as to the estimated Notice and Administration Costs.  Wal-Mart agrees to pay these reasonably anticipated Notice and Administration Costs based on the estimate.  If the actual Notice and Administration Costs exceed the estimate, Wal-Mart agrees to pay additional Notice and Administration Costs not to exceed Fifteen Percent (15%) of the estimate

5.1.4.2. The Notice and Administration Costs shall be counted against the Floor.  In the event the Settlement Effective Date does not occur, any portion of the Notice and Administration Costs already spent shall be nonrefundable, and any portion of the Notice and Administration Costs not yet spent shall be returned to Wal-Mart.

5.1.5.  If the aggregate amount of Approved Claims, plus the Employer's Share of Taxes, plus the amount of Attorneys' Fees and Costs awarded by the Court, plus the Incentive Awards awarded by the Court, plus the Notice and Administration Costs, plus the amount set aside for late claims as provided in Subsection 8.3, is less than the Floor, the remainder of the funds up to the Floor, subject to Court approval, shall be distributed to Approved Claimants on a pro rata basis.

5.1.6.  If the aggregate amount of Approved Claims, plus the Employer's Share of Taxes, plus the Attorneys' Fees and Costs awarded by the Court, plus the Incentive Awards awarded by the Court, plus the Notice and Administration Costs, plus the amount set aside for late claims as provided in Subsection 8.3, exceeds the Floor but is less than the Ceiling, the unused funds above the Floor and below the Ceiling shall remain with Wal-Mart.

5.1.7.  If the aggregate amount of Approved Claims, plus the Employer's Share of Taxes, plus the Attorneys' Fees and Costs awarded by the Court, plus the Incentive Awards approved by the Court, plus the Notice and Administration Costs, plus the amount set aside for late claims as provided in Subsection 8.3, exceed the Ceiling, there shall be a pro-rata reduction of all Approved Claims so that the aggregate

11

amount to be paid by Wal-Mart does not exceed the Ceiling. By way of example, if the aggregate dollar amount of Approved Claims, plus the Employer's Share of Taxes, plus the Attorneys' Fees and Costs awarded by the Court, plus the Incentive Awards awarded by the Court, plus the Notice and Administration Costs, plus the amount set aside for late claims as provided in Subsection 8.3, exceeds Eighty-Six Million U.S. Dollars ($86,000,000), then each Approved Claimant's share shall be decreased in a proportional amount so that the aggregate amount paid by Wal-Mart does not exceed Eighty-Six Million U.S. Dollars ($86,000,000).

5.1.8. Each recipient of any monies paid in accordance with this Agreement is responsible for any taxes associated with the monies received by each recipient. The Parties agree that Claims paid to Claimants shall be correctly and appropriately allocated such that Twenty-Five Percent (25%) constitutes wages subject to the withholding of all applicable local, state, and federal taxes and withholdings, and Seventy-Five Percent (75%) constitutes remuneration of other income, and any pro rata increase in accordance with Subsection 5.1.5 shall be treated entirely as other income, unless such treatment is contrary to an IRS letter ruling. The Parties agree that all Attorneys' Fees and Costs awarded by the Court shall be appropriately treated as non-wages. Unless required by applicable law the Claims Administrator will not be required to issue Forms 1099 unless the amount claimed for other income is over Six Hundred Dollars ($600). The Parties further agree that the Employer's Share of Taxes shall be paid from the Class Settlement Amount and shall count against the Floor. The Parties intend that no portion of the Approved Claims or Class Settlement Amount constitutes a non-deductible payment within the meaning of Section 162(f) of the Internal Revenue Code. This includes, but is not limited to, amounts paid in settlement of claims for "penalty wages" as the Parties agree that the purpose of claiming such non-wage amounts is non-punitive and meant only to encourage prompt compliance with a requirement of the law.

5.2    The Class Settlement Amount shall be funded through a QSF in accordance with Section 9 of this Agreement. The timing of the payments by Wal-Mart to the QSF shall be as follows:

5.2.1. Within Ten (10) business days following the date on which the District Court enters an order granting preliminary approval of the Settlement, or within Ten (10) business days of the date on which the District Court enters an order approving the QSF, which ever is later, Wal-Mart shall transfer to the QSF the estimated Notice and Administration Costs as determined in accordance with Subsection 5.1.4. Wal-Mart shall continue to periodically fund the QSF to cover additional Notice and Administration Costs, if required, in accordance with Subsection 5.1.4.

12

5.2.2. Within Ten (10) business days following the Settlement Effective Date, Wal-Mart shall transfer to the QSF amounts sufficient to cover the Attorneys' Fees and Costs awarded by the Court, which shall thereafter be paid pursuant to the court's order.

5.2.3. Within Ten (10) business days after: (i) the Settlement Effective Date; or (ii) the conclusion of all audits of any Claims; or (iii) the deadline to have initiated any audits if no audits have been initiated, whichever is later, Wal-Mart shall transfer to the QSF additional amounts sufficient to cover the Class Settlement Amount up to the Ceiling to the extent necessary to cover Approved Claims and the Incentive Awards awarded by the Court and any additional administrative costs, subject to the limitation set forth in paragraph 5.1.4. If the aggregate amount of Approved Claims, plus the Employer's Share of Taxes, plus the Incentive Awards awarded by the Court, plus the Attorneys' Fees and Costs awarded by the Court, plus Notice and Administration Costs, plus the amount set aside for late claims as provided in Subsection 8.3 is less than or equal to the Floor, then the amount transferred by Wal-Mart shall not exceed the aggregate amount of the Floor.

5.2.4. In the event that Wal-Mart has transferred monies in excess of the amounts needed to pay all Approved Claims, the Employers Share of Taxes, Attorneys' Fees and Costs approved by the Court, Incentive Awards approved by the Court, Notice and Administration Costs, plus the amount set aside for late claims as provided in Subsection 8.3 within Thirty (30) calendar days after all Approved Claims have been paid, the QSF shall, subject to reserving any amounts necessary to pay the QSF's final expenses including year end income taxes, return any unused funds above the Floor but below the Class Settlement Amount to Wal-Mart.

5.2.5. Other than for purposes of paying invoices submitted by the Claims Administrator, the QSF shall not distribute any payments required under this Agreement until after the Settlement Effective Date has occurred. If any liens for Attorneys' Fees and Costs have been filed prior to the transfer of funds for Attorneys' Fees and Costs out of the QSF, no monies shall be transferred out of the QSF for purposes of Attorneys' Fees and Costs until all such liens have been resolved and withdrawn.

5.2.6. If any monies distributed to Approved Claimants pursuant to this Agreement remain unclaimed with the QSF after One (1) year from the date the check was mailed to the Approved Claimant's address on file with the Claims Administrator, those monies shall be handled in accordance with applicable escheat laws.

## 6.   INJUNCTIVE RELIEF

6.1   Wal-Mart agrees to the specific injunctive relief set forth in Subsections 6.2 and 6.3 in the State of California, and further agrees that the Litigation acted as a catalyst for Wal-Mart's implementation of the remedial measures set forth in those Subsections.

6.2   For a period of three (3) years from the Settlement Effective Date, Wal-Mart will continue to use its improved computer technology whose purpose is to assure accurate final payments to terminating California employees.  Wal-Mart shall continue to use this technology, or other technology that Wal-Mart reasonably considers as superior for this purpose, during this time frame.

## 7.   NOTICE OF THE SETTLEMENT

7.1   On or about fourteen (14) days after the District Court grants preliminary approval of this Settlement, or on some other reasonable date to be agreed to by the Parties, Wal-Mart shall provide to the Claims Administrator a listing of all Class Members, including Social Security numbers, last known addresses and telephone numbers, (the "*Class List*").  The Class List shall be based on the data kept in the ordinary course of business in Wal-Mart's records.  The Class List shall be provided in Excel, Access or other similar format as reasonably requested by the Claims Administrator.  The Parties agree that the contents of the Class List are confidential and shall not be shared with third-parties other than the Claims Administrator, who shall also agree to maintain the confidentiality of the Class List.

7.2   A Notice substantially in the form attached as Exhibit 2 and subject to Court approval shall be sent by the Claims Administrator to all Class Members, by first class mail, within thirty (30) days following the Court's preliminary approval of the Settlement or within thirty days (30) following the Claims Administrator's receipt of the Class List, whichever is later.  The Claim Form (and accompanying W-4) along with instructions on how to file an Opt-Out Letter and how to object to the Settlement shall be included with the Notice.  The Notice shall include a "no postage necessary" return pre-addressed envelope which Settlement Class Members may use to mail their Claims Form to the Claims Administrator.  The Notice shall describe the claims process and the Opt-Out process, and shall advise Settlement Class Members of their right to object to the Settlement, the process by which such objections must be made and the date set by the Court for a hearing on final approval of the Settlement.

7.3   Prior to mailing the Notice and Claim Forms, the Claims Administrator shall process the Class List against the National Change of Address Database maintained by the United States Postal Service ("USPS").  It shall be conclusively presumed that if the Notice Documents are not returned as undeliverable, the Settlement Class Member received the Notice Documents.  With respect to Notice and Claim Forms that are returned as undeliverable, if forwarding addresses are provided by the USPS, the Claims

14

Administrator shall re-mail the Notice and Claim Forms immediately. If undeliverable Notice and Claim Forms are returned without a forwarding address, the Claims Administrator shall use standard skip tracing devices based on Lexis/Nexis or similar databases to obtain updated address information and shall re-mail the Notice and Claim Forms to those Settlement Class Members. The skip tracing shall include all returned envelopes received during the Sixty (60) day period after the initial mailing. All re-mailings to skip traced Settlement Class Members shall be performed periodically during the claims filing period and must be completed no later than Twenty-Five (25) days prior to the claims filing deadline. Notices and Claim Forms shall only be re-mailed once; if the Notice and Claim Forms are returned after re-mailing, there shall be no further skip tracing and it shall be presumed that the Settlement Class Member cannot be located.

7.4    The Claims Administrator shall setup a toll free number to respond to inquiries from Settlement Class Members, and to provide a mechanism by which Settlement Class Members can verify that the Claims Administrator has received a submitted claim.

7.5    The Notice, Claim Form and other materials as agreed to by the Parties and approved by the Court shall also be available at a website to be set up by the Claims Administrator. Settlement Class Members shall be able to access the settlement documents and download a copy of the Claim Form from the website, which the Settlement Class Member can then mail to the Claims Administrator. The website shall also provide a mechanism by which Settlement Class Members can verify that the Claims Administrator has received a submitted claim. The website address will be included in the mailed Notice and in the Summary Notice.

7.6    Notice shall also be made by way of publication of the Summary Notice once in one or more newspapers or magazines subject to Court approval. The Summary Notice shall provide Settlement Class Members with contact information for the Claims Administrator and Plaintiffs' Counsel and with the website addresses for both. The Summary Notice shall be substantially in the form attached as Exhibit 3 subject to Court approval. The Summary Notice shall be published on the nearest practicable date after Notice is mailed to Settlement Class Members.

7.7    One Reminder Postcard shall be mailed to any Settlement Class Members who have received notice by mail but have not submitted a Claim Form or excluded themselves as of the date that is Forty-Five (45) days after Notice was first mailed. The postcard reminder shall provide as follows:

> "This is a reminder that the lawsuit entitled *In re Wal-Mart Stores Wage and Hour Litigation*, Case No. 020269SBA (Smith Case No. C-06-000269SBA and Ballard Case No. C-06-05411SBA ((United States District Court for the Northern District of California)). has settled. If you wish to make a claim, you must send in your claim form on or before _____. You should have

15

previously received the Claim Forms in the mail with an earlier Notice. If you need another copy of the Notice or the Claim Forms, or have any questions, please call Epiq Systems, Inc., the Claims Administrator at _____ or go to www._____.com."

7.8   Class Counsel agree that they shall not solicit claims beyond the mailing of the Class Notice, and the postcard reminders, the publication of the summary notice, the posting of the Notice and Claim Forms on the Claims Administrator's and Class Counsel's website, and posting an agreed short description of the Settlement on Class Counsel's website.

7.9   The Parties agree that notice shall be provided to the U.S. Attorney General, the United States Department of Labor, and the Attorneys General and Departments of Labor of each of the Fifty (50) United States and Puerto Rico in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715. The form of CAFA notice agreed to by the Parties is attached hereto as Exhibit 5. Such CAFA notice shall be made by the Claims Administrator within Ten (10) days after the filing of the Motion for Preliminary Approval by Class Counsel. The final fairness hearing will not be set until at least Ninety (90) days after the CAFA notice has been mailed to the federal and state officials.

## 8.   CLAIMS, OPT-OUT, OBJECTION, AND DISTRIBUTION PROCESS

8.1   The Notice Documents shall set a date of Ninety (90) days from the date on which they are mailed as the deadline by which Settlement Class Members must submit their completed Claim Form (the "*Form Submission Deadline*"). Subject to the provisions for late claims as described in Subsections 82 and 8.3, no Claim Forms will be honored if postmarked after the Form Submission Deadline. All original Claim Forms shall be sent to the Claims Administrator. If a claimant mistakenly sends a Claim Form to Class Counsel, Class Counsel will forward the documents to the Claims Administrator.

8.2   The Claims Administrator shall accept late claims for Thirty (30) days past the last day to file a Claim and they shall be paid as if timely made. Claims made within Sixty (60) days thereafter, shall be paid at a rate of Seventy-Five (75%) of the timely Claim amount. All provisions of this Agreement related to pro rata increases and pro rata decreases of the Claim amounts, and the tax provisions of Subsection 5.1.8, apply to Claims paid pursuant to this Subsection.

8.3   The sum of Fifty Thousand Dollars ($50,000) shall be set aside from the Net Settlement Amount as a post-distribution late claim fund to be used to pay late claims made more than Sixty (60) days after the last day to file a Claim and up to Forty-Five (45) days after payments to Settlement Class Members have been distributed. Late Claims submitted during the time period covered by this Subsection shall be paid at Fifty Percent (50%) of the timely Claim amount. Claims paid under this Subsection shall not be eligible for a pro-rata increase, but shall be subject to the tax provisions of Subsection 5.1.8. If the

16

funds set aside under this Subsection are insufficient to pay all of the Claims presented under this Subsection, such Claims shall be paid on a pro-rata basis. Funds set aside under this Subsection shall count against the Floor. If the Floor has not been exceeded, funds set aside under this Subsection that have not been used to pay late Claims shall be distributed to a charity to be agreed to by the Parties subject to Court approval. If the Floor is exceeded but the Ceiling is not exceeded, funds not paid from this Fifty Thousand Dollars ($50,000) shall be returned to Wal-Mart. If the Ceiling is exceeded as a result of timely Claims submitted in accordance with Section 7 and late Claims submitted in accordance with Subsection 8.2, then the fund contemplated by this Subsection 8.3 shall not be available and shall be applied to pay timely submitted Claims and claims submitted pursuant to Subsection 8.2.

8.4   In order to be eligible to receive a portion of the Class Settlement Amount, a Settlement Class Member must return a Claim Form in accordance with Section 8. The Claim Form shall be subject to audit by Wal-Mart and shall be executed under penalty of perjury, but not notarized. The Claim Form shall include the Claimant's social security number to minimize fraud risks. The Claim Form shall include a tax election, however, failure to complete the tax election shall not be grounds for rejection of a Claim Form. The form of Claim Form as agreed to by the Parties subject to Court approval is attached hereto as Exhibit 1.

8.5   Each Settlement Class Member may only submit one Claim Form, and there is no requirement to file separate claim forms for different periods of employment or different employment positions. No Settlement Class Member may submit an Opt-Out Letter and a Claim Form, and if a Settlement Class Member submits both an Opt-Out Letter and a Claim Form, the Claim Form will govern. Submission of more than one Claim Form shall render the second Claim Form invalid. The Claims Administrator shall provide a Claimant with a reasonable opportunity to correct an incomplete Claim Form (other than with respect to the tax election). A Claimant who, despite such opportunity, fails to correct an incomplete Claim Form (other than with respect to the tax election) will render the Claim Form submitted by that Class Member invalid.

8.6   For a Claimant to be eligible to recover by way of a Claim Form, the Claim Form must be timely and valid. To be timely it must be postmarked by the Form Submission Deadline or by the deadlines for late Claims as provided by Subsections 8.2 and 8.3. To be valid it must be completed in full (except for the Tax election) and signed under penalty of perjury.

8.7   The amount that each Settlement Class Member is eligible to receive under this Settlement shall be determined in accordance with the formulas set forth in Subsection 5.1 for timely submitted Claims, and in accordance with Subsections 8.2 and 8.3 for late submitted Claims.

17

8.8    On or before sixty (60) days after Notice is mailed to the Class, the Third-Party Expert shall provide the Claims Administrator with information sufficient to allow the Claims Administrator to determine which Settlement Class Members belong in which Subclass or Subclasses, and how much money each Approved Claimant is eligible to recover under this Settlement. The Claims Administrator shall keep this information in confidence, and shall not share the information with third-parties and shall not share information related to Subsection 5.1.1 with Class Counsel or their experts.

8.9    Within a reasonable time after the deadline to submit timely Claims has expired, the Claims Administrator shall provide a spreadsheet to Class Counsel and to Wal-Mart that contains information sufficient to: (i)  identify which Claimants submitted a Claim; (ii) which submitted Claim Forms are valid and timely and which are not; (iii) which Claims the Claims Administrator proposes to treat as Approved Claims; (iv) the amount proposed to be paid to each Approved Claimant and the taxes to be withheld; and (v) which Claim Forms the Claims Administrator has denied and the reasons for the denial. The Claims Administrator shall provide supplemental spreadsheets with respect to any late Claims submitted pursuant to Subsections 8.2 and 8.3, within a reasonable time after the deadline to submit late Claims pursuant to each of those Subsections. The Claims Administrator shall retain the originals of all Claim Forms (including the envelopes with the postmarks) received from Claimants, and shall make copies or the originals available to Wal-Mart or Class Counsel upon request.

8.10    Wal-Mart shall have the right to audit the information provided in the Claim Form as submitted by each Claimant, and to challenge the Claims Administrator's determinations regarding approval or denial of each Claim Form and the amount the Claims Administrator proposes to pay to each Claimant, in accordance with the procedure set forth in Subsection 8.11. The Claims Administrator shall not distribute any monies to any Claimant until after the audit process has concluded.

8.11    Audit and Challenge Procedure.

8.11.1. Within Fourteen (14) days of having received the Claim Forms and Spreadsheets from the Claims Administrator, Class Counsel and Wal-Mart's counsel shall meet and confer regarding any issues that either Class Counsel or Wal-Mart believes need to be raised with the Claims Administrator. Class Counsel and Wal-Mart's counsel agree to use their best efforts to resolve any disputes. If Class Counsel and Wal-Mart cannot resolve these issues within Twenty-Eight (28) days of having received each of the spreadsheets contemplated by Subsection 8.8 from the Claims Administrator, then Class Counsel or Wal-Mart may provide written notice of their intent to audit the Claims Administrator's determinations with respect to a particular Claim or Claims.

8.11.2. Audits may be presented to the Claims Administrator or to Judge Layn R. Phillips, at the auditing party's election. If the audit is first filed with the Claims

18

Administrator, the decision of the Claims Administrator may be appealed to Judge Layn R. Phillips within Fourteen (14) days of receipt of the Claims Administrator's decision. All decisions by Judge Layn R. Phillips regarding audits are binding, final decisions which shall not be subject to appeal. If a decision by the Claims Administrator is not presented to Judge Layn R. Phillips within Fourteen (14) days of receipt, the decision of the Claims Administrator becomes a binding, final decision not subject to further appeal.

8.11.3. Either Class Counsel or Wal-Mart may invoke their rights under this Subsection by providing written notice to each other and to the Claims Administrator, and if the audit is directly to Judge Layn R. Phillips or is an appeal of a decision by the Claims Administrator, also to Judge Layn R. Phillips. The notice shall identify the Claim or Claims that are the subject of the audit, and may be accompanied by supporting papers of no more than two (2) pages (excluding exhibits) for each Claim being audited.

8.11.4. Within Fourteen (14) days of receipt of the notice and supporting papers, the non-auditing party may submit a written response of no more than two (2) pages (excluding exhibits) for each Claim being audited.

8.11.5. Wal-Mart shall have the right to request that it be permitted to question or examine any Claimant whose Claim is submitted to Judge Layn R. Phillips for decision. If such an examination of a Claimant is permitted, Class Counsel shall have the right to participate, including the right to question or examine the Claimant. Any such examination shall be conducted by telephone.

8.11.6. The Claims Administrator and Judge Layn R. Phillips shall each decide any audits presented to them within Thirty (30) days of final submission.

8.11.7. The Party that initiates the audit shall pay 100% of the Claims Administrator's and/or Judge Layn R. Phillips' fees and expenses relating to the audit.

8.11.8. The time periods and page limits set forth in this Subsection may be extended by agreement of the Parties, or by Judge Layn R. Phillips, for good cause shown.

8.11.9. Notice of audits, any paperwork submitted in support of, or in response to, any audit, and the decisions by the Claims Administrator or Judge Layn R. Phillips shall be served by email and United States Mail.

8.12   Opt-Out Letters.

8.12.1. A Settlement Class Member who wishes to exclude himself or herself from this Settlement, and from the release of claims pursuant to this Settlement, shall submit an Opt-Out Letter. For an Opt-Out Letter to be accepted it must be timely and valid. To be timely it must be received by the date indicated in the Notice,

19

which shall be Forty-Five (45) days after the Notice is first mailed to Settlement Class Members. To be valid, the Opt-Out Letter shall contain a statement that the Settlement Class Member requests to be excluded from the Settlement Class and must be signed, dated and notarized. Additional instructions for Opt-Out Letters are found in Paragraph X of the Notice, Exhibit 2.

8.12.2. A Settlement Class Member who submits an Opt-Out Letter is not eligible to recover a share of the Settlement Class Member Payment Amount. If a Settlement Class Member submits both an Opt-Out Letter and a Claim Form, the Claim Form shall govern.

8.12.3. The Claims Administrator shall maintain a list of persons who have excluded themselves and shall provide such list to the Parties upon request. The Claims Administrator shall retain the originals of all Opt-Out Letters (including the envelopes with the postmarks) received from Claimants, and shall make copies or the originals available to Wal-Mart or Class Counsel upon request.

8.13   A Settlement Class Member who wishes to object to the Settlement must notify the District Court of their objection, in writing, on or before the date which is Forty-Five (45) days after the Notice is first mailed to Settlement Class Members. Instructions regarding how to make objections are found in Paragraph XI of the Notice, Exhibit 2.

## 9.   QUALIFIED SETTLEMENT FUND

9.1   At the times required by Subsection 5.2 of this Agreement, Wal-Mart shall transfer the required portions of the Class Settlement Amount to a trustee selected jointly by Class Counsel and Wal-Mart (the "*Trustee*") to be held as a separate trust constituting a QSF as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1. Class Counsel and Wal-Mart, jointly, shall cause the Trustee to, take such steps as shall be necessary to qualify the QSF under §468B of the Internal Revenue Code, 26 U.S.C. §468B, and the regulations promulgated pursuant thereto. Wal-Mart shall be considered the "transferor" within the meaning of Treasury Regulation §1.468B-1(d)(1). The Claims Administrator shall be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3). The Parties shall cooperate in securing an order of the Court to establish the QSF in accordance with the terms hereof in conjunction with its preliminary approval of the Settlement and Notice as described in Subsection 10.1. The Court shall retain jurisdiction over the administration of the QSF. Wal-Mart shall supply to the Claims Administrator and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Wal-Mart makes a transfer to the QSF. It is intended that the transfers to the QSF will satisfy the "all events test" and the "economic performance" requirement of §461(h)(1) of the Internal Revenue Code, and Treasury Regulation §1.461-1(a)(2). Accordingly, Wal-Mart shall not include the income of the QSF in its income. Rather, the QSF shall be taxed on its modified gross income, excluding the sums

20

transferred to it, and shall make payment of resulting taxes from its own funds. In computing the QSF's modified gross income, deductions shall be allowed for its administrative costs and other deductible expenses incurred in connection with the operation of the QSF, including, without limitation, state and local taxes and legal, accounting, and other fees relating to the operation of the QSF.

9.2   Upon establishment of the QSF, the Trustee shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

9.3   If requested by either Wal-Mart or the Claims Administrator, the Claims Administrator, the Trustee and Wal-Mart shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

9.4   Following its deposits as described in Subsection 9.1 of this Agreement, Wal-Mart shall have no responsibility, financial obligation or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of Claim Forms and Opt-Out Letters, the allowance or disallowance of Claims by Claimants, payments to Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and other taxes imposed on the QSF or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge Wal-Mart's obligation to Claimants, Class Counsel and expenses of administration in respect to the disposition of the Class Settlement Amount hereunder. Rather, the Claims Administrator shall have sole authority and responsibility for the administration of such funds and income thereon, disbursement to Approved Claimants and Class Counsel, and payment of taxes and administrative costs in accordance with the provisions hereof, subject only to the rights of Wal-Mart or Class Counsel to audit determinations of the Claims Administrator in accordance with Subsection 8.11 of this Agreement or to seek redress for any breach of the terms hereof.

9.5   The Claims Administrator shall cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(l)(2)(ii). The Claims Administrator may, at the expense of the QSF, retain legal counsel and an independent, certified public accountant to consult with and advise the Claims Administrator or the Trustee with respect to the preparation and filing of such materials and the federal, state and local tax compliance of the QSF. Either Wal-Mart or the Claims Administrator, independently or jointly, may, but are not required to, apply to the Internal Revenue Service and/or any applicable state taxing authority for an advance ruling as to any issue pertinent to the qualification of the QSF under Internal Revenue Code §468B and Treasury Regulations promulgated thereunder, its tax status under applicable state law, and/or its tax payment, reporting and withholding

21

duties, so long as Wal-Mart and the remaining Parties are reasonably satisfied that such application and ruling will not compromise the confidentiality of settlement evidenced herein as required by Subsection 19 of this Agreement. Subject to any contrary holdings in any such ruling:

9.5.1. A portion of the distributions from the QSF to the Approved Claimants shall be treated as *"wages"* or *"compensation"* paid by the QSF during the calendar year of payment. Approved Claimants may file with the QSF a Tax Declaration. Any Approved Claimant who does not file a Tax Declaration with the QSF shall have taxes withheld at the rate for a single person claiming no withholding exemptions. Approved Claimants shall be responsible for payment of appropriate federal, state, and local income taxes on any claim paid out pursuant to this Agreement, except that Wal-Mart shall, as part of the Class Settlement Amount, transfer to the QSF funds sufficient to pay any appropriate employer-associated taxes. The Parties agree that no portion of any distributions from the QSF to the Approved Claimants is made in satisfaction of any excluded liability as described in Treasury Regulation § 1.468B-1(g), related to Qualified Settlement Funds.

9.5.2. All federal, state, and local withholding, employment, unemployment, excise, or similar taxes that may be imposed with respect to distributions from the QSF (including, but not limited to, FICA, FUTA, Medicare taxes, and all state and local taxes and, in each instance, both the Claimants' and QSF's share of all taxes), shall be paid from the QSF and shall all be included within the Class Settlement Amount.

9.5.3. Federal, state and local income tax and other payroll tax withholding rates on all distributions from the QSF will be as determined by applicable law. The Claims Administrator's good faith determination as to withholding rates shall be final, provided that should an advance ruling be sought by either or both of Wal-Mart or the Claims Administrator in regard to the obligation for, or rate of, any taxes pursuant to Subsection 9.5, the Parties and the Claims Administrator shall be bound by the ruling of the appropriate taxing authority.

9.6    It is agreed that any amounts paid under this Agreement do not represent a modification of the paid Approved Claimant's previously credited hours of service or compensation to be taken into account under any employee benefit plan sponsored by, or contributed to, Wal-Mart or any jointly-trusteed benefit plans. Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under, Wal-Mart sponsored or jointly-trusteed benefit plans.

9.6.1. Wal-Mart retains the right to modify the language of its Benefit Plans, to seek to have modified the language of any jointly trusteed Benefit Plans, and to make clear that any amounts paid pursuant to this Agreement are not for "hours of

22

service" (or any similar term) and are not "compensation" (or any similar term) as defined by the applicable benefit plans and that additional contributions or benefits are not required by this Agreement.

9.6.2. This Agreement and any distributions made pursuant to it will have no effect on Benefit Plan eligibility, vesting, contributions, or benefits of or on behalf of current or former employees covered by this Agreement.

9.6.3. For purposes of this Agreement, "*benefit plan*" means each and every "employee benefit plan" as defined in 29 U.S.C. § 1002(3), and each and every other plan, fund, program, or arrangement that relates to bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit-sharing, retirement, disability, vacation, severance, hospitalization, insurance, Compensation, deferred compensation, or any other similar benefit for one or more current or former employees or their beneficiaries.

9.7   The taxable year of the QSF shall be the calendar year in accordance with Treasury Regulation §1.468B-2(j). The QSF shall utilize the accrual method of accounting within the meaning of § 446(c) of the Internal Revenue Code.

9.8   The QSF shall be invested in United States Treasury bills or money market funds primarily invested in the same, provided that such portions of the QSF as may reasonably be required to pay current QSF administrative expenses, taxes or disbursements to Claimants or Class Counsel may be deposited in bank accounts which are federally insured to the greatest extent practicable. All federal, state, and local taxes imposed with respect to income earned by, or property of, the QSF, shall be paid from the QSF.

9.9   The Claims Administrator may amend, either in whole or in part, any administrative provision of this Section or the trust instrument through which the QSF is established to maintain the qualification of the QSF pursuant to the above-described authorities provided that the rights and liabilities of the Parties hereto and the Class are not altered thereby in any material respect.

10.   COMPREHENSIVE WAIVER, RELEASE, AND DISMISSAL

10.1   Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, all Named Plaintiffs, Settlement Class Representatives and Settlement Class Members, other than those who submit Opt-Out Letters ("*Releasing Settlement Class Members*"), do hereby irrevocably release, acquit, and forever discharge Wal-Mart of and from any and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind, that were asserted in the Litigation or that

23

could have been asserted but were not asserted in the Litigation (including claims that were certified and claims that were not certified in the Litigation), whether known or unknown, to the extent that such claims arise out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Named Plaintiffs' Complaint or in any Amended Complaint filed in the Litigation, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local.   The Releasing Settlement Class Members specifically acknowledge that this Release reflects a compromise of disputed claims, including disputes as to the amounts of wages, if any, owed to the Releasing Settlement Class Members. The Releasing Settlement Class Members further covenant to obtain any necessary Court approval with respect to the Released Claims as they apply to any minor Releasing Settlement Class Members.

10.2   The Released Claims include the common law, equitable claims, state statutory, and federal statutory claims listed in Subsections 10.2.1. through 10.2.5 below related to alleged claims arising out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in Plaintiffs' Complaint or in any Amended Complaint filed in the Litigation for penalties and damages for: (1) wages allegedly not fully paid on termination of employment; (2) failure to pay accrued and/or available vacation, or personal time at termination; (3) failure to pay straight time or overtime wages to terminated employees; (4) failure to accurately record and report wages of terminated employees; (5) tortious conversion of wages; (6) unfair business practices in connection with the foregoing; and (7) any claim for contribution to any Wal-Mart profit-sharing or other employee benefit plan as a result of any of the claims covered by this Release.

10.2.1. State Statutory Claims:  Any and all claims arising under the California Labor Code, including, without limitation, §§ 201-203, 218, 218.5, 218.6, 226, 226.3, 227.3, 1194, 2699; California Civil Code §§ 3294, 3336, 3337; and the California Business & Professions Code, §§17200 et seq., to the extent that such claims arise out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Named Plaintiffs' Complaint or in any Amended Complaint filed in the Litigation.

10.2.2. Federal Statutory Claims:  Any and all claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., including, without limitation, §§ 206, and 29 C.F.R. § 516.2(7) and 516.5(a); and any and all claims arising under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., including, without limitation, §§ 1132 and 1140, to the extent that such claims arise out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Named Plaintiffs' Complaint or in any Amended Complaint filed in the Litigation.

10.2.3. Common Law and/or Equitable Claims:   Any and all common law or equitable claims, under any theory whatsoever, to the extent that such claims arise

24

out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in Plaintiffs' Complaint or in any Amended Complaint filed in the Litigation.

10.2.4. This Release also includes a release of all claims for attorneys' fees and costs incurred by Releasing Settlement Class Members or by Class Counsel in connection with the Litigation and the Settlement of the Litigation.

10.2.5. The Releasing Settlement Class Members understand and agree that this Release is a full and final general release applying to both those Released Claims that are currently known, anticipated, or disclosed to the Releasing Settlement Class Members and to all those Released Claims that are presently unknown, unanticipated, or undisclosed to any and all Releasing Settlement Class Members arising out of the alleged facts, circumstances, or occurrences underlying: (i) the claims alleged in the Litigation or which could have been alleged in the Litigation; and (ii) Wal-Mart's conduct with respect to the Litigation. Provided, however, that nothing in this release shall release any claims arising in the *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal. C01-2252) gender discrimination class action. In exchange for the good and valuable consideration set forth herein, the Settlement Class Representatives, for themselves and the Releasing Settlement Class Members, waive any and all rights or benefits that they as individuals or the classes may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation, or which could have been set forth in the Litigation, under the terms of Section 1542(a) of the California Civil Code (or similar statute or common law rule in effect in any other jurisdiction), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR.

11.    DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

11.1   Within Ten (10) days of the Execution of this Agreement, Class Counsel shall apply to the District Court for the entry of an order granting preliminary approval of the Settlement substantially in the following form:

11.1.1. Scheduling a final fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Class. The date of such fairness hearing shall be at least Ninety (90) days after

25

the CAFA notice contemplated by Subsection 7.9 has been mailed to federal and state officials;

11.1.2. Approving as to form and content the proposed Notice and Summary Notice;

11.1.3. Approving as to form and content the proposed Claim Form;

11.1.4. Directing the mailing of the Notice Documents by first class mail to the Settlement Class Members and the publication of the Summary Notice;

11.1.5. Preliminarily approving the Settlement;

11.1.6. Preliminarily amending the District Court's prior certification order for purposes of Settlement in accordance with Section 4; and

11.1.7. Approving Marlin & Saltzman, LLP, The Law Offices of Peter M. Hart, and Bailey Pinney, PC as Class Counsel, approving Danton Ballard, Nathan Lyons, Barry Smith and Michael Wiggins as Settlement Class Representatives, and approving Epiq Systems, Inc. as Claims Administrator.

11.1.8. Wal-Mart shall cooperate with Class Counsel as necessary to obtain preliminary approval.

11.1.9. The Parties shall continue to take any steps necessary to stay the pending trial and appellate proceedings so as to preserve the status quo in the event that the Settlement Effective Date does not occur.

12.   **DUTIES OF THE PARTIES FOLLOWING PRELIMINARY COURT APPROVAL**

12.1  Following preliminary approval by the Court of the Settlement, Class Counsel will submit a proposed Final Judgment and Order of Dismissal substantially in the form attached hereto as Exhibit 6. The proposed Final Judgment and Order of Dismissal shall:

12.1.1. Approve the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate and directing consummation of its terms and provisions;

12.1.2. Approve Class Counsel's application for an award of attorneys' fees and reimbursement of costs;

12.1.3. Approve the Incentive Awards;

12.1.4. Certify the Settlement Class for settlement purposes in accordance with Section 4 and Exhibit 4 to this Agreement;

26

12.1.5. Dismiss this Litigation on the merits and with prejudice and permanently bar the Settlement Class Representatives, and all Releasing Settlement Class Members from further prosecuting any of the Released Claims against Wal-Mart.

12.2   Wal-Mart shall cooperate with Class Counsel as necessary to obtain final approval and the dismissal of the Litigation.

## 13.   MUTUAL FULL COOPERATION

13.1   The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of all necessary documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement. As soon as practicable after execution of this Settlement, Class Counsel shall, with the assistance and cooperation of Wal-Mart and its counsel, take all necessary steps to secure the Court's Final Judgment.

13.2   Wal-Mart agrees that it will not discuss the terms of the Settlement with Settlement Class Members prior to the Form Submission Deadline.

## 14.   STATEMENT OF NO ADMISSION

14.1   Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Wal-Mart, and Wal-Mart denies liability therefore. Nor shall this Agreement constitute an admission by Wal-Mart as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against it in the Litigation. Likewise, nothing in this agreement shall be construed or deemed an admission with regards to the validity of any of Wal-Mart's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

14.2   This Agreement, and all related documents, and all other actions taken in implementation of the Settlement, including any statements, discussions, or communications, and any materials prepared, exchanged, issued, or used during the course of the negotiations leading to this Agreement are settlement documents and shall be inadmissible in evidence and shall not be used for any purpose in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, including any wage and hour or other litigation against Wal-Mart, for any purpose, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

14.3   The Claim Forms, Opt-Out Letters, the calculations by the Third-Party Expert, and any other evidence produced or created by any Settlement Class Member in connection with

27

the claims resolutions procedures pursuant to this Settlement, and any actions taken by Wal-Mart in response to such Claim Forms, Opt-Out Letters, the calculations by the Third-Party Expert, or other evidence, do not constitute, are not intended to constitute, and will not be deemed to constitute an admission by Wal-Mart of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

14.4   The Parties and Class Counsel agree that certification of the Settlement Class in accordance with the terms of this Agreement is for settlement purposes only. Nothing in this Agreement will be construed as an admission or acknowledgement of any kind that any class should be certified in this Litigation or in any other action or proceeding. Further, neither this Agreement, nor the Court's actions with regard to this Agreement, will be deemed admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding regarding the propriety of class certification or collective treatment. In the event that this Agreement is not approved by the District Court, any appellate court, or otherwise fails to become effective and enforceable, or is terminated, Wal-Mart will not be deemed to have waived, limited, or affected in any way any of its objections or defenses in the Litigation. Such objections and defenses include, but are not limited to, Wal-Mart's objections and defenses to any class certification and FLSA collective action treatment.

## 15.   VOIDING THE AGREEMENT

15.1   Subject to Subsection 15.2, in the event that this Settlement is not approved, or if for any reason the Settlement Effective Date does not occur, the Settlement shall be deemed null, void and unenforceable and shall not be used nor shall it be admissible in any subsequent proceedings either in this Court or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour, or other litigation against Wal-Mart.

15.2   In the event that the Court does not approve the Attorneys' Fees and Costs in the amount requested by Class Counsel, or in the event that the Attorneys' Fees and Costs requested by Class Counsel is reduced, that finding shall not be a basis for rendering the entire Settlement Agreement null, void, or unenforceable. Class Counsel retains their right to appeal any decision by the Court regarding the Attorneys' Fees and Costs.

## 16.   PARTIES' AUTHORITY

16.1   The respective signatories to this Agreement each represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

28

17.   NO PRIOR ASSIGNMENTS

17.1   The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

18.   NOTICES

18.1   Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of:  (i) the date given, if given by hand delivery; (ii) within One (1) business day, if sent by overnight delivery services such as Federal Express or similar courier; or (iii) the Third (3) business day after mailing by United States registered or certified mail, return receipt requested.  All notices given under this Agreement shall be addressed as follows:

18.1.1. To the Class:

Louis M. Marlin
Stanley D. Saltzman
3200 El Camino Real, Suite 100
Irvine, CA  92602
Tele:  (714) 669-4900
Fax:  (714) 669-4750
Email:  louis.marlin@marlinsaltzman.com
           ssaltzman@marlinsaltzman.com

18.1.2. To Wal-Mart:

Brian L. Duffy
Naomi G. Beer
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202-5835
Tele:  (303) 572-6500
Fax:  (303) 572-6540
Email:  DuffyB@gtlaw.com
           BeerN@gtlaw.com

29

19.    CONFIDENTIALITY

19.1    The negotiations, terms and existence of this Settlement will remain strictly confidential and shall not be discussed with anyone other than the Parties of record, their accountants and financial or tax advisors, counsel of record, their retained consultants, National Coordinating Counsel for Wal-Mart, Judge Layn Phillips or Judge Thomas Brett. Prior to the filing of the Motion for Preliminary Approval by Class Counsel, all submissions to the Court regarding this Settlement or the terms of this Agreement shall be made under seal, unless either side obtains prior written approval from the other side to file documents not under seal, or as the Court may otherwise order. The Motion for Preliminary Approval shall not be filed under seal. Notwithstanding the provisions of this Subsection, Wal-Mart may disclose the Settlement in filings that it is required to make with the Securities and Exchange Commission, including 10-Q and 10-K filings, or in other disclosures to investors.

19.2    Any confidentiality associated with the terms of this Settlement shall expire upon the filing by Class Counsel of the Motion for Preliminary Approval with the District Court, except that the negotiations and discussions preceding submission of the Settlement to the Court for preliminary approval, and any further negotiations and discussions between the time of preliminary approval and final approval shall remain strictly confidential, unless otherwise agreed to by the Parties or unless otherwise ordered by the Court.

20.    JOINT PRESS RELEASE

20.1    The Parties shall agree on the terms and language of One (1) joint press release to the public at the time of preliminary approval of the Settlement. No Party or their counsel shall make any other statements to the media concerning the Settlement and all Parties and their counsel shall decline to respond to media inquiries concerning the Settlement other than to refer the media to the joint press release until such time as an order granting final approval has been entered by the District Court.

21.    DOCUMENTS AND DISCOVERY

21.1    Within Sixty (60) days after the Settlement Effective Date, each of Class Counsel shall take steps necessary to destroy or erase all documents and data produced by Wal-Mart to Class Counsel in connection with this Litigation and which are currently in Class Counsel's possession, custody or control, including documents and data in the possession, custody or control of their retained experts and consultants. Class Counsel shall certify to Wal-Mart their good faith efforts to comply with this provision.

22.    MISCELLANEOUS PROVISIONS

22.1    <u>Construction</u>. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this

30

Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or her or his counsel participated in the drafting of this Settlement.

22.2   <u>Captions and Interpretations</u>.  Paragraph titles or captions contained in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.  Each term of this Settlement is contractual and not merely a recital.

22.3   <u>Modification</u>.  This Settlement may not be changed, altered, or modified, except in a writing signed by the Parties, and approved by the District Court.  Notwithstanding the forgoing, the Parties agree that any dates contained in this Agreement may be modified by agreement of the Parties without Court approval if the Parties agree and cause exists for such modification.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

22.4   <u>Integration Clause</u>.  This Agreement, the Exhibits hereto, and any other documents delivered pursuant hereto contain the entire agreement between the Parties relating to the resolution of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement.  No rights under this Settlement may be waived except in writing and signed by the Party against whom such waiver is to be enforced.

22.5   <u>Binding on Assigns</u>.  This Settlement shall be binding upon, and inure to the benefit of, the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

22.6   <u>Class Counsel and Settlement Class Representative Signatories</u>.  It is agreed that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement.  The Notice will provide all Settlement Class Members with a summary of the Settlement, and will advise all Settlement Class Members of the binding nature of the release.  Excepting only those Settlement Class Members who timely submit an Opt-Out Letter, the Notice shall have the same force and effect as if this Settlement were executed by each Settlement Class Member.

22.7   <u>Counterparts</u>.  This Agreement may be executed by facsimile signature and in any number of counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one and the same Agreement, which shall be binding upon and effective as to all Parties.

22.8   <u>Arbitration</u>.  The Parties agree to binding, non-appealable arbitration before the Honorable Layn R. Phillips to resolve any disagreements over the implementation of the

31

terms of the Settlement Agreement or any other documents necessary to effectuate the Settlement.  Unless otherwise ordered by Judge Phillips, the Parties will split the costs of the arbitration and all Parties will bear their own attorneys' fees.

22.9   <u>Applicable Law</u>.  This Agreement shall be governed by California law without regard to its choice of law or conflicts of law principles or provisions.

REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK.

32

Dated: _____ 5/7 _____, 2010

On Behalf of The Class:

MARLIN & SALTZMAN

By:_____
        Louis M. Marlin

LAW OFFICES OF PETER M. HART

By:_____
        Peter M. Hart


Individually and on behalf of the Class:

Dated: _____ ___, 20010

_____
        Danton Ballard

Dated: _____ ___, 2010

_____
        Nathan Lyons

Dated: _____ ___, 2010

_____
        Barry Smith

Dated: _____ ___, 2010

_____
        Michael Wiggins

33

On Behalf of Wal-Mart:

Dated: _May 10_, 2010

WAL-MART

By: _____
     B. Michael Bennett,
     Senior Vice President

Dated: _May 10_, 2010

GREENBERG TRAURIG, LLP

By: _____
     Brian L. Duffy

34

DEN 97,181,998v2

On Behalf of The Class:

Dated: _____ ___, 2010

MARLIN & SALTZMAN

By:_____
     Louis M. Marlin

LAW OFFICES OF PETER M. HART

By:_____
     Peter M. Hart


Individually and on behalf of the Class:

Dated: _5 - 5 - ___, 20010
                                    _____
                                    Danton Ballard

Dated: _5-5_____, 2010
                                    _____
                                    Nathan Lyons

Dated: _____ ___, 2010
                                    _____
                                    Barry Smith

Dated: _____ ___, 2010
                                    _____
                                    Michael Wiggins

33

Dated: _____ ___, 2010

On Behalf of The Class:

MARLIN & SALTZMAN

By:_____
         Louis M. Marlin

LAW OFFICES OF PETER M. HART

By:_____
         Peter M. Hart


Individually and on behalf of the Class:

Dated: _____ ___, 20010    _____
                                                              Danton Ballard

Dated: _____ ___, 2010     _____
                                                              Nathan Lyons

Dated: _5/6/2010_ ___, 2010     _____
                                                              Barry Smith

Dated: _____ ___, 2010     _____
                                                              Michael Wiggins

33

On Behalf of The Class:

MARLIN & SALTZMAN

Dated: _____ ___, 2010

By:_____
     Louis M. Marlin

LAW OFFICES OF PETER M. HART

By:_____
     Peter M. Hart

Individually and on behalf of the Class:

Dated: _____ ___, 20010

_____
     Danton Ballard

Dated: _____ ___, 2010

_____
     Nathan Lyons

Dated: _____ ___, 2010

_____
     Barry Smith

Dated: _____ ___, 2010

_____
     Michael Wiggins

33