UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In Re WAL-MART STORES, INC. WAGE AND HOUR LITIGATION | No. 06-02069 SBA<br><br>**ORDER REGARDING PLAINTIFFS' MOTION FOR AWARD OF INCENTIVE PAYMENTS TO PLAINTIFFS AND FOR AWARD OF ATTORNEYS' FEES** |
| This Document Relates To:<br><br>Case Nos.<br>C 06 02069 SBA (Smith) and<br>C 06 05411 SBA (Ballard) | |

The parties are presently before the Court on Plaintiffs' Motion for Award of Incentive Payments to Plaintiffs and for Award of Attorneys' Fees. Dkt. 405.[1] Defendant Wal-Mart Stores, Inc. ("Defendant" or "Wal-Mart") does not oppose Plaintiffs' motion. Having read and considered the papers filed in connection with this matter, and having considered counsel's arguments at the November 9, 2010 hearing and the December 8, 2010 telephonic hearing, and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.

I.  **BACKGROUND**

This class action involves two cases consolidated by agreement of the parties. The first, Smith et al. v. Wal-Mart Stores, Inc., was filed in the District Court for the Northern District of California on March 20, 2006. The second case, Ballard et al. v. Wal-Mart Stores, Inc., was filed in the Central District of California on May 17, 2006. Both actions sought similar recovery related to Defendant's failure to pay various types of earned wages upon termination

---

[1] As indicated below, docket entry 405 also includes Plaintiffs' motion for an award of costs. That matter has been referred to Magistrate Judge Zimmerman for a report and recommendation, and therefore is not addressed in this Order.

of employment. Each sought penalties under California Labor Code § 203, as well as other remedies.

By Order dated February 13, 2008, this Court certified the class as follows:

all former California employees of defendant Wal-Mart Stores, Inc. whose employment ended during the period from March 2, 2002 through and including the date a judgment is rendered in this matter and who, based on Wal-Mart's computerized records, are members of one of the following Subclasses:

<u>Subclass No. 1</u>: Class members who, according to Wal-Mart's computerized records, have not been paid all accrued and unused vacation and personal time they earned while employed by defendant.

<u>Subclass No. 2</u>: Class members who, according to Wal-Mart's computerized records, have not been paid all wages they earned while employed by defendant. As used in this proposed Class Definition, the term "wages" includes hourly pay, salary, and geographical assistance pay.

Dkt. 250.

On March 7, 2008, Defendant sought leave to appeal the Court's class certification order, and contemporaneously moved to stay this action pending resolution of appellate proceedings. On March 13, 2010, Defendant filed two motions for summary judgment; one as against the named Plaintiffs, and another as against the class as a whole. At that time, trial was scheduled for June 30, 2008. The trial date was later continued for several months.

On May 15, 2008, while the parties were engaged in final pre-trial preparations, the Ninth Circuit Court of Appeals granted Defendant's petition for leave to appeal this Court's February 13, 2008 class certification order. Thereafter, the parties stipulated to stay further proceedings until resolution by the Ninth Circuit. Oral argument before the Ninth Circuit was held on October 8, 2009. Subsequently, pending a decision by the Ninth Circuit, the parties engaged in two full days of mediation, several months apart, and eventually reached a settlement. At the request of the parties, the Ninth Circuit stayed all further proceedings pending this Court's determination as to preliminary and final approval of the parties' settlement.

The parties then filed a Joint Motion for Preliminary Approval of Settlement, which the Court granted on July 21, 2010. Dkt. 397. The Preliminary Approval Order set the fairness

hearing for September 28, 2010, which was later continued to November 9, 2010, and ordered the parties to disseminate notice to the class. On August 25, 2010, Plaintiffs filed a Motion for Award of Incentive Payments to Plaintiffs and for Award of Attorneys' Fees and Costs. Dkt. 405. Soon thereafter, on September 14, 2010, Plaintiffs filed a Motion for Final Approval of Proposed Settlement Agreement in Class Action Lawsuit. Dkt. 412.

The salient features of the settlement consist of the following:

1. <u>Class Settlement Amount</u>: The Class Settlement Amount shall be comprised of a maximum payment of $86 million (the "Ceiling"), the payment of which shall depend upon the participation of the Settlement Class Members. In no event, however, shall less than $43 million (the "Floor") be paid by Defendant. Approved claims, employer's share of taxes, attorneys' fees and costs approved by the Court, incentive awards approved by the Court, and notice and administration costs shall all be paid from the Class Settlement Amount and shall all count against the Floor.

2. <u>Defendant's Acknowledgement</u>: Defendant acknowledges that the litigation acted as a catalyst for its implementation of remedial measures which have resolved the final pay problems. For at least three years from the Settlement Effective Date, Defendant will use its improved computer technology to assure accurate final payments to terminated California employees. Defendant shall continue to use this technology, or other technology that it considers as superior, during this time frame, and its use of the same will be reported to Class Counsel.

3. <u>Attorneys' Fees</u>: The settlement provides that Defendant will not oppose Class Counsel's application for a "reasonable award" of attorneys' fees and costs.

4. <u>Incentive Award</u>: Class Counsel will move the Court for an incentive award of $25,000 to each of the four named Plaintiffs.

5. <u>Class Member Damages</u>: Each Class Member who returns a valid and timely Claim Form will be entitled to receive a portion of the settlement amount as follows: (1) each claimant of the Salaried Associate Sub-Class will receive $600; (2) each claimant of the Distribution Center Sub-Class will receive $300; and (3) each claimant of the Hourly Associate Sub-Class will receive no less than $50 and no greater than $600.[2]

See Dkt. 385, Motion for Preliminary Approval, Ex. A.

---

[2] These classes and sub-classes refer to Plaintiffs' proposed Settlement Class, which the Court certified in its November 18, 2010 Order and Final Judgment approving the settlement. See Dkt. 438.

1    The Court received objections to final approval of the settlement from five class
2    members. Four of the class members withdrew their objections before the final fairness
3    hearing. The fifth class member objected on the basis that he was not provided timely notice of
4    his rights and of the deadline to opt out of the settlement. The Court subsequently overruled
5    that objection. Dkt. 432.
6    On November 9, 2010, the Court held a hearing on Plaintiffs' motion for final approval
7    of the settlement and Plaintiffs' motion for an award of incentive payments and attorneys' fees
8    and costs. At that hearing, the Court directed Class Counsel to submit additional information
9    regarding the prior Ninth Circuit fee decisions that counsel discussed during the hearing, as
10   those decisions had not previously been submitted in connection with the fee motion. Counsel
11   submitted those prior fee decisions on November 15, 2010. Dkt 443. On November 18, 2010,
12   the Court issued an Order and Final Judgment approving the settlement. Dkt. 438. The Court
13   referred Plaintiffs' motion for an award of costs to Magistrate Judge Zimmerman on November
14   29, 2010 for a report and recommendation. Dkt. 442.
15   On December 8, 2010, the Court held a further telephonic hearing with the parties
16   regarding Plaintiffs' motion for an award of incentive payments and attorneys' fees. During
17   that hearing, the Court directed Class Counsel to submit further briefing describing how the
18   $86 million "ceiling" settlement amount had been reached, and describing other class actions
19   referred to by counsel wherein the settlement was structured with a "floor" amount and a
20   "ceiling" amount. Class Counsel submitted that additional briefing on December 10, 2010.
21   Dkt. 448.

## II. THE INSTANT MOTION

Presently before the Court is Plaintiffs' Motion for Award of Incentive Payments to Plaintiffs and for Award of Attorneys' Fees. Plaintiffs move for an order awarding each of the four named Plaintiffs – Danton Ballard, Nathan Lyons, Barry Smith, and Michael Wiggins – an incentive payment of $25,000. Plaintiffs also move for an award of attorneys' fees in the amount of $28,666,666, which equals 33.3% of the ceiling settlement amount of $86 million. Plaintiffs' motion is now ripe for adjudication.

## III. ANALYSIS

### A. INCENTIVE AWARDS

"The district court must evaluate [named plaintiffs'] awards individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … [and] the amount of time and effort the plaintiff expended in pursuing the litigation …." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary … and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-959 (9th Cir. 2009).

Here, the named Plaintiffs have each submitted a declaration describing the efforts each undertook in this case. See Dkts. 405-12, 405-13, 405-14, 405-15. As indicated in those declarations, they responded to written discovery and had their depositions taken. They served as liaison between Class Counsel and the class members, were available to Class Counsel as needed, assisted in the analysis and evaluation of documents and evidence, participated in multiple meetings and telephone conferences with Class Counsel, and assisted in the evaluation of class member interviews. These Plaintiffs also assert that, by taking the lead role in prosecuting these claims against their former employer, they assumed a risk to their standing and reputation within the business community.

Upon review of the record in this case, the Court finds that Plaintiffs are entitled to a reasonable incentive payment. However, the Court finds the requested award of $25,000 per named Plaintiff to be excessive, in view of the nature of their assistance in this case.[3] First, the Court notes that the named Plaintiffs have not indicated in their declarations the total number

---

[3] See e.g., Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau, 2009 WL 3562871, *5 (N.D. Cal. Oct. 27, 2009) (Patel, J.) (rejecting a requested $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable") (citing Hopson v. Hanesbrands Inc., 2009 WL 928133, at *10 (N.D. Cal. April 3, 2009) (Laporte, M.J.)).

of hours they spent on this litigation. Rather, they generally explain that they were deposed, responded to written discovery, and assisted and met with counsel. Second, in arguing that $25,000 is an appropriate award, Plaintiffs cite to cases that are clearly distinguishable. For instance, in Brotherton v. Cleveland, 141 F.Supp.2d 907 (S.D. Ohio 2001), the court awarded $50,000 to a single named plaintiff, finding that "she has spent approximately 800 hours working on this litigation." Id. at 914. By contrast, here, there is no evidence that the named Plaintiffs' involvement reached anywhere near this level.

In Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240 (S.D. Ohio 1991), the court awarded $50,000 to six representative plaintiffs because they "had devoted a substantial amount of time and effort" and had "entered into a contingent fee arrangement with Class Counsel which obligated them to pay Class Counsel for all expenses incurred in the pursuit of this litigation …." Id. at 251. In the instant case, given the vague descriptions of the extent of the named Plaintiffs' participation, the record is not sufficient to show that they devoted "substantial" time and effort, nor is there any indication that they are obligated to pay costs incurred by their counsel. To the contrary, Class Counsel have moved to recover from Defendant the costs they have incurred.

Moreover, Plaintiffs' reliance on In re Dun & Bradstreet Credit Services Customer Litig., 130 F.R.D. 366 (S.D. Ohio 1990) fails to inform the instant analysis. There, several class action complaints were filed that centered upon allegations that the defendants had engaged in a nationwide scheme fraudulently to sell credit information to its customers. The court awarded from $35,000 to $55,000 to the representative plaintiffs because "all of the class representatives spent a good deal of time and effort in this case, as reflected in the supporting affidavits they filed." Id. at 369. The Court is disinclined to follow In re Dun because, given the vague language used in the opinion, it has no meaningful way of comparing the amount of time spent by those class representatives with the time spent by Plaintiffs in the present action.[4]

---

[4] The prior attorneys' fee and incentive award decisions that Plaintiffs have submitted also do not contribute to the Court's analysis, as those decisions fail to explain the bases for the awarded incentive amounts.

Based on the foregoing, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiffs' motion for an award of incentive payments; in view of their level of participation, the risk they undertook in pursuing this litigation, and their successful efforts in obtaining a result for the class, the Court approves an incentive award of $5,000 each to Ballard, Lyons, Smith, and Wiggins.

### B. ATTORNEYS' FEES

In the Ninth Circuit, it is within the district court's discretion to award attorneys' fees in common fund cases under either the percentage or the lodestar method. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). Regardless of the method selected, when attorneys' fees are to be paid from a common settlement fund, "the relationship between plaintiffs and their attorneys turns adversarial" and "the district court must assume the role of fiduciary for the class plaintiffs." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994).

In this case, the Court finds it appropriate to use the percentage approach. Under this approach, "[o]rdinarily, . . . fee awards range from 20 percent to 30 percent of the fund created."[5] Id. However, the Ninth Circuit has recognized that 25% is the "proper benchmark" for awarding attorneys' fees. Id. "The district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." In re Pacific Enterprises Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

The following factors are relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the

---

[5] With respect to the amount of the fund created, "attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants." Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026 (9th Cir. 1997) (citing Boeing Co. v. Van Gemert, 444 U.S. 472, 480-81 (1980)).

plaintiffs; and (5) awards made in similar cases. <u>Jacobs</u>, 2009 WL 3562871, *2 (citing <u>Vizcaino</u>, 290 F.3d at 1048-50). One method of ensuring reasonableness is to compare the amount of fees to be awarded through the percentage method with the amount of fees to be awarded through the lodestar method. <u>See</u> <u>Fischel v. Equitable Life Assur. Society of U.S.</u>, 307 F.3d 997, 1007 (9th Cir. 2002) ("Courts may compare the two methods of calculating attorney's fees in determining whether fees are reasonable.").

### 1. Reasonable Fee Award

Here, Class Counsel argue that an upward departure from the 25% benchmark to 33.3% is warranted in this case, in view of the results achieved for the class. First, counsel note that the parties estimated the value of the unpaid wage claim for the class to be approximately $11 million, which, if divided among the estimated 231,971 class members, would amount to approximately $47 per member. Yet, the settlement provides for a recovery of $50 to $600 per class member, depending on the sub-class. Furthermore, counsel explains that this litigation resulted in Wal-Mart changing its computer technology to ensure accurate final payments to terminated California employees, which provides future benefit to Wal-Mart employees.

Second, Class Counsel argue that an upward departure to 33.3% is appropriate in view of the "substantial risk" they undertook in pursuing this litigation. In particular, Class Counsel assert that, at the time settlement was reached, Plaintiffs' claim for penalties under California Labor Code § 203 – which they valued at $150 million – was uncertain, as they would have to show that Wal-Mart's non-payment of earned pay was willful.

Third, Class Counsel assert that their requested fee award is appropriate given the "hard fought" nature of this case: the parties engaged in motion practice, including a motion to dismiss, two summary judgment motions, and a motion for class certification; Plaintiffs retained an expert familiar with Wal-Mart's computerized data systems; Defendant appealed the Court's class certification order; Plaintiffs reviewed voluminous document productions from Wal-Mart and conducted twenty-seven depositions across the country; and six discovery orders were issued by the discovery magistrate judge.

- 8 -

Applying the relevant factors, the Court concludes that an upward deviation from the benchmark is warranted, but not to the degree requested by counsel. The Court concludes that counsel did achieve a significant result for the class. However, the other factors cited by counsel, including the risk of the ligation and the hard fought nature of the litigation, do not amount to "special circumstances" justifying an upward departure to 33.3%. In particular, the Court is not convinced that Class Counsel undertook an unusually significant risk in pursuing this litigation, as most cases involve some uncertainty as to liability and damages pending trial. Moreover, the parties' motion practice and discovery efforts in this case are not unusual for a statewide class action. While the statewide nature of this litigation may have necessitated extensive discovery, counsel's efforts in that regard are accounted for in the maximum settlement amount of $86 million, on which counsel's attorney fee award is ultimately based.

Lastly, Class Counsel also rely on fee awards in other cases involving Wal-Mart to justify their 33.3% fee request. Specifically, counsel rely heavily on the fee decision in the multidistrict litigation In re: Wal-Mart Wage and Hour Employment Practices Litig., MDL No. 1732, 06-CV-00225 (D. Nev. 2009). However, the factors that the Nevada court relied upon in setting a 33.3% award, in terms of the scope and nature of the litigation, are not present here. There, the litigation involved thirty-nine class actions and over three million class members. Id., Dkt. 491. The court found the settlement reached in that case to be "exceptional" in view of that court's "prior ruling denying class certification, as well as the prior denials of class certification by state courts in a dozen of the states included in the Settlement." Id. at 10. The court further noted that the "prospect of overturning the denial of class certification was, at best, slim, thus Class Members would not have obtained any redress absent this Settlement." Id. at 12. By contrast, the instant litigation is significantly smaller in scope, as it is comprised of two consolidated cases with a total estimated class size of 231,971. Furthermore, in this case, Plaintiffs succeeded in their initial attempt at class certification. While the Court recognizes that there was a possibility, however uncertain, that class certification could have been overturned on appeal, this action is not fairly characterized as one in which the class

1 members "would not have obtained any redress" absent settlement, as was found in the Nevada
2 litigation.
3     In addition to the Wal-Mart MDL litigation, Class Counsel have also submitted several
4 prior fee decisions from district courts in the Ninth Circuit, as well as from several state courts,
5 awarding fees of 30% or higher of the common fund. However, counsel's reliance on these
6 decisions is unavailing because, but for Lerma, et al. v. Wal-Mart Stores, Inc., et al., CJ-2001-
7 1395 (Cleveland Cnty. Okla. March 19, 2009), the language used in those decisions is vague
8 and conclusory, and thus provides no meaningful information with which to compare the
9 instant fee request. As for Lerma, while the Oklahoma state court awarded class counsel 40%
10 of the settlement fund, that case is inapposite because the court relied heavily upon the 40%
11 contingency fee agreement between the plaintiffs and their counsel in determining the fee
12 award. Such a circumstance is not present here.
13     After considering all of the relevant factors, the Court GRANTS IN PART and DENIES
14 IN PART Plaintiffs' Motion for an Award of Attorneys' Fees. The Court finds that an attorney
15 fee award of 27% of the maximum settlement amount of $86 million, or $23,220,000, is
16 appropriate in this case.

17     **2.    Lodestar Comparison**

18     As a final matter, the Court compares the percentage and lodestar methods of
19 calculating attorneys' fees to confirm whether a $23,220,000 fee award is reasonable. The
20 lodestar method "calculates the fee award by multiplying the number of hours reasonably spent
21 by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks
22 associated with the representation." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268,
23 272 (9th Cir. 1989). Here, Class Counsel has calculated their lodestar to be $16,640,376. A
24 $23,220,000 fee award results in a 1.4 multiplier of the lodestar, which is warranted in view of
25 the results counsel achieved for the class. See Vizcaino, 290 F.3d at 1051 n. 6 (describing
26 appendix to opinion, finding a range of multipliers in common fund cases "of 0.6-19.6, with
27 most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0
28 range") (citing Prudential Ins. Co. America Sales Practice Litig. Agent Actions, 148 F.3d 283,

341 (3rd Cir. 1998) ("[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (internal quotations omitted)).

In sum, the Court's crosscheck by reference to the lodestar method further validates a fee award of $23,220,000.

## IV.   CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1.   Plaintiffs' Motion for Award of Incentive Payments to Plaintiffs is GRANTED IN PART and DENIED IN PART.  The named Plaintiffs Danton Ballard, Nathan Lyons, Barry Smith, and Michael Wiggins each are awarded $5,000 as incentive payments.

2.   Plaintiffs' Motion for Award of Attorneys' Fees is GRANTED IN PART and DENIED IN PART.  Class Counsel are awarded $23,220,000 in attorneys' fees.

IT IS SO ORDERED.

Dated: January 3, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge